REED SMITH LLP
Christopher A. Lynch, Esq.
John B. Berringer, Esq.
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: clynch@reedsmith.com
E-mail: jberringer@reedsmith.com

REED SMITH LLP
Timothy P. Law, Esq. (*pro hac vice*)
Three Logan Square
1717 Arch Street , Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: tlaw@reedsmith.com

*Special Insurance Counsel for Debtor and
Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Rockville Centre,<br>New York<br><br>     Debtor. | Chapter 11<br><br>Case No. 20-12345-scc |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE<br>CENTRE, NEW YORK,<br><br>     Plaintiff,<br><br>against<br><br>ARROWOOD INDEMNITY COMPANY fka Royal<br>Insurance Company, also fka Royal Globe Insurance<br>Company; CERTAIN UNDERWRITERS AT LLOYD'S,<br>LONDON & CERTAIN LONDON MARKET<br>COMPANIES namely Allianz International Ltd., Ancon<br>Insurance Co. (UK) Ltd., Assicurazioni Generali T.S.,<br>British National Insurance Co. Ltd. formerly known as British<br>National Life Insurance Society Ltd., CX Reinsurance Co.<br>Ltd. formerly known as C.N.A. Re of London, Compagnie<br>d'Assurancet Maritimes et Terrestres now known as Allianz<br>Global Corporate & Specialty (France), Dominion Insurance<br>Co. Ltd., Excess Insurance Co. Ltd., Lexington Insurance<br>Co., London & Edinburgh General Insurance Co. Ltd.,<br>Sovereign Marine & General Insurance Co. Ltd., St.<br>Katherine Insurance Co. Ltd., Storebrand Insurance Ltd.,<br>Taisho Marine & Fire (UK) Ltd., Terra Nova Insurance Co.<br>Ltd., Tokio Marine & Fire (UK) Ltd., Turegum Insurance | Adv. Pro. No. 20-1227-scc<br><br>**<u>MEMORANDUM OF LAW IN<br>SUPPORT OF MOTION FOR<br>JUDGMENT ON THE<br>PLEADINGS AND TO STAY<br>PROCEEDINGS ON THE<br>DUTY TO INDEMNIFY</u>** |

Co. Ltd., Unionamerica Insurance Co. Ltd. and Yasuda Fire
& Marine (UK) Ltd.; ALLIANZ UNDERWRITERS
INSURANCE COMPANY; ASSOCIATED
INTERNATIONAL INSURANCE COMPANY;
COLONIAL PENN INSURANCE COMPANY;
FIREMAN'S FUND INSURANCE COMPANY;
INTERSTATE FIRE & CASUALTY COMPANY,
NATIONAL SURETY CORPORATION and DOE
INSURANCE COMPANIES 1 through 10,

      Defendants.

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION .................................................................................................... 1

II.    STATEMENT OF FACTS ...................................................................................... 3

    A.   The Child Victims Act ................................................................................ 3

    B.   The Royal Insurance Policies Insure the Diocese Against Lawsuits
        Alleging Bodily Injury. ............................................................................... 4

    C.   The Undefended Lawsuits Allege Bodily Injury and Negligence Against
        the Diocese. ................................................................................................. 5

        1.   The G.C. Complaint ........................................................................ 5

        2.   The Kelly Complaint ....................................................................... 5

        3.   The B.R. Complaint ......................................................................... 7

        4.   The F.C. Complaint ......................................................................... 7

III.   LEGAL STANDARDS ........................................................................................... 8

    A.   Motion for Judgment on the Pleadings ...................................................... 8

    B.   Motion to Stay ............................................................................................ 9

    C.   Application of New York Law .................................................................... 9

IV.    ARGUMENT ........................................................................................................ 10

    A.   The Diocese is Entitled to a Declaration that Arrowood Has a Duty to
        Defend the Entire Action When Any Claims Against the Diocese Are
        Potentially Covered. .................................................................................. 10

    B.   Arrowood May Not Rely Upon Materials Outside the Undefended
        Lawsuit Complaints to Avoid or Limit its Duty to Defend. .................... 13

    C.   The Undefended Lawsuits Contain Allegations of Negligence and Bodily
        Injury That Trigger Arrowood's Duty to Defend. ................................... 14

    D.   Arrowood Must Pay the Reasonable Expense of Independent Counsel for
        the Diocese. ............................................................................................... 16

    E.   The Court Should Stay Discovery on the Issue of the Duty to Indemnify. .......... 18

V.     RELIEF REQUESTED .......................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*28th Highline Assocs, L.L.C. v. Roache*,
  826 F. App'x 70 (2d Cir. 2020) ...................................................................................9

*Alexander & Alexander Servs., Inc., v. These Certain Underwriters at Lloyd's,
  London*,
  136 F.3d 82 (2d Cir. 1998).........................................................................................8

*Allstate Ins. Co. v Mugavero*,
  79 NY2d 153 .............................................................................................................11

*Am. Empire Surplus Lines Ins. Co. v. W. Am. Ins. Co.*,
  2008 NY Slip Op 33514(U) (Sup. Ct. N.Y. Cty. Dec. 30, 2008) ...........................12

*Auten v. Auten*,
  308 N.Y. 155 (1954) .................................................................................................10

*Automobile Ins. Co. of Hartford v. Cook*,
  7 N.Y.3d 131 (2006) ...........................................................................................11, 18

*Avondale Indus., Inc. v. Travelers Indem. Co.*,
  887 F.2d 1200 (2d Cir. 1989).................................................................................12

*B.R. v. Diocese of Brooklyn, et al.*,
  Index No. 512125/2020 (Sup. Ct. Kings Cty.) ......................................................2, 7

*Bianco v. Erkins (In re Gaston & Snow)*,
  243 F.3d 599 (2d Cir. 2001)......................................................................................9

*BP A.C. Corp. v. One Beacon InsGroup*,
  8 N.Y.3d 708 (2007) .................................................................................................10

*Certain Underwriters of Lloyd's of London v. Foster Wheeler Corp.*,
  822 N.Y.S.2d 30 (App. Div. 1st Dep't 2006) .........................................................10

*Conn. Gen. Life Ins. Co. v. Zurich Am. Life Ins. Co.*,
  No. X03010510268S, 2003 Conn. Super. LEXIS 910, 2003 WL 1901046
  (Conn. Super. Ct. Mar. 28, 2003) ...........................................................................19

*Cont'l Cas. Co. v. Rapid-American Corp.*,
  80 N.Y.2d 640 (1993) ...............................................................................................12

*Danaher Corp. v. Travelers Indem. Co.*,
  No. 10 Civ. 0121, 2015 U.S. Dist. LEXIS 14159 (S.D.N.Y. Jan. 16, 2015)...........16

*F.C. v. Diocese of Rockville Centre,*
   Index No. 900125/2020 (Sup. Ct. Nassau Cty.) ..................................................2, 7

*Fed. Ins. Co. v. Weinstein,*
   No. 18 Civ. 2526, 2019 U.S. Dist. LEXIS 53165 (S.D.N.Y. Mar. 28, 2019)...................18, 19

*Fitzpatrick v. Am. Honda Motor* Co.,
   78 N.Y.2d 61 (1991) .............................................................................10, 13

*Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.,*
   91 N.Y.2d 169 (1997) ...................................................................................10

*G.C. v. Diocese of Rockville Centre,*
   Index No. 900035/2019 (Sup. Ct. Nassau Cty.) ..................................................2, 3

*Goldberg v Lumber Mut. Cas. Ins. Co.,*
   297 N.Y. 148 ................................................................................................13

*Home Ins. Co. v. Cooper & Cooper, Ltd.,*
   889 F.2d 746 (7th Cir. 1989) ..........................................................................1

*Houston Cas. Co. v. Prosight Specialty Ins. Co.,*
   462 F. Supp. 3d 443 (S.D.N.Y. 2020), *reconsideration denied*, No. 18 CIV.
   9574 (PAE), 2020 WL 4340383 (S.D.N.Y. July 28, 2020), *and appeal
   withdrawn*, No. 20-1997, 2020 WL 5667722 (2d Cir. Sept. 18, 2020) ............20, 21

*International Paper Co. v Continental Cas. Co.,*
   35 N.Y.2d 322 ..............................................................................................13

*Juster Assocs. v. City of Rutland,*
   901 F.2d 266 (2d Cir. 1990)............................................................................8

*K2 Inv. Group, LLC v. Am. Guar. & Liab. Ins. Co.,*
   22 N.Y.3d 578 (2014) ....................................................................................19

*Kelly v. Diocese of Rockville Centre,*
   Index No. 900064/2019 (Sup. Ct. Nassau Cty.) ..................................................2, 5

*Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship),*
   277 B.R. 181 (S.D.N.Y. 2002).........................................................................9

*L-7 Designs, Inc. v. Old Navy, LLC,*
   647 F.3d 419 (2d Cir. 2011)............................................................................8

*Landpen Co., L.P. v. Md. Cas. Co.,*
   No. 03 CIV 3624, 2005 U.S. Dist. LEXIS 2145 (S.D.N.Y. Feb. 10, 2005) ...........18

*Lexington Ins. Co. v. Rugg & Knopp, Inc.*,
  165 F.3d 1087 (7th Cir. 1999) ....................................................................10

*Medcom Holding Co. v. Baxter Travenol Labs., Inc.*,
  200 F.3d 518 (7th Cir. 1999) ......................................................................17

*Meredith v. City of Winter Haven*,
  320 U.S. 228 (1943)......................................................................................9

*Meyers & Sons Corp. v Zurich Am. Ins. Group*,
  *supra* ............................................................................................................13

*Mt. McKinley Ins. Co. v. Corning Inc.*,
  2012 NY Slip Op 33555(U) (Sup. Ct. N.Y. Cty. Sept. 7, 2012) ...............12

*Rite Aid Corp. v. Liberty Mut. Fire Ins. Co.*,
  No. 1: CV-03-1801, 2006 U.S. Dist. LEXIS 57094 (M.D. Pa. Aug. 14, 2006) .....17

*RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*,
  2 N.Y.3d 158 (2004) .............................................................................11, 14

*Ruder & Finn v Seaboard Sur. Co.*,
  52 N.Y.2d 663................................................................................................13

*Seaboard Sur. Co. v Gillette Co.*,
  64 N.Y.2d 304 [1984].....................................................................................11

*Servidone Constr. Corp. v. Sec. Ins. Co.*,
  64 N.Y.2d 419 (1985) ...................................................................................19

*Stoncor Group, Inc. v. Peerless Insurance Co.*,
  322 F. Supp. 3d 505 (S.D.N.Y. 2018).........................................................18

*Stoner v. N.Y. Life Ins. Co.*,
  311 U.S. 464 (1940)........................................................................................9

*Taco Bell Corp. v. Continental Casualty Co.*,
  388 F.3d 1069 (7th Cir. 2004) ....................................................................17

*Technicon Elecs. Corp. v American Home Assur. Co.*,
  *supra*, at 73 ..................................................................................................13

*Travelers Indemnity Co. v. Philips Electronics North America Corp.*,
  No. 02 CIV. 9800 (WHP), 2004 WL 193564 (S.D.N.Y. Feb. 3, 2004) .................18

*Value Wholesale, Inc. v. KB Ins. Co.*,
  No. 18-cv-5887, 2020 U.S. Dist. LEXIS 203659 (E.D.N.Y. Nov. 2, 2020) .........16

*Vandenbark v. Owens-Ill. Glass Co.*,
　　311 U.S. 538 (1941) .................................................................................9

*West v. Am. Tel. & Tel. Co.*,
　　311 U.S. 223 (1940) .................................................................................9

*Zurich Insurance Co. v. Shearson Lehman Hutton, Inc.*,
　　84 N.Y.2d 309 (1994) .............................................................................10

**Statutes**

11 U.S.C. § 105(a) .........................................................................................9

**Regulations**

Insurance Circular Letter No. 11 (2019) .......................................................3

Plaintiff and Debtor in Possession The Roman Catholic Diocese of Rockville Centre, New York (the "Diocese"), by and through its attorneys, respectfully submits this memorandum of law in support of its Motion for Judgment on the Pleadings and to Stay Proceedings on the Duty to Indemnify against Arrowood Indemnity Company ("Arrowood").   The Adversary Proceeding Complaint is attached to the accompanying Declaration of John B. Berringer (the "Berringer Decl.") as Exhibit A, and Arrowood's Answer is attached to the Berringer Decl., as Exhibit B.

## I.     INTRODUCTION

The Court should decide several threshold issues to facilitate the resolution of this adversary proceeding and advance this case before the deadline for submitting proofs of claim. Insurance policy assets are often a key source of recovery for claimants in bankruptcy, and that is particularly true in this bankruptcy.  More than 200 claims have been asserted in litigations under the Child Victims Act ("CVA"), alleging that the Diocese was negligent in failing to prevent child sexual abuse.   Prior to entering bankruptcy, the Diocese incurred significant legal expenses defending those claims, and the Diocese's insurance companies have failed to pay a significant portion of those defense costs.   Recovering those defense expenses in this adversary proceeding will benefit all creditors.   The Debtor commenced this bankruptcy case, in part, to implement procedures to equitably determine the rights of, and allocate recoveries to, survivors of sexual abuse.   The Debtor's insurance policies are potentially the single largest asset of its bankruptcy estate, and the extent of insurance coverage afforded by those policies will determine the recoveries available to survivors holding allowed claims against the Diocese.  *See Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir. 1989) ("A policy of insurance is an asset of the estate").

Under New York law, an insurance company's duty to defend its policyholder in litigation is exceedingly broad.  The record relevant to determine the scope of an insurance company's duty

to defend is limited to the underlying complaint and the insurance policy, unless the policyholder asks the court to consider additional evidence.  An insurance company cannot avoid its defense obligation by alleging facts outside the underlying complaint.  For this reason, issues relating to the duty to defend are particularly amenable to resolution via a motion for judgment on the pleadings.  Arrowood is the successor to the primary-level insurance policies sold and issued to the Diocese from 1957 to 1976, and its insurance policies contain a duty to defend, with defense costs payable in addition to any limits of liability.  Arrowood breached its duty to defend by (1) refusing to defend the entire action when it has a duty to defend; (2) relying on materials outside the underlying complaints as putative support for avoiding its duty to defend; (3) refusing to defend potentially covered claims; and (4) refusing to pay the full cost of the Diocese's defense.

Beginning at Paragraph 81 of its Answer, Arrowood makes various extraneous allegations relating to Romano Ferraro.  Arrowood states that it has "agreed to participate in the defense of the Diocese in approximately 130 of the Underlying Lawsuits, subject to a reservation of rights" which it states are "all Underlying Lawsuits which allege sexual abuse within the Arrowood Policy Periods, and which do not include allegations of abuse by Father Romano Ferraro."  (Berringer Decl., Ex. B at 16).  In its Twelfth Affirmative Defense, Arrowood asserts that it had no duty to defend the Diocese in four lawsuits simply because they allege abuse by Ferraro.[1]  Those complaints have been attached to the Berringer Decl. as Exhibits D to G (the "Undefended Lawsuits").  Because those complaints all allege negligence against the Diocese and are potentially covered under Arrowood's insurance policies in accordance with binding New York precedent, this Court can and should find a breach of Arrowood's duty to defend the Undefended Lawsuits.

---

[1] *G.C. v. Diocese of Rockville Centre*, Index No. 900035/2019 (Sup. Ct. Nassau Cty.); *Kelly v. Diocese of Rockville Centre*, Index No. 900064/2019 (Sup. Ct. Nassau Cty.); *B.R. v. Diocese of Brooklyn, et al.*, Index No. 512125/2020, (Sup. Ct. Kings Cty.); *F.C. v. Diocese of Rockville Centre*, Index No. 900125/2020 (Sup. Ct. Nassau Cty.).

Furthermore, the following declarations sought by the Diocese in its Complaint are ripe for determination by a motion for judgment on the pleadings, particularly because Arrowood has pled that these are purely legal issues that need not be admitted or denied in its Answer:

> (a) Arrowood has a duty to defend the entire action when any claims against the Diocese are potentially covered;
>
> (b) Arrowood may not rely upon materials outside of the Complaint to deny or limit its duty to defend;
>
> (c) Arrowood has a duty to pay the full amount of defense costs incurred and paid by the Diocese; and
>
> (d) Arrowood has an obligation to defend and indemnify the Diocese in all the Underlying Lawsuits, including, among others, *G.C. v. Diocese of Rockville Centre*, Index No. 900035/2019 (Sup. Ct. Nassau Cty.) (the "G.C. Lawsuit").

Other issues are not presently ripe for determination, and will not be ripe until the claim resolution process has concluded. The Diocese, accordingly, moves for a stay as to those issues. In particular, the question of indemnity for any settlements or judgments relating to claims submitted in bankruptcy will depend upon the facts on which those settlements or judgments are based. Arrowood's Answer alleges facts extraneous to the complaints in the Undefended Lawsuits, which are relevant neither to the duty to defend (which is based on a very limited and specific documentary record) nor to the duty to indemnify (which is based on the facts determined in the resolution of the underlying claims). For this reason, the Diocese moves to stay any questions of indemnity regarding judgments or settlements until there are actual judgments and settlements to evaluate for insurance coverage.

## II.    STATEMENT OF FACTS

### A.    The Child Victims Act

The facts necessary to decide this motion are discrete and, as reflected by the pleadings, uncontested. Governor Andrew Cuomo of New York signed the CVA into law in February 2019, and the New York State Department of Financial Services issued Insurance Circular Letter No. 11

(2019) on or about September 12, 2019, which speaks for itself.  That circular is attached to the Berringer Decl. as Exhibit H.  Among other things, this Circular Letter advised insurance companies that the Department expected insurance companies to act promptly and in utmost good faith with their policyholders in relation to claims brought under the CVA.

**B.      The Royal Insurance Policies Insure the Diocese Against Lawsuits Alleging Bodily Injury.**

It is uncontested that Arrowood is the successor to Royal Insurance Company's (f/k/a Royal Globe Insurance Company) ("Royal") liabilities under the Royal insurance policies (the "Royal Policies").  A true and correct copy of a representative Royal insurance policy, for the policy period from 1968 to 1969, is attached to the Berringer Decl. as Exhibit C.  Royal sold and issued insurance policies to the Diocese from 1957 to 1976.  The insuring agreements of the Royal Policies[2] generally state:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as **damages** because of:
>
> Coverage A. **bodily injury** or
> Coverage B. **property damage**
>
> to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking **damages** on account of such **bodily injury,** or **property damage** . . .

Berringer Decl., Ex. C, Royal Policy at 8, Comprehensive General Liability Insurance, Insuring Agreement.

This agreement applies "only to **bodily injury** or **property damage** which occurs during the policy period within the **policy territory**."  *Id.* at 9.  According to the Royal Policies, **"bodily injury"** means bodily injury, sickness or disease sustained by any person.  *Id.* at 5, Definitions.  "Damages" includes "damages for death and for care and loss of services resulting from **bodily**

---

[2] The Royal Policies with policy periods between 1957 and 1976 contain this language, with minor variations.

**injury** and damages for loss of use of property resulting from **property damage."** *Id.* at 6, Definitions. "Occurrence" means "an accident, including injurious exposure to conditions, which results, during the policy period, in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the insured." *Id.*, Definitions.

### C.    The Undefended Lawsuits Allege Bodily Injury and Negligence Against the Diocese.

#### 1.    The G.C. Complaint

The complaint in the G.C. Lawsuit (the "G.C. Complaint") alleges two claims, both sounding in negligence. Count I alleges negligence against St. Joseph's Parish, while Count II alleges negligence against the Diocese. G.C. alleges that the Diocese and St. Joseph's Parish owed G.C. a duty of reasonable care "to protect the safety, care, well-being and health of the G.C. while he was under the care, custody or in the presence" of the parish or the Diocese. Berringer Decl., Ex. D, ¶¶ 39 and 50. G.C. alleges that the Diocese and the parish breached those duties "by failing to protect Plaintiff from sexual assault and lewd and lascivious acts" committed by Ferraro. *Id.*, ¶¶ 40 and 51. The G.C. Complaint alleges that the Diocese and the parish "knew or should have known of Father Ferraro's propensity to sexually abuse minor boys." *Id.*, ¶¶ 41 and 52.

The G.C. Complaint alleges that the Diocese and the parish were negligent for letting Ferraro serve as priest in the church and Diocese. G.C. alleges bodily injury from this alleged negligence, including "severe and permanent psychological, emotional and physical injuries, shame, humiliation, and the inability to lead a normal life" which was "a direct and proximate result of the Church's negligence" or "of the Diocese's negligence." *Id.*, ¶¶ 44 and 55.

#### 2.    The Kelly Complaint

The complaint in *Kelly v. Diocese of Rockville Centre*, Index No. 900064/2019 (Sup. Ct. Nassau Cty.) (the "Kelly Complaint") asserts a claim of negligence against the Diocese and St.

Joseph's Parish.  Plaintiff Kelly alleges that the Diocese and the parish "owed Plaintiff a duty of reasonable care to protect the Plaintiff from injury."  Berringer Decl., Ex. E, ¶ 52.  Plaintiff Kelly alleges that the Diocese and the parish breached those duties by, among other things, "failing to adequately supervise Defendant, FERRARO ROMANO's access to Plaintiff."  *Id.*, ¶ 56.  The Kelly Complaint alleges that the Diocese "through the exercise of reasonable diligence, should have known of Defendant, FERRARO ROMANO's propensity for child sexual abuse."  *Id.*, ¶ 74.

The Kelly Complaint alleges that the Diocese and the parish either knew or should have known of Father Ferraro's dangerous propensities, and were therefore negligent for retaining him in a position "where he had access to children and could foreseeably cause harm which Plaintiff would not have been subjected to had [they] taken reasonable care."  *Id.*, ¶ 75.  Plaintiff Kelly alleges bodily injury from this alleged negligence, including "physical, emotional, and psychological injuries, along with pain and suffering."  *Id.*, ¶ 70.  All of the claims alleged against the Diocese seeking compensatory damages for bodily injury in the *Kelly* action allege some form of negligence:

> (1) Negligence;
>
> (2) Negligent Infliction of Emotional Distress;
>
> (3) Negligent Training and Supervision of Employees; and
>
> (4) Negligent Retention of Employees.

Nevertheless, in its Fourteenth Affirmative Defense, Arrowood contends that it has no obligation to defend or indemnify the Diocese concerning the *Kelly* action:

> Arrowood has no obligation under the Arrowood Policies to defend and/or indemnify the Diocese for the Kelly Suit because the injuries alleged in the Kelly Suit as to sexual abuse by Fathers Fitzgerald and Ferraro do not arise from an "occurrence," and are not accidental as required by the Arrowood Policies. Moreover, Arrowood has no obligation to defend or indemnify the Diocese for the Kelly Suit in connection with any allegations regarding Father Butler because there

are no allegations that Father Butler sexually abused, sexually assaulted or had any sexual contact with the Plaintiff.

Arrowood's Answer, Berringer Decl., Ex. B at 58.

### 3.   The B.R. Complaint

Similarly, the complaint in *B.R. v. Diocese of Brooklyn, et al.*, Index No. 512125/2020, (Sup. Ct. Kings Cty.) (the "B.R. Complaint") asserts a negligence claim against the Diocese and St. Joseph's Parish.  B.R. alleges that the Diocese and St. Joseph's Parish "owed a duty to Plaintiff to use reasonable care to protect the safety, care, well-being and health of Plaintiff while he was under the care, custody or in the presence [of] Father Ferraro."  Berringer Decl., Ex. F, ¶ 12.  B.R. alleges that the Diocese and the parish breached those duties by, among other things, "failing to adequately supervise Father Ferraro as an active priest."  *Id.*, ¶ 56.  The B.R. Complaint alleges that the Diocese and the parish "knew or in the exercise of reasonable care should have known that Father Ferraro had a propensity for the conduct which caused injury to Plaintiff . . . ."  *Id.*, ¶ 29.

The B.R. Complaint alleges that the Diocese and the parish either knew or should have known of Father Ferraro's dangerous propensities, and was therefore negligent for "hiring and retaining Father Ferraro as a priest" where he would have easy access to boys to abuse.  *Id.*, ¶ 56.  B.R. alleges bodily injury from this alleged negligence, including "severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to lead a normal life."  *Id.*, ¶ 69.

### 4.   The F.C. Complaint

The complaint in *F.C. v. Diocese of Rockville Centre*, Index No. 900125/2020 (Sup. Ct. Nassau Cty.) (the "F.C. Complaint")  also asserts a negligence claim against the Diocese and St. Joseph's Parish.  F.C. alleges that the Diocese and St. Joseph's Parish "had a duty to take reasonable steps to protect plaintiff F.C., a child, from foreseeable harm when he was under their

supervision and in their care, custody, and control . . . ."  Berringer Decl., Ex. G, ¶ 81.  F.C. alleges that the Diocese and the parish breached those duties "by failing to exercise reasonable care to prevent Father Ferraro from harming F.C., including sexually abusing him."  *Id.*, ¶ 84.  The F.C. Complaint alleges that the Diocese and the parish "knew or should have known that Father Ferraro was likely to abuse children, including F.C . . . ."  *Id*., ¶ 70.

The F.C. Complaint alleges that the Diocese and the parish either knew or should have known of Father Ferraro's dangerous propensities, and were therefore negligent for, among other things, "failing to supervise Father Ferraro" and allowing him to serve as a priest where he would have easy access to children to abuse.  *Id.*, ¶ 85.  F.C. alleges bodily injury from this alleged negligence, such as "physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage . . . ."  *Id.*, ¶ 79.

## III.   LEGAL STANDARDS

### A.   Motion for Judgment on the Pleadings

In a recent case affirming judgment on the pleadings in a contract case, the Second Circuit set forth the standards regarding motions for judgment on the pleadings and highlighted that the interpretation of a contract is an issue of law:

> Judgment on the pleadings is appropriate where the movant has established "that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In determining a Rule 12(c) motion, the district court may consider "any written documents attached to" the pleadings, "materials incorporated in [the complaint] by reference," and "documents that, although not incorporated by reference, are integral to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted).  Under New York law, "the initial interpretation of a contract is a matter of law for the court to decide." *Alexander & Alexander*

*Servs., Inc., v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d
Cir. 1998) (internal quotation marks omitted).

*28th Highline Assocs, L.L.C. v. Roache*, 826 F. App'x 70, 72-73 (2d Cir. 2020).

### B.   Motion to Stay

Section 105 of the Bankruptcy Code authorizes the court to "issue any order, process, or
judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §
105(a). "The court's power to grant a stay flows from its inherent power to control its docket [ ]
and the decision is committed to the court's discretion." *Kittay v. Landegger (In re Hagerstown
Fiber Ltd. P'ship)*, 277 B.R. 181, 199 (S.D.N.Y. 2002) (internal citations omitted).

### C.   Application of New York Law

The Second Circuit has recognized that "[b]ecause federal choice of law rules are a type of
federal common law, which federal courts have only a narrow power to create, [ ]
bankruptcy courts confronting state law claims that do not implicate federal policy concerns should
apply the choice of law rules of the forum state." *Bianco v. Erkins (In re Gaston & Snow)*, 243
F.3d 599, 601-02 (2d Cir. 2001).

A federal court must follow a controlling decision of a state's highest court unless it can
be said with some assurance that the state high court would not follow its own ruling. *Meredith v.
City of Winter Haven*, 320 U.S. 228, 234 (1943); *Vandenbark v. Owens-Ill. Glass Co.*, 311 U.S.
538, 543 (1941). If a state's high court has not addressed an issue of state law, but its intermediate
court has spoken to the question, then the federal court should not disregard the state decision
"unless it is convinced by other persuasive data that the highest court of the state would decide
otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940); *Stoner v. N.Y. Life Ins. Co.*,
311 U.S. 464, 467 (1940). Where there is no relevant state court precedent, the federal court must
make its best prediction of how the state's highest court would rule using other persuasive

authorities, including "decisions from other jurisdictions." *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999).

In *Zurich Insurance Co. v. Shearson Lehman Hutton, Inc.*, 84 N.Y.2d 309, 318 (1994), New York's Court of Appeals stated that "where liability insurance contracts are concerned, the applicable law is 'the local law of the state which the parties understood was to be the principal location of the insured risk.'" Here, that is clearly the State of New York where the Diocese is located. The insurance policies were delivered in New York to a Diocese located in New York; likewise, the underlying claims arose in New York and were brought under the New York CVA. New York substantive law applies because New York has the most significant contacts with the matter in dispute. *Auten v. Auten*, 308 N.Y. 155 (1954); *Certain Underwriters of Lloyd's of London v. Foster Wheeler Corp.*, 822 N.Y.S.2d 30, 33 (App. Div. 1st Dep't 2006).

## IV.   ARGUMENT

### A.   The Diocese is Entitled to a Declaration that Arrowood Has a Duty to Defend the Entire Action When Any Claims Against the Diocese Are Potentially Covered.

The duty to defend is independent of, and broader than, the duty to indemnify. *See Fitzpatrick v. Am. Honda Motor* Co., 78 N.Y.2d 61, 65 (1991). The Court of Appeals has held that the duty to defend is "exceedingly broad" and an insurance company must defend whenever the allegations of the complaint "suggest . . . a reasonable possibility of coverage." *BP A.C. Corp. v. One Beacon InsGroup*, 8 N.Y.3d 708, 714 (2007). Specifically, "[t]he duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'" *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997). As stated succinctly by the Court of Appeals: "If any of the claims against the insured arguably arise from covered events, the insurer is required to

defend the entire action (*Seaboard Sur. Co. v Gillette Co.*, 64 N.Y.2d 304, 311 [1984])." *Id.* Pursuant to this authority, if *any* of the claims against the Diocese arguably arise from covered events, Arrowood is required to defend the ***entire action***, not some subset, portion, or allocated share of the action.

For this reason, the Court of Appeals has characterized liability insurance containing a defense obligation as "litigation insurance" in addition to liability coverage. *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006) (citation omitted). In that case, the insurance company relied on the expected or intended exclusion (like Arrowood here) to reject its defense obligation in a wrongful death case involving a shooting in a home. In rejecting the insurance company's position that it could avoid its duty to defend because the factual allegations described an intentional shooting, the Court of Appeals noted that "an allegation of negligence implies an unintentional or unexpected event." *Id.* at 138. Indeed, the New York Court of Appeals ruled that:

> When an insurer seeks to disclaim coverage on the further basis of an exclusion, as it does here, the insurer will be required to "provide a defense unless it can 'demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation'" (*Allstate Ins. Co. v Mugavero*, 79 NY2d 153, 159 [citation omitted]). In addition, exclusions are subject to strict construction and must be read narrowly . . . .

*Id*. at 137.

The Court of Appeals has further held, in the specific context of an underlying case alleging sexual abuse, that allegations of negligence in hiring or retaining an employee who commits a sexual assault constitute an "occurrence" that is not excluded by an "expected or intended" exclusion. *See RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 2 N.Y.3d 158 (2004). Thus, Arrowood's declination of a full defense to the Diocese directly contradicts this binding New York precedent.

- 11 -

In its Nineteenth Affirmative Defense, Arrowood also asserts that it does not have a duty to defend the entire action where the allegations of abuse span both its policy periods and another insurance company's policy periods.  Again, the Court of Appeals has already rejected Arrowood's position:  "each insurer [is required] to defend if there is an asserted occurrence covered by its policy and the insured should not be denied initial recourse to a carrier merely because another carrier may also be responsible."  *Cont'l Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 655 (1993) (internal citations omitted); *see also Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1207-08 (2d Cir. 1989) (holding the policyholder "had the clear right to choose which insurance company it would name as a defendant, regardless of whatever rights [the insurance company] may have to demand defense costs from the other carriers"); *Mt. McKinley Ins. Co. v. Corning Inc.*, 2012 NY Slip Op 33555(U), ¶ 10 (Sup. Ct. N.Y. Cty. Sept. 7, 2012) ("the insured may recover its full loss from one insurer, or few insurers, and the burden rests on the insurance provider(s) to obtain contribution from the remaining covering policies"); *Am. Empire Surplus Lines Ins. Co. v. W. Am. Ins. Co.*, 2008 NY Slip Op 33514(U), ¶ 6 (Sup. Ct. N.Y. Cty. Dec. 30, 2008) (finding that limitation of one insurance company's contribution until a determination of the liability of other potential insurance companies was not warranted and the insurance company may "always seek contribution from any other applicable insurers.")

Here, Arrowood did not bring a claim for contribution against any other insurance company.  Rather, it improperly deprived its policyholder, the Diocese, of a full defense.  That is a clear breach of the duty to defend under New York law.  Because New York law is clear on the issue, and the parties have an actual and justiciable dispute, this Court should declare that Arrowood has a duty to defend the entire action when any claims against the Diocese are

potentially covered.  This is not a matter that can be reasonably contested under the law of New York.

> **B.    Arrowood May Not Rely Upon Materials Outside the Undefended Lawsuit Complaints to Avoid or Limit its Duty to Defend.**

The duty to defend arises "whenever the pleadings allege an act or omission within the policy's coverage," and an insurance company "cannot look beyond the complaint's allegations to avoid [its] obligation to defend":

> It is well established that a liability insurer has a duty to defend its insured in a pending lawsuit if the pleadings allege a covered occurrence, even though facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered (*see, e.g., Ruder & Finn v Seaboard Sur. Co.*, 52 N.Y.2d 663, 669-670). . . .

> The rationale underlying the cases in which the "four corners of the complaint" rule was delineated and applied (*see, e.g., Meyers & Sons Corp. v Zurich Am. Ins. Group, supra; International Paper Co. v Continental Cas. Co.*, 35 N.Y.2d 322; *Goldberg v Lumber Mut. Cas. Ins. Co.*, 297 N.Y. 148), is based on the oft-stated principle that the duty to defend is broader than the duty to indemnify (*see, e.g., Ruder & Finn v Seaboard Sur. Co.*, 52 N.Y.2d 663, 669-670, *supra*). In other words, as the rule has developed, an insurer may be contractually bound to defend even though it may not ultimately be bound to pay, either because its insured is not factually or legally liable or because the occurrence is later proven to be outside the policy's coverage.

> It follows logically from this principle that an insurer's duty to defend is called into play whenever the pleadings allege an act or omission within the policy's coverage. Even where there exist extrinsic facts suggesting that the claim may ultimately prove meritless or outside the policy's coverage, the insurer cannot avoid its commitment to provide a defense, since "[a] complaint subject to defeat because of debatable theories * * * must [nevertheless] be defended by the insured." (*International Paper Co. v Continental Cas. Co.*, *supra*, at 326.)  Accordingly, the courts of this State have refused to permit insurers to look beyond the complaint's allegations to avoid their obligation to defend and have held that the duty to defend exists "[i]f the complaint contains any facts or allegations which bring the claim even potentially within the protection purchased" (*Technicon Elecs. Corp. v American Home Assur. Co.*, supra, at 73).  The holdings thus clearly establish that an insurer's duty to defend is at least broad enough to apply when the "four corners of the complaint" suggest the reasonable possibility of coverage.

*Fitzpatrick v. Am. Honda Co.*, 78 N.Y.2d 61, 63, 65-66 (1991).

None of the extraneous allegations of fact in Arrowood's Answer, which go beyond the four corners of the underlying complaints in the Undefended Lawsuits, can be used to avoid its "broad" duty to defend.  This Court should, accordingly, issue a declaration that Arrowood may not rely upon materials outside the complaints to deny or limit its duty to defend those actions.

C.    **The Undefended Lawsuits Contain Allegations of Negligence and Bodily Injury That Trigger Arrowood's Duty to Defend.**

The Court of Appeals has held that allegations of negligence in hiring or retaining an employee who commits a sexual assault constitute an "occurrence" that is not excluded by an "expected or intended" exclusion.  *See RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 2 N.Y.3d 158 (2004).  In each of the actions where Arrowood has denied its duty to defend, the claimant alleges bodily injury caused by the negligence of the Diocese.  For example, in *Kelly*, Plaintiff alleges the following causes of action:

(1) Negligence;

(2) Negligent Infliction of Emotional Distress;

(3) Negligent Training and Supervision of Employees; and

(4) Negligent Retention of Employees.

Plaintiff Kelly alleges that the Diocese acted negligently by, among other things, "failing to adequately supervise Defendant, FERRARO ROMANO's access to Plaintiff."  Berringer Decl., Ex. E, ¶ 56.  The *Kelly* Complaint alleges bodily injury caused by the Diocese's alleged negligence, including "physical, emotional, and psychological injuries, along with pain and suffering."  *Id.*, ¶ 70.  Those allegations clearly fall within the insurance coverage provided by the Royal Policies.

Likewise, in the G.C. Complaint, the plaintiff alleges bodily injury, including "severe and permanent psychological, emotional and physical injuries, shame, humiliation, and the inability to lead a normal life" which was "a direct and proximate result of the Church's negligence" or "of

the Diocese's negligence." Berringer Decl., Ex. D, ¶¶ 44 and 55. These allegations are covered by the Royal Policies. It is no excuse for Arrowood to say that there are *other* allegations that, if proven, would cause there to be no insurance coverage. There are often boilerplate "known or should have known" allegations in the underlying CVA complaints. That is not a basis under New York law for an insurance company to avoid its duty to defend under a policy. For example, the Complaint filed by G.C. alleges that the Diocese either knew of Father Ferraro's dangerous propensities or did not know of Father Ferraro's dangerous propensities, but should have known, and was therefore negligent for letting him serve as priest in the church and the Diocese where he would have easy access to boys to abuse. Accordingly, G.C. has alleged that the Diocese can be held responsible for negligence even if it did not have any actual knowledge of Ferraro's dangerous propensities. If that theory of liability were to succeed at trial, there would clearly be an "occurrence." The G.C. Complaint plainly alleges bodily injury caused by *negligence*: "severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to lead a normal life" which was "a direct and proximate result of the Church's negligence" (Berringer Decl., Ex. D, ¶ 44) or "of the Diocese's negligence" (*Id.* ¶ 55). The allegations within the four corners of the G.C. Complaint thus potentially give rise to a covered claim under New York law, and Arrowood has a duty to defend the entire action.

Similarly, the B.R. Complaint alleges that the Diocese and St. Joseph's Parish either knew or should have known of Ferraro's dangerous propensities, and were therefore negligent for "hiring and retaining Father Ferraro as a priest." Berringer Decl., Ex. F, ¶ 56. B.R. alleges bodily injury from this alleged negligence, as covered by the Royal Policies, including "severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to lead a normal life." *Id.*, ¶ 69. The F.C. Complaint also alleges that the Diocese and St. Joseph's Parish

were negligent for, among other things, "failing to supervise Father Ferraro" and allowing him to serve as a priest where he would have easy access to children to abuse.  Berringer Decl., Ex. G, ¶ 85.  F.C. alleges bodily injury from this alleged negligence, such as "physical and psychological injuries, including but not limited to, severe emotional and psychological distress, humiliation, fright, dissociation, anger, depression, anxiety, family turmoil and loss of faith, a severe shock to his nervous system, physical pain and mental anguish, and emotional and psychological damage . . . ."  *Id.*, ¶ 79.

All of these Complaints are potentially covered by the Royal Policies, and, under the New York law set out above, Arrowood has a clear duty to defend the Diocese regarding the Undefended Lawsuits in their entirety.

**D.    Arrowood Must Pay the Reasonable Expense of Independent Counsel for the Diocese.**

The Diocese had the right to select independent counsel to defend itself in what became hundreds of CVA actions, and it selected Jones Day.  Arrowood has refused to pay the reasonable value of the services of Jones Day, counsel selected by the Diocese, instead declaring that Arrowood's obligations are limited to very low hourly rates that are mandated nowhere in the Royal Policies.  The fact that the Diocese paid the rates of independent counsel is compelling evidence that those rates are reasonable.  *See Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 0121, 2015 U.S. Dist. LEXIS 14159, at *11 (S.D.N.Y. Jan. 16, 2015) ("as a logical matter, the amount actually paid to counsel by paying clients is compelling evidence of a reasonable market rate"); *Value Wholesale, Inc. v. KB Ins. Co.*, No. 18-cv-5887, 2020 U.S. Dist. LEXIS 203659, at *18 (E.D.N.Y. Nov. 2, 2020) (finding that "there was no reason that [the policyholder] . . . would have tolerated repeated excessive billing, given that [the insurance company] was contesting its

duty to defend, and had [the insurance company] been successful, [the policyholder] may well have ended up on the hook for all of the fees charged by [defense counsel].")

In *Taco Bell Corp. v. Continental Casualty Co.,* 388 F.3d 1069 (7th Cir. 2004), the Seventh Circuit held that market incentives established a presumption that the attorney's fees incurred were reasonable: "Taco Bell had an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review." *Id.* at 1076. Other courts, likewise, have stated that the policyholder's payment of "its own defense costs without assurance of reimbursement is compelling evidence that the costs were reasonable and necessary." *See, e.g., Rite Aid Corp. v. Liberty Mut. Fire Ins. Co.*, No. 1: CV-03-1801, 2006 U.S. Dist. LEXIS 57094, at *15 (M.D. Pa. Aug. 14, 2006))*; see also Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 1999) ("If the bills were paid, this strongly implies that they meet market standards.")

In Paragraph 3 of its Affirmative Defenses, Berringer Decl., Ex. B, Arrowood states that "Arrowood is defending the Diocese in all Underlying Lawsuits which allege sexual abuse within the Arrowood Policy Periods, and which do not include allegations of abuse by Father Romano Ferraro." In response to Paragraph 51 of the Adversary Proceeding Complaint, Arrowood admitted that "the Diocese selected Jones Day as its counsel to defend the Underlying Lawsuits." None of Arrowood's 22 affirmative defenses seeks to rebut the legal presumption of reasonableness or contend that the defense costs incurred were unreasonable. Accordingly, the Diocese is entitled to a declaration that Arrowood has a duty to pay the full amount of Jones Day defense costs incurred and paid by the Diocese in defense of the underlying complaints for which Arrowood has a duty to defend.

E.       **The Court Should Stay Discovery on the Issue of the Duty to Indemnify.**

Under New York law, the duty to indemnify is narrower and distinct from the duty to defend and is triggered by a factual finding of the insured's liability.  *See Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006).  In contrast to the duty to defend, "a duty to indemnify cannot be triggered by the mere possibility of coverage; rather, it is triggered by an independent factual finding that the insured's liability is within the coverage provided by the policy."  *Fed. Ins. Co. v. Weinstein*, No. 18 Civ. 2526, 2019 U.S. Dist. LEXIS 53165, at *6 (S.D.N.Y. Mar. 28, 2019). No such factual finding has yet been made in connection with any of the CVA claims at issue in this Adversary Proceeding.  Accordingly, discovery and other matters with respect to Arrowood's duty to indemnify should be stayed pending determination of the underlying claims.

That is what the court did in *Weinstein*, where it decided matters relating to the duty to defend and stayed issues relating to the duty to indemnify, noting that "federal courts have stayed declaratory judgment actions, or even declined to exercise jurisdiction at the onset, after finding that issues raised in the actions before them either turn on, or would be resolved in part by, determinations of liability yet to be made in the parallel proceedings."  *Id.* at *6-7.  For that proposition, the court cited *Stoncor Group,  Inc. v. Peerless Insurance Co.*, 322 F. Supp. 3d 505, 519 (S.D.N.Y. 2018), and *Travelers Indemnity Co. v. Philips Electronics North America Corp.*, No. 02 CIV. 9800 (WHP), 2004 WL 193564, at *3 (S.D.N.Y. Feb. 3, 2004).  In *Stoncor*, the court similarly held that the action was "ripe" for jurisdictional purposes but nevertheless granted a motion to stay the action because coverage was dependent on factual issues that were to be decided in the underlying action.  The court in *Weinstein* followed the practice it identified, that courts considering actions for declaratory relief "have generally declined to rule on the issue of indemnity until resolution of the underlying liability claim."  *Weinstein*, 2019 U.S. Dist. LEXIS 53165, at *6; *see also Landpen Co., L.P. v. Md. Cas. Co.*, No. 03 CIV. 3624, 2005 U.S. Dist. LEXIS 2145, at

*29 (S.D.N.Y. Feb. 10, 2005); *Conn. Gen. Life Ins. Co. v. Zurich Am. Life Ins. Co.*, No. X03010510268S, 2003 Conn. Super. LEXIS 910, 2003 WL 1901046, at *4 (Conn. Super. Ct. Mar. 28, 2003) (granting motion to stay counts in complaint addressing the duty of indemnity in the interest of judicial economy).

　　The underlying reason for this well-settled practice is that an insurance company cannot relitigate the issues in the underlying case when determining its duty to indemnify, even if it did not participate in the defense of the underlying litigation.  *See K2 Inv. Group, LLC v. Am. Guar. & Liab. Ins. Co.*, 22 N.Y.3d 578, 585 (2014) (ruling that an insurance company may not "relitigate the issues in the underlying case" as "[i]t is well established that such relitigation is not permitted after an insurer has breached its duty to defend.")  Because the CVA claims have not been resolved, and the basis for the Diocese's liability, if any, has thus not yet been established, this Court should adhere to the "general[]" practice, *Weinstein*, 2019 U.S. Dist. LEXIS 53165, at *6, and stay this adversary proceeding insofar as it concerns Arrowood's duty to indemnify.  The duty to indemnify "is determined by the *actual basis* for the insured's liability to a third person," and that has yet to be determined for the CVA claims asserted against the Diocese.  *Servidone Constr. Corp. v. Sec. Ins. Co.*, 64 N.Y.2d 419, 424 (1985) (emphasis added).

　　For all of these reasons, and to preserve the estate's assets, the Court should grant a stay of discovery and further proceedings concerning the duty to indemnify until the basis of the Diocese's liability, if any, is established by settlement, judgment, or otherwise.

## V.　　RELIEF REQUESTED

　　For the reasons set forth above, the Diocese respectfully requests that this Court grant its Motion for Judgment on the Pleadings and issue the following declarations requested in its Adversary Proceeding Complaint:

(a) Arrowood has a duty to defend the entire action when any claims against the Diocese are potentially covered;

(b) Arrowood may not rely upon materials outside of the complaint to deny or limit its duty to defend;

(c) Arrowood has a duty to pay the full amount of Jones Day defense costs incurred and paid by the Diocese;

(d) Arrowood has an obligation to defend the Diocese in the following Underlying Lawsuits:

> *G.C. v. Diocese of Rockville Centre, et al*,
> Supreme Court of the State of New York, Nassau County,
> Index No. 900035/2019
>
> *Kelly v. Diocese of Rockville Centre, et al.*,
> Supreme Court of the State of New York, Nassau County
> Index No. 900064/2019
>
> *B.R. v. Diocese of Brooklyn, et al.*,
> Supreme Court of the State of New York, Kings County
> Index No. 512125/2020
>
> *F.C. v. Diocese of Rockville Centre, et al.*,
> Supreme Court of the State of New York, Nassau County
> Index No. 900125/2020

The Diocese also seeks an award of attorneys' fees in connection with this motion and its efforts to secure a defense from Arrowood. *See Houston Cas. Co. v. Prosight Specialty Ins. Co.*, 462 F. Supp. 3d 443, 453 (S.D.N.Y. 2020), *reconsideration denied*, No. 18 CIV. 9574 (PAE), 2020 WL 4340383 (S.D.N.Y. July 28, 2020), *and appeal withdrawn*, No. 20-1997, 2020 WL 5667722 (2d Cir. Sept. 18, 2020) (holding that an insurance company's duty to defend covered the fees an insured incurred in bringing an action to establish the duty to defend). New York law clearly allows for an attorneys' fee award when an insurance company initiates a declaratory judgment action seeking to avoid its duty to defend; the same rule applies where the policyholder "cannot be said to have precipitously initiated or needlessly pursued litigation over the duty to defend" and the insurance company effectively forced the policyholder's hand, making "litigation over the duty

to defend inevitable." *Id.*, 462 F. Supp. 3d at 452-53.  Permitting an award of attorneys' fees is particularly appropriate in bankruptcy.  Arrowood should bear the cost of its breach, not the Diocese's creditors.

The Diocese also asks for a stay of any insurance issues relating to the duty to indemnify, as opposed to issues relating to the duty to defend and defense expenses.  As there are no settlements or judgments to evaluate for indemnity coverage, all discovery and any consideration of the duty to indemnify regarding any settlements or judgments should be stayed.  Finally, the Diocese asks that this Court grant such other and further relief as the Court may deem just.


Dated: February 16, 2021                          Respectfully Submitted,

New York, New York                                REED SMITH LLP


                                                  */s/ Christopher A. Lynch*
                                                  Christopher A. Lynch, Esq.
                                                  John B. Berringer, Esq.
                                                  599 Lexington Avenue
                                                  New York, NY 10022
                                                  Telephone: (212) 521-5400
                                                  Facsimile: (212) 521-5450
                                                  E-mail: clynch@reedsmith.com
                                                  E-mail: jberringer@reedsmith.com

                                                  -and-

                                                  REED SMITH LLP
                                                  Timothy P. Law, Esq. (*pro hac vice*)
                                                  Three Logan Square
                                                  1717 Arch Street, Suite 3100
                                                  Philadelphia, PA 19103
                                                  Telephone: (215) 851-8100
                                                  Facsimile: (215) 851-1420
                                                  E-mail: tlaw@reedsmith.com

                                                  *Special Insurance Counsel for*
                                                  *Debtor and Debtor in Possession*

- 21 -

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that I caused to be filed the foregoing Motion for Judgment on the Pleadings and to Stay Proceedings on the Duty to Indemnify and supporting documents were filed using this Court's ECF System which will send notification of such filing on all counsel of record by electronic mail.

REED SMITH LLP

Dated:  February 16, 2021

_____/s/Christopher A. Lynch_____
*Special Insurance Counsel for Debtor and*
*Debtor in Possession*