REED SMITH LLP
Christopher A. Lynch, Esq.
John B. Berringer, Esq.
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: clynch@reedsmith.com
E-mail: jberringer@reedsmith.com

REED SMITH LLP
Timothy P. Law, Esq. (*pro hac vice*)
Three Logan Square
1717 Arch Street , Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: tlaw@reedsmith.com

*Special Insurance Counsel for Debtor and
Debtor in Possession*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>The Roman Catholic Diocese of Rockville Centre, New York,<br><br>        Debtor. | Chapter 11<br><br>Case No. 20-12345-scc |
| THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,<br><br>        Plaintiff,<br><br>against<br><br>ARROWOOD INDEMNITY COMPANY fka Royal Insurance Company, also fka Royal Globe Insurance Company; CERTAIN UNDERWRITERS AT LLOYD'S, LONDON & CERTAIN LONDON MARKET COMPANIES namely Allianz International Ltd., Ancon Insurance Co. (UK) Ltd., Assicurazioni Generali T.S., British National Insurance Co. Ltd. formerly known as British National Life Insurance Society Ltd., CX Reinsurance Co. Ltd. formerly known as C.N.A. Re of London, Compagnie d'Assurancet Maritimes et Terrestres now known as Allianz Global Corporate & Specialty (France), Dominion Insurance Co. Ltd., Excess Insurance Co. Ltd., Lexington Insurance Co., London & Edinburgh General Insurance Co. Ltd., Sovereign Marine & General Insurance Co. Ltd., St. Katherine Insurance Co. Ltd., Storebrand Insurance Ltd., Taisho Marine & Fire (UK) Ltd., Terra Nova Insurance | Adv. Pro. No. 20-1227-scc<br><br><br>**PLAINTIFF AND DEBTOR IN POSSESSION'S REPLY TO ARROWOOD'S OBJECTION TO THE DIOCESE'S MOTION FOR JUDGMENT ON THE PLEADINGS AND TO STAY PROCEEDINGS ON THE DUTY TO INDEMNIFY** |

Co. Ltd., Tokio Marine & Fire (UK) Ltd., Turegum
Insurance Co. Ltd., Unionamerica Insurance Co. Ltd.
and Yasuda Fire & Marine (UK) Ltd.; ALLIANZ
UNDERWRITERS INSURANCE COMPANY;
ASSOCIATED INTERNATIONAL INSURANCE
COMPANY; COLONIAL PENN INSURANCE
COMPANY; FIREMAN'S FUND INSURANCE
COMPANY; INTERSTATE FIRE & CASUALTY
COMPANY, NATIONAL SURETY CORPORATION
and DOE INSURANCE COMPANIES 1 through 10,

        Defendants.

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     LEGAL ARGUMENT .................................................................................................. 2

      A.      The Diocese is Entitled to a Declaration that Arrowood Has a Duty to
            Defend the Entire Action When Any Claim Against the Diocese is
            Potentially Covered ...................................................................................................... 2

      B.      Arrowood Conceded That It May Not Rely Upon Materials Outside the
            Undefended Lawsuit Complaints to Avoid or Limit its Duty to Defend. ............... 8

      C.      The Undefended Lawsuits Contain Allegations of Negligence and Bodily
            Injury That Trigger Arrowood's Duty to Defend. .................................................. 8

      D.      Arrowood Must Pay the Reasonable Expense of Independent Counsel. .............. 10

      E.      The Court Should Stay Discovery on the Issue of the Duty to Indemnify. .......... 12

      F.      The Diocese Should Be Awarded Its Attorneys' Fees In Connection With
            This Motion and Its Efforts to Secure a Full Defense and Defense Costs
            From Arrowood. ...................................................................................................... 14

III.    CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Automobile Insurance Co. of Hartford v. Cook,*
    7 N.Y.3d 131 (2006) ..................................................................................12

*Continental Casualty Co. v. Rapid-American Corp.,*
    80 N.Y.2d 640, 609 N.E.2d 506, 593 N.Y.S.2d 966 (1993)..........................3, 6, 10

*Continental Insurance Co. v. Colangione,*
    107 A.D.2d 978 (1st Dept. 1985)..........................................................10

*Danaher Corp. v. Travelers Indemnity Co.,*
    414 F. Supp. 3d 436 (S.D.N.Y. 2019).....................................................5

*Federal Insurance Co. v. Weinstein,*
    No. 18 Civ. 2526, 2019 U.S. Dist. LEXIS 53165 (S.D.N.Y. Mar. 28, 2019)........12

*Frontier Insulation Contractors, Inc. v. Merchants Mutual Insurance Co.,*
    91 N.Y.2d 169 (1997) ..................................................................2, 7, 9

*Generali-U.S. Branch v. Caribe Realty Corp.,*
    612 N.Y.S.2d 296 (Sup. Ct. N.Y. County 1994) .....................................4

*Generali-U.S. Branch v. Caribe Realty Corp.,*
    Index No. 25499/91, 1994 N.Y. Misc. LEXIS 735 (Sup. Ct. N.Y. County Dec.
    5, 1994) ................................................................................4, 5

*Houston Casualty Co. v. Prosight Specialty Insurance Co.,*
    462 F. Supp. 3d 443 (S.D.N.Y. 2020),
    *reconsideration denied*, No. 18 CIV. 9574 (PAE), 2020 WL 4340383
    (S.D.N.Y. July 28, 2020), *and appeal withdrawn*,
    No. 20-1997, 2020 WL 5667722 (2d Cir. Sept. 18, 2020) .......................15

*In re Union Hosptial Ass'n,*
    226 B.R. 134 (Bankr. E.D.N.Y 1998).....................................................4

*K2 Investment Group, LLC v. American Guarantee & Liability Insurance Co.,*
    22 N.Y.3d 578 (2014) ..................................................................12

*Matter of Viking Pump, Inc.,*
    27 N.Y.3d 244 (2016) ...................................................................7

*NYAT Operating Corp. v. GAN National Insurance Co.,*
    46 A.D.3d 287 (1st Dept. 2007)..........................................................10

*Rhodes v. Liberty Mutual Ins.*,
  67 A.D.3d 881 (2d Dept. 2009) ..............................................................10

*RJC Realty Holding Corp. v. Republic Franklin Insurance Co.*,
  2 N.Y.3d 158 (2004) ..............................................................................10

*Taco Bell Corp. v. Continental Casualty Co.*,
  388 F.3d 1069 (7th Cir. 2004) ...............................................................11

*Travelers Cas. & Sure. Co. v. Alfa Laval, Inc.*,
  37 Misc.3d 1230(a), 2011 N.Y. Misc. LEXIS 6661 (N.Y. Sup. Ct. Nov. 18,
  2011), *aff'd as modified*, 954 N.Y.S.2d 23 (1st Dept. 2012)................................5, 6

*Union Carbide Corp. v. Affiliated FM Ins. Co.*,
  101 A.D. 3d 434 (1st Dept. 2012)............................................................10

Plaintiff and Debtor in Possession The Roman Catholic Diocese of Rockville Centre, New York (the "Diocese"), by and through its attorneys, respectfully submits this reply memorandum of law in response to Arrowood Indemnity Company ("Arrowood")'s Objection [ECF 78] and in further support of the Diocese's Motion for Judgment on the Pleadings and to Stay Proceedings on the Duty to Indemnify ("Motion") [ECF 68].[1]

## I.    INTRODUCTION

In its Motion, the Diocese asks the Court to rule that, as a matter of law, Arrowood has an obligation to defend the Diocese in four Underlying Lawsuits and to issue the following declarations requested in its Adversary Proceeding Complaint: (a) Arrowood has a duty to defend the entire action when any claim against the Diocese is potentially covered; (b) Arrowood may not rely upon materials outside of the complaint to deny or limit its duty to defend; and (c) Arrowood has a duty to pay the full amount of Jones Day defense costs incurred and paid by the Diocese.  The Diocese also seeks a stay of any discovery relating to the duty to indemnify, as opposed to issues relating to the duty to defend and defense expenses, as the Child Victim Act ("CVA") claims have not yet resulted in any settlements or judgments to evaluate for indemnity coverage at the present time.  Finally, the Diocese requests attorneys' fees in connection with its Motion and its efforts to secure a full and complete defense from Arrowood for the CVA claims that potentially implicate its insurance policies.

In response, Arrowood appears to concede, *sub silentio*, that it may not rely upon materials outside of the underlying complaints to deny or limit its duty to defend.  But Arrowood also asserts that it has no duty to defend the four Undefended Lawsuits based on their allegations; that Arrowood owes only a pro rata share of defense costs rather than a full defense where the

---

[1] This Reply tracks the order of issues as raised in the Diocese's initial Memorandum of Law.  Arrowood elected to address the issues in a different order.

allegations of abuse start in one of its policy periods but continue thereafter; and that Arrowood has no duty to pay the full amount of defense costs incurred even when it owes a duty to defend. Arrowood also objects to a stay of discovery in the adversary proceeding. Those positions are incorrect as a matter of New York law. Arrowood has a duty to provide a complete defense and to pay the defense costs in full when the allegations of a complaint are potentially covered by its insurance policy. There is no dispute that New York law governs the interpretation of the insurance policies and that this Court has the power and discretion to stay proceedings on insurance companies' indemnity obligations.

## II. LEGAL ARGUMENT

### A. The Diocese is Entitled to a Declaration that Arrowood Has a Duty to Defend the Entire Action When Any Claim Against the Diocese is Potentially Covered.

Arrowood claims that "New York applies a *pro rata* allocation for defense costs" so where matters allege sexual abuse beginning in an Arrowood policy period but continuing into another insurance company's policy periods(s), Arrowood is required to pay only a pro rata share of defense costs rather than all of the defense costs. (Arrowood Br. at 10.) Arrowood is incorrect. Under New York law, when the allegations of a particular lawsuit trigger Arrowood's duty to defend, Arrowood owes a duty to provide a complete defense to the lawsuit, and only upon assumption of that duty may Arrowood then seek contribution from any other insurance companies who might *also* have an obligation to pay defense expenses.

As an initial matter, Arrowood does not contest bedrock New York law that "[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Frontier Insulation Contrs. v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997), *citing Seaboard Sur. Co. v Gillette Co.*, 64 N.Y.2d 304, 311 (1984). The New York Court of Appeals has already rejected Arrowood's position that it need only pay a pro rata portion of the

defense costs. *See Cont'l Cas. Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 655 (1993). Arrowood cites to *Rapid-American* but, oddly, for the proposition that "New York applies a pro rata allocation for defense costs." (Arrowood Br. at 11.) This is so grossly misleading that it is rebutted by the Court's own words in *Rapid-American*:

> We agree with the Appellate Division that the question whether CNA had a claim for contribution against National is premature. National may eventually have to contribute both to defense costs and to indemnification *(Federal Ins. Co. v Atlantic Natl. Ins. Co.,* 25 N.Y.2d 71; *see also, Uniroyal, Inc. v Home Ins. Co.,* 707 F. Supp. 1368, 1391 [allocating insureds' "net loss" among insurers — and insured to extent self-insured — after settlement of underlying litigations]). However, the duty to defend is broader than the duty to pay, requiring each insurer to defend if there is an asserted occurrence covered by its policy *(Cordial Greens Country Club v Aetna Cas. Sur. Co.,* 41 N.Y.2d 996), and **the insured should not be denied initial recourse to a carrier merely because another carrier may also be responsible *(Squibb Sons v Accident Cas. Ins. Co.,* 1992 US Dist LEXIS 6255, 1992 WL 133899 [SD NY, Apr. 21, 1992, 82 Civ 7327]). That is the "litigation insurance" the insured has purchased *(Servidone Constr. Corp. v Security Ins. Co.,* 64 N.Y.2d 419, 424-425).** When more than one policy is triggered by a claim, pro rata sharing of defense costs may be ordered, but we perceive no error or unfairness in declining to order such sharing, with the understanding that the insurer may later obtain contribution from other applicable policies *(see, Asbestos Ins. Coverage Cases in San Francisco Superior Ct.* [Phase IV], at 41-42, *supra; see also, Avondale Indus. v Travelers Indem. Co.,* 887 F.2d 1200, 1207 [2d Cir], *cert denied* 496 U.S. 906).

*Id.* at 655-56 (emphasis added).

Thus, as the Court of Appeals has made plain, Arrowood may not decline to pay the *full costs* of the defense when it has a duty to defend a particular lawsuit. The Diocese may not be denied "initial recourse" to Arrowood simply because another insurance company – or, indeed, the Diocese – may also be responsible. Arrowood could have paid and asserted contribution rights against any other insurance company through a declaratory judgment action, for example, but Arrowood declined to do so. Arrowood could have asserted a cross-claim in this Adversary Proceeding against any of the other insurance companies who may also owe the Diocese defense costs for particular actions, but again, Arrowood simply has not done that. Finally, Arrowood

could have asserted a claim in the Bankruptcy case against the Diocese for contribution, but once again, has not done so. Instead, Arrowood unilaterally and impermissibly engaged in self-help by paying less than the full defense costs for 31 of the lawsuits for which it conceded its obligation to defend. This is exactly the practice rejected by the Court of Appeals in *Rapid-American*.[2] None of the other precedents cited by Arrowood holds that an insurance company may unilaterally, without a court order, limit its defense obligation to a pro rata portion of the defense.

For its supposed right to unilaterally limit its defense obligation to an allocated share of the cost of defending a lawsuit that alleges injury spanning multiple policy periods, Arrowood cites to the December 1994 decision in *Generali-U.S. Branch v. Caribe Realty Corp.*, Index No. 25499/91, 1994 N.Y. Misc. LEXIS 735, at *2 (Sup. Ct. N.Y. County Dec. 5, 1994). In an earlier April 1994 decision in that case, the court explained that Generali was seeking a declaration that it had no duty to defend or indemnify an action for damages arising out of the lead poisoning of a child on property owned by the insured. *Generali-U.S. Branch v. Caribe Realty Corp.*, 612 N.Y.S.2d 296, 296-97 (Sup. Ct. N.Y. County 1994). The Supreme Court found disputed issues of fact as to whether the child was injured during the policy period covered by the Generali policy, so the court found the potential for coverage and ruled that Generali was obligated to defend the insured in the underlying personal injury action. *Id.* at 297. Then, in the unreported December 1994 decision cited by Arrowood, the court decided that Generali could seek contribution from its insured for the

---

[2] Not only is Arrowood's unilateral allocation contrary to New York state law regarding the duty to defend and to promptly pay, in full, the defense costs, it also serves the purpose of putting Arrowood in a more favorable positon vis-à-vis the Diocese's unsecured creditors. Arrowood was required to pay *all* of the Diocese's defense costs as they were incurred. If Arrowood had done so for pre-petition defense costs and it was later determined that allocation of some of those expenses to the Diocese was warranted, a position the Diocese rejects, Arrowood would have a pre-petition claim for contribution against the Diocese, which claim, if allowed, would be treated consistent with other general unsecured creditors of the Debtors. *See In re Union Hosp. Ass'n*, 226 B.R. 134, 138 (Bankr. E.D.N.Y 1998) ("[A] third party's claim for indemnity and contribution against a debtor arising from a pre-bankruptcy tort is a prepetition claim against the bankruptcy estate, subject to the bankruptcy court's jurisdiction.") Accordingly, Arrowood's actions run afoul of the Bankruptcy Code's carefully crafted priority scheme.

defense costs Generali paid *if* a trier of fact found that there were separate occurrences, one inside the Generali policy period and one outside that policy period, or only one incident outside of the Generali policy period, noting that it was undisputed that an incident of lead poisoning took place before Generali insured the policyholder. *Generali-U.S. Branch*, 1994 N.Y. Misc. LEXIS 735, at *5-6. However, the court found that it was "premature" to calculate any contribution until after the trier of fact ruled. Accordingly, when the two decisions are read together, it is clear that Generali was compelled to pay the defense costs in full, and then seek contribution, and that Generali's claim for contribution would not be ripe until the trier of fact determined when the injury occurred. Here, Arrowood breached its duty to defend by failing to pay the defense costs in full, and unlike the insurance company in *Generali*, Arrowood has not brought any claim for contribution from the Diocese in the bankruptcy (which would require a proof of claim) or from any of Arrowood's co-defendant insurance companies in this adversary proceeding.[3]

Arrowood contends that it is obligated to defend the entire claim only if covered claims and uncovered claims are "intertwined." (Arrowood Br. at 12 (*citing Travelers Cas. & Sur. Co. v. Alfa Laval, Inc.*, 37 Misc.3d 1230(A), 2011 N.Y. Misc. LEXIS 6661, *3 (N.Y. Sup. Ct. Nov. 18, 2011), *aff'd as modified*, 954 N.Y.S.2d 23 (1st Dept. 2012).) In *Alfa Laval*, the Appellate Division relied on Court of Appeals precedent holding that an insured should not be denied "initial recourse" to a defense from the insurance company of its choice. 954 N.Y.S.2d at 25, *citing Continental*

_____

[3] Arrowood claims a right to seek contribution from the Diocese itself, citing *Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-121, 2020 U.S. Dist. LEXIS 213837, at *8-9 (S.D.N.Y. Nov. 16, 2020), to the extent it is determined that an occurrence took place wholly outside *any* insurance company's policy period and when defense costs can be readily apportioned. (Arrowood Br. at 12.) This does not impact the Diocese's initial recourse to Arrowood to defend a CVA claim where there is the potential for coverage. In an earlier reported decision in *Danaher*, the court noted that Travelers had paid a "disproportionate share" of defense costs and was therefore seeking contribution. *Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 450 (S.D.N.Y. 2019) ("to the extent that Travelers has borne a disproportionate share of such costs to date, Travelers seeks the equitable remedy of contribution from the other parties in this action, in proportion to each party's pro rata obligations with respect to the Underlying Claims"). Here, there is no claim by Arrowood that it paid a disproportionate share of the defense or that it paid any defense costs for a claim that alleged abuse wholly outside any insurance company's policy period.

*Cas. Co. v Rapid-American Corp.*, 80 N.Y.2d 640, 655, 609 N.E.2d 506, 593 N.Y.S.2d 966 (1993).

The Appellate Division affirmed the trial court's order *declining* a pro rata sharing of defense costs with the understanding that Travelers, Alfa Laval's longest-standing insurance company, could later obtain contribution. *Id.* But the court held that where the insurance policies of both Travelers and OneBeacon were implicated by the same underlying action, Travelers was required to "provide a complete defense" while retaining a right to later seek contribution from OneBeacon. *Id.*

Instead of following this firmly established procedure under New York law of providing a complete defense and preserving contribution rights, Arrowood simply made up an allocation methodology and applied it unilaterally to reduce Arrowood's payments. Arrowood explains (at least in part) its unilateral allocation methodology with reference to the John Metz underlying case, which is outside of the pleadings in the adversary proceeding and therefore wholly inappropriate to cite in objection to the Diocese's Motion for Judgment on the Pleadings. Arrowood argues that when there is one lawsuit (like the Metz case) making an allegation of abuse by one priest of one child lasting from 1973 until 1977, the abuse that is alleged to have occurred in 1977 is not "intertwined" with the abuse that is alleged to have occurred in 1973, 1974, and 1975; therefore, Arrowood need not defend the part of the lawsuit that alleges abuse in 1977, but because the insurance coverage transitioned from Arrowood to another insurance company in calendar year 1976 (with Arrowood insuring the first nine months), two shares are allocated to that year, of which Arrowood takes one, leading to a 66.67% allocation of defense costs for that lawsuit to Arrowood. (Arrowood Br. at 12-14.) This is neither an agreed nor court-ordered method of defense cost allocation. It has no basis in the applicable insurance policy language or New York law. It is just how Arrowood unilaterally decided to limit its payment of defense costs for some of the lawsuits for which it has a duty to defend. There is no finding of fact that abuse occurred in the Metz case,

for example, or when it occurred, or how many times it happened in what policy periods, just a general approximate time period of bodily injury, allegedly starting during the policy periods of the Arrowood insurance policies. That triggers Arrowood's duty to defend the *entire* lawsuit.

Finally, the Diocese's Motion did not raise the thorny question of allocation for long-tail claims that the New York Court of Appeals has addressed repeatedly, with varying results depending on insurance policy language. Even if that law were potentially applicable to limit Arrowood's duty to defend in the first instance, which it is not, some of Arrowood's insurance policies contain the "prior insurance and non-cumulation of liability" provision that the New York Court of Appeals has held *prevents* any pro rata allocation. *See Matter of Viking Pump, Inc.*, 27 N.Y.3d 244, 264 (2016) ("based on the policy language and the persuasive authority holding that pro rata allocation is inconsistent with non-cumulation and non-cumulation/prior insurance provisions, we hold that all sums allocation is appropriate in policies containing such provisions, like the ones at issue here"). Accordingly, at least as to those Arrowood insurance policies with the "prior insurance and non-cumulation of liability" language, the Diocese will be able to seek coverage for *all* defense costs *and* indemnity from Arrowood under an "all sums" allocation methodology.

The Diocese's Motion simply seeks a ruling that when Arrowood had a duty to defend the CVA lawsuits brought against the Diocese prepetition, its obligation is to defend the entire suit, not some pro rata portion of it. New York law is crystal clear that when any claims are potentially covered, the insurance company "is required to defend the entire action." *Frontier Insulation Contrs.*, 91 N.Y.2d at 175. And, ever since the New York Court of Appeals decision in *Rapid-American*, it has been clear that an argument for pro rata allocation does not provide an excuse for an insurance company to avoid its duty to defend the entire action while preserving its right to seek

contribution. The current Motion seeks the full defense costs to which the Diocese was clearly entitled in the first instance.

**B.     Arrowood Conceded That It May Not Rely Upon Materials Outside the Undefended Lawsuit Complaints to Avoid or Limit its Duty to Defend.**

Arrowood has not contested the law holding that it may not rely on materials outside of the underlying pleadings and the insurance policies in deciding whether there is the potential for coverage and a duty to defend. To the extent Arrowood, despite its concession, continues to cite to such materials, such as by citing to other lawsuits alleging abuse by Father Ferraro beyond those in dispute (Arrowood Br. at 15), such statements should be ignored. The declaration sought by the Diocese would not be an impermissible advisory opinion on a question of law; rather, it is a proper declaration in connection with Arrowood's duty to defend the Diocese in the CVA lawsuits.

**C.     The Undefended Lawsuits Contain Allegations of Negligence and Bodily Injury That Trigger Arrowood's Duty to Defend.**

In its Twelfth Affirmative Defense, Arrowood asserts that it had no duty to defend the Diocese in four lawsuits simply because they allege abuse by Father Romano Ferraro as opposed to some other priest. There is no "Father Ferraro" exclusion in the Arrowood insurance policies. Arrowood now seeks to justify its position by arguing that in each of the Undefended Lawsuits there is an allegation that the Diocese had knowledge of Father Ferraro's dangerous propensities prior to the incidents of abuse alleged in the underlying complaints (Arrowood Br. at 15), but a review of the Complaints presents a different picture.

As Arrowood itself points out, the allegations relating to the Diocese's knowledge assert that the Diocese knew or *should have known* that Father Ferraro presented a danger to children (Arrowood Br. at 16). The Complaints allege that the Diocese was negligent in allowing Ferraro and another priest, Father Fitzgerald, to perform duties as priests without properly investigating their propensities to sexually abuse minors (Arrowood Br. at 17). With regard to the Kelly claim,

Arrowood cites to a punitive damages count (one of several counts) (Arrowood Br. at 17) instead of to the factual allegations of negligence, which most certainly are covered (Diocese Br. at 6). Plaintiff Kelly alleges that the Diocese and the parish "owed Plaintiff a duty of reasonable care to protect the Plaintiff from injury." (Berringer Decl., Ex. E, ¶ 52 [ECF 69-6].) Plaintiff Kelly alleges that the Diocese and the parish breached those duties by, among other things, "failing to adequately supervise Defendant, FERRARO ROMANO's access to Plaintiff." *Id.*, ¶ 56. The Kelly Complaint alleges that the Diocese "through the exercise of reasonable diligence, **should have known** of Defendant, FERRARO ROMANO's propensity for child sexual abuse." *Id.*, ¶ 74 (emphasis added). Similar allegations of negligence are made in each of the Undefended Lawsuits.

While there are allegations in some of the Undefended Lawsuits that the Diocese knew that some unspecified priests were grooming or sexually abusing children, and that this was a widespread, ubiquitous, and systematic problem, those lawsuits plead that liability can be imposed against the Diocese even if the specific priest who committed the abuse was not known by the Diocese to have previously engaged in abuse. A key theory in the Undefended Lawsuits is that the Diocese should have done more to investigate its priests to uncover facts that the Diocese simply did not know. Critically, under New York law, if any of the claims in any particular lawsuit are even potentially covered, Arrowood has a duty to defend. *See Frontier Insulation Contrs.*, 91 N.Y.2d at 175 ("The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.'"). Here, all of the Undefended Lawsuits are based in negligence, on a failure to protect children, not on an intent by the Diocese to harm children. Again, New York law is clear that such allegations are covered. The New York Court of Appeals has held, in the specific context of an underlying case

alleging sexual abuse, that allegations of negligence in hiring or retaining an employee who commits a sexual assault constitute an "occurrence" that is not excluded by an "expected or intended" exclusion. *See RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 2 N.Y.3d 158 (2004).[4] Those are the allegations made in the underlying CVA complaints. Even if Arrowood were correct that some claimants made additional uncovered allegations, in addition to the covered ones, that would not obviate the duty to defend because if there is any potential for coverage of *any* claim, there is a duty to defend the *entire* lawsuit. As such, Arrowood has a duty to defend all of the CVA lawsuits alleging bodily injury during the policy periods of the Arrowood insurance policies, including the Undefended Lawsuits.

### D.    Arrowood Must Pay the Reasonable Expense of Independent Counsel.

Arrowood does not contest that the Diocese had the right to select independent counsel for the defense of the CVA lawsuits due to a conflict of interest between the Diocese and Arrowood. Relying upon matters outside the pleadings, however, Arrowood claims that the Jones Day rates are too high and that the Diocese could have hired cheaper lawyers to defend the CVA lawsuits. Citing cases from ten years ago, when attorney rates were lower, Arrowood observes that some

---

[4] In *NYAT Operating Corp. v. GAN National Insurance Co.*, 46 A.D.3d 287, 287-88 (1st Dept. 2007), the Appellate Division held that because the policyholder's liability in the underlying action "was based on its negligent hiring and retention of the employee, not respondeat superior, the sexual assault was a covered 'accident' within the meaning of the policy, and the exclusion for injuries expected or intended from the standpoint of the insured does not apply . . . . It does not avail [the insurer] to argue that the assault was foreseeable." *Citing RJC Realty Holding Corp.*, 2 N.Y. 3d at 164. *See also Rhodes v. Liberty Mut. Ins.*, 67 A.D.3d 881, 883 (2d Dept. 2009) (Allegations of "recklessness, carelessness, and negligence" created legal or factual basis for concluding bodily injury was not excluded as expected or intended); *Union Carbide Corp. v. Affiliated FM Ins. Co.*, 101 A.D. 3d 434, 435 (1st Dept. 2012) (Despite evidence that policyholder was aware that asbestos could cause injuries and claims could be filed, policyholder's "calculated risk" that asbestos products could be used under the right circumstances, "does not amount to an expectation of damages"). As noted by the Court of Appeals in *Continental Casualty Co. v. Rapid-American Corp.*, 80 N.Y.2d 640, 649 (1993), New York courts construing insurance policies that exclude coverage for "expected or intended" damage "have read such policy terms narrowly, barring recovery only when the insured intended the damages." *Id.*; *see also Continental Ins. Co. v. Colangione*, 107 A.D.2d 978, 979 (1st Dept. 1985) ("Ordinary negligence does not constitute an intention to cause damage" and "[t]o deny coverage, then, the fact finder must find that the insured intended to cause damage.") (citations omitted).

courts have found lower attorney rates to be reasonable. However, Arrowood fails to address the basis for the Diocese's Motion.

Citing to the Seventh Circuit's decision in *Taco Bell*, as well as to cases in this district, the Diocese has shown that there is a "presumption" that the attorneys' fees incurred by the Diocese are reasonable. *See, e.g., Taco Bell Corp. v. Cont'l Cas. Co.,* 388 F.3d 1069, 1076 (7th Cir. 2004) (establishing a presumption that the attorney's fees incurred were reasonable because "Taco Bell had an incentive to minimize its legal expenses (for it might not be able to shift them); and where there are market incentives to economize, there is no occasion for a painstaking judicial review.") Further, the Diocese pointed out that Arrowood nowhere pled that the Jones Day fees were unreasonable. Despite asserting 22 affirmative defenses, not one of those affirmative defenses sought to rebut the presumption of reasonableness that imbues the attorneys' fees incurred by the Diocese in the defense of cases where Arrowood has conceded both a duty to defend and the Diocese's right to select counsel. Arrowood does not contend that the Diocese could have retained Jones Day at lower rates. Rather, Arrowood contends that Jones Day was a poor choice to defend the CVA claims, and that less expensive counsel would have done just fine. Of course, that demeans the importance of the CVA claims to the Diocese and undermines the Diocese's right to select counsel independent of Arrowood. Many scores of CVA lawsuits were asserted against the Diocese, and they required a thoughtful and comprehensive defense by skilled counsel who asserted arguments under the United States Constitution and made a series of other arguments seeking to dismiss specific claims, many of which were dismissed against the Diocese.

Accordingly, based on the pleadings, there is no basis to deny the declaration sought by the Diocese: that Arrowood has the duty to pay the full amount of the attorneys' fees incurred and paid by the Diocese to defend the CVA lawsuits where Arrowood owed a duty to defend.

Arrowood cannot be permitted to stick the Diocese, and its creditors, with a portion of those defense expenses. The Diocese's largest creditors are the claimants in the CVA cases. They should not receive less from the estate simply because Arrowood shirked its obligations to the Diocese.

### E. The Court Should Stay Discovery on the Issue of the Duty to Indemnify.

It is undisputed that, under New York law, the duty to indemnify is distinct and narrower than the duty to defend; the duty to indemnify is triggered by a factual finding of the insured's liability. *See Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006). It is further undisputed that there has been no factual finding of the Diocese's liability, and thus no basis to rule on the duty to indemnify. The duty to indemnify is not yet ripe for discovery or resolution.

Arrowood declares, without citing to any authority, that a "stay of discovery on issues informing whether there will be a duty to indemnify is not the 'general practice' in New York courts" (Arrowood Br. at 3); yet, in its Motion, the Diocese identified precedent holding that there is, indeed, such a general practice. *See e.g. Fed. Ins. Co. v. Weinstein*, No. 18 Civ. 2526, 2019 U.S. Dist. LEXIS 53165, at *6 (S.D.N.Y. Mar. 28, 2019). Arrowood has not addressed or contradicted this law and precedent, which is based on the simple premise that an insurance company's litigation of its duty to indemnify should await the resolution of the factual disputes in the underlying claims and the insurance company may not relitigate those factual disputes. *See K2 Inv. Group, LLC v. Am. Guar. & Liab. Ins. Co.*, 22 N.Y.3d 578, 585 (2014) (ruling that an insurance company may not relitigate the issues in the underlying case in determining the duty to indemnify). This makes sense. Arrowood owes a fiduciary-like duty to defend the CVA claims, and not to prosecute them against the Diocese. It is clear from its Answer that Arrowood wishes to prove that the Diocese acted intentionally in harming children, leaving no stone unturned in that quest. The Diocese paid premiums to Arrowood to *defend* the Diocese from liability claims, not to prosecute claims against

the Diocese. While the Diocese has an obligation to cooperate with Arrowood in the defense of the CVA claims, there is no contention that Arrowood needs additional information to conduct a defense against the claims for the benefit of the Diocese. If the basis of liability in the CVA claims, as determined, is that the Diocese intentionally harmed children, then Arrowood may not owe indemnity. If the basis of liability in the CVA claims, as determined, is that the Diocese acted negligently in failing to protect children from abusive priests, then Arrowood will owe indemnity. And if there is a finding of no liability, then there will be nothing to indemnify. Of course, the most likely result is that there will be some type of settlement resolving the CVA claims, and the duty to indemnify will be based on that settlement.

Without citation to the pleadings, which is the limited record relevant to a Motion for Judgment on the Pleadings, Arrowood contends that the Diocese has "willfully obstructed" Arrowood's claim investigation (Arrowood's Br. at 5). Yet, the Diocese has made available to Arrowood the same CVA claim information it has provided to the claimants and that it has received from the claimants. There is no basis for Arrowood to receive more, or less, relevant CVA claim information than what is provided to and by the claimants in the cases Arrowood is defending because that is the information upon which any settlement or judgment will be based. Arrowood is not defending any investigation by the New York Attorney General, so it is not entitled to those documents, except and to the extent that those documents are provided to the claimants asserting CVA claims in which Arrowood has a duty to defend. There is certainly no basis for Arrowood to turn this Adversary Proceeding into a discovery sideshow in which it seeks to prove that the Diocese bore some malicious intent.

The determination of whether there is a covered "occurrence" or an applicable exclusion to coverage is not made independent of the underlying CVA lawsuits. For the duty to defend, the

coverage determination is based on the allegations made, and as shown above, if *any* allegations are even *potentially* covered, there is a duty to defend. In contrast, the duty to indemnify is based on the liability that is paid in a settlement or a judgment, and in the case of a judgment, on the facts determined by a finder of fact. The common assumption appears to be that the most likely resolution of the CVA claims will be the submission of proofs of claim, a mediation or mediations, and a consensual plan of reorganization. Arrowood threatens that for the "envisioned mediation to have any chance of success, Arrowood must be permitted to investigate the existence of coverage for those claims." (Arrowood Br. at 9.) By providing for an exchange of the same CVA claim information provided by and to claimants bringing claims potentially covered by Arrowood, pursuant to confidentiality protections, costs will be streamlined and Arrowood will not be permitted to act as a prosecutor, rather than a defender, of the Diocese. Importantly, a lack of formal discovery in this adversary proceeding does not mean that there will be no exchange of relevant information. In the context of a mediation, the parties can work with the mediator to ensure that there is an adequate factual record for resolution of the CVA claims.

**F.      The Diocese Should Be Awarded Its Attorneys' Fees In Connection With This Motion and Its Efforts to Secure a Full Defense and Defense Costs From Arrowood.**

Arrowood concedes that if it had brought an action for a declaratory judgment, in which the Diocese prevailed, it would owe the Diocese's attorneys' fees expended to defend that declaratory judgment action (Arrowood Br. at 27). This may explain why Arrowood did not bring a declaratory judgment action seeking (a) to be relieved of its duty to defend the Undefended Lawsuits, (b) to limit its defense of claims that overlap insurance policy periods, or (c) to reduce its duty to pay for the defense provided by Jones Day to some arbitrary lesser billable rate. It is for this very reason that New York courts now recognize that a policyholder may recover its fees when the actions of the insurance company place the policyholder in a defensive position and

compel the policyholder to bring suit. *See Houston Cas. Co. v. Prosight Specialty Ins. Co.*, 462 F. Supp. 3d 443, 453 (S.D.N.Y. 2020) ("*Houston Casualty*"), *reconsideration denied*, No. 18 CIV. 9574 (PAE), 2020 WL 4340383 (S.D.N.Y. July 28, 2020), *and appeal withdrawn*, No. 20-1997, 2020 WL 5667722 (2d Cir. Sept. 18, 2020) (holding that an insurance company's duty to defend covered the fees an insured incurred in bringing an action to establish the duty to defend).

The rule applied in *Houston Casualty* is the current law of New York, allowing for an attorneys' fee award where the policyholder "cannot be said to have precipitously initiated or needlessly pursued litigation over the duty to defend" and the insurance company effectively forced the policyholder's hand, making "litigation over the duty to defend inevitable." *Id.*, 462 F. Supp. 3d at 452-53. As previously noted, permitting an award of attorneys' fees is particularly appropriate in this bankruptcy because Arrowood should bear the cost of its breach, not the Diocese's creditors, which include the CVA claimants. The relief sought in the Diocese's Adversary Proceeding, and particularly in its Motion, is focused on clear and plain issues of New York law that are truly foundational and indisputable.

## III. CONCLUSION

The Diocese respectfully requests that its Motion be granted.

Respectfully submitted,

**REED SMITH LLP**

Dated:  April 15, 2021
New York, New York

_____s/Christopher A. Lynch_____
Christopher A. Lynch, Esq.
John B. Berringer, Esq.
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: clynch@reedsmith.com
E-mail: jberringer@reedsmith.com

Timothy P. Law, Esq. (*pro hac vice*)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: tlaw@reedsmith.com

*Special Insurance Counsel for Plaintiff and Debtor in Possession*

## CERTIFICATION OF SERVICE

I hereby certify that I caused to be filed the foregoing Plaintiff and Debtor in Possession's Reply to Arrowood's Objection to the Diocese's Motion for Judgment on the Pleadings and to Stay Proceedings on the Duty to Indemnify filed using this Court's ECF System which will send notification of such filing on all counsel of record by electronic mail.

REED SMITH LLP

Dated: April 15, 2021

_____/s/Christopher A. Lynch_____
*Special Insurance Counsel for Plaintiff and Debtor in Possession*