USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/23/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                                   :
THE ROMAN CATHOLIC DIOCESE OF                                      :
ROCKVILLE CENTRE, NEW YORK,                                        :
                                                                   :
                                    Plaintiff,                     :        20-CV-11011 (VEC)
                                                                   :
                    -against-                                      :        OPINION & ORDER
                                                                   :
ARROWOOD INDEMNITY COMPANY,                                        :
                                                                   :
                                    Defendant.                     :
-------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

  The Roman Catholic Diocese of Rockville Centre, New York (the "Diocese") sued

Arrowood Indemnity Company ("Arrowood") alleging breach of contract and seeking

declaratory judgments about the scope of Arrowood's duties to defend and indemnify the

Diocese in connection with claims involving childhood sexual abuse by members of the clergy.

*See* Compl., Dkt. 51.[1] The Diocese moved for a partial judgment on the pleadings and for a stay

of the proceedings as to the duty to indemnify. *See* Not. of Mot., Dkt. 55. Arrowood moved to

amend its answer to convert some of its affirmative defenses to counterclaims. *See* Not. of Mot.,

Dkt. 65. For the following reasons, the pending motions are GRANTED in part and DENIED in

part.

---

[1]  The Diocese originally filed its complaint in the U.S. Bankruptcy Court for the Southern District of New York as part of an adversary proceeding brought against several insurance companies. *See* Compl., 20-AP-1227, Dkt. 1. On December 29, 2020, Arrowood moved to withdraw the reference to the Bankruptcy Court. Mot. to Withdraw, Dkt. 1. Shortly thereafter, other insurance carriers followed suit. After various judges declined to transfer cases brought by other insurance companies to withdraw the reference to the Undersigned as related matters, *see, e.g.*, 20-CV-11011, Dkt. 20; 21-CV-71, Dkts. 13, 16, 46, this Court withdrew the bankruptcy reference as to the Diocese's claims against Arrowood, *see* Opinion, Dkt. 42.

**BACKGROUND**

On February 14, 2019, New York state enacted the Child Victims Act ("CVA").  Compl.

¶ 2.[2]  The CVA expanded the statute of limitations that applies to civil suits against parties

whose actions or omissions facilitated sexual abuse of children.  *Id.*  Hundreds of alleged victims

of child sexual abuse have filed suit against the Roman Catholic Diocese of Rockville Centre,

New York, which is the seat of the Roman Catholic Church on Long Island.  *Id.* ¶¶ 3, 5.  To

facilitate its defense of those claims, many of which are decades old, the Diocese has identified

insurance policies that it contends were in effect when the alleged abuse occurred.  *Id.* ¶ 19; List

of Ins. Policies by Policy Period, Dkt. 51-1.  Royal Insurance Company, which is now known as

Arrowood Indemnity Company, insured the Diocese from the Diocese's founding in 1957[3]

through 1976.  Compl. ¶ 22; Ans., Dkt. 53 ¶ 7.  According to Arrowood, the Diocese has asked it

to defend 129 lawsuits filed pursuant to the CVA.  Resp., Dkt. 58 at 2.  Arrowood contends that

it has agreed to defend 121 of those lawsuits and has paid $620,000 towards the Diocese's

defense costs.  *Id.* at 2, 10.

On October 1, 2020, given the likely financial impact of the newly filed sexual abuse

claims, the Diocese filed for Chapter 11 protection.  *See* Petition, 20-BK-12345, Dkt. 1.[4]  On the

same day that it filed its Chapter 11 petition, the Diocese commenced an adversary proceeding

against several insurance companies, including Arrowood, to address coverage disputes related

to the sexual abuse claims.  *See* Compl., 20-AP-1227, Dkt. 1.  In the adversary proceeding, the

Diocese sought declaratory judgments outlining its rights and the insurance companies'

---

[2]       The facts, drawn from the parties' filings, are assumed to be true for the purpose of deciding the present motions.

[3]       The Diocese was established in 1957 from territory that had previously been part of the Diocese of Brooklyn.  Ans., Dkt. 53 ¶ 86.

[4]       The filing of the bankruptcy petition stayed all lawsuits pending against the Diocese.

obligations pursuant to the various insurance policies at issue.  *See id.* ¶¶ 82–87.  The Diocese

also alleged claims for breach of contract against the insurance companies for violating their duty

to defend and for disclaiming their obligations to indemnify the Diocese on some claims.  *Id.* ¶¶

88–92.[5]

On May 17, 2021, the Undersigned granted Arrowood's motion to withdraw the

reference to the Bankruptcy Court as to the Diocese's claims against it.  *See* Opinion, Dkt. 42.[6]

Accordingly, the Diocese's claims against Arrowood that had been part of the adversary

proceeding are now before this Court.  On June 16, 2021, the Diocese moved for a partial

judgment on the pleadings and for a stay of the proceedings as to the duty to indemnify.  Not. of

Mot., Dkt. 55.[7]  Arrowood opposed that motion.  Resp., Dkt. 58.  On June 25, 2021, Arrowood

moved to amend its answer, Not. of Mot., Dkt. 65; and the Diocese opposed, Resp., Dkt. 70.

---

[5]       The Diocese also brought a separate breach of contract claim against London Market Insurers ("LMI"),
alleging violations of an aggregate excess agreement.  *See* Compl., 20-AP-1227, ¶¶ 93–97.  Because that breach of
contract claim does not concern Arrowood, it is not discussed here.

[6]       The Diocese's claims against LMI are currently pending before Judge Cronan.  *See* 21-CV-71, Dkt. 50
(granting LMI's motion to withdraw the reference to the Bankruptcy Court).  The motions to withdraw the
bankruptcy references as to the Diocese's claims against other insurance companies remain pending before other
judges.  *See* 21-CV-7706, Dkt. 1 (motion to withdraw the bankruptcy reference brought by three insurance
companies known as the Allianz Defendants); 21-CV-9304, Dkt. 1 (motion to withdraw the bankruptcy reference
brought by Evanston Insurance Company).

[7]       The Diocese's motion for partial judgment on the pleadings was originally filed before the Bankruptcy
Court.  *See* 20-AP-1227, Dkt. 68.  When the Undersigned withdrew the bankruptcy reference, the parties refiled the
motion on this Court's docket.  *See* Not. of Mot., Dkt. 55.

The Committee of Unsecured Creditors (the "Committee"), which represents alleged victims of sexual
abuse with claims against the Diocese in the underlying Chapter 11 bankruptcy proceeding, moved to join the
Diocese's motion for partial judgment on the pleadings.  *See* Mot., Dkt. 64.  The Committee's four-page filing
expresses its support for some of the Diocese's arguments.  *Id.*  Without taking a position as to whether the
Committee has standing to join the motion, the Court denies the Committee's motion; it does not add any factual
allegations or legal analysis that is not already before the Court.

## DISCUSSION

### I.      Motion for Judgment on the Pleadings

#### A.  Legal Standard

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical

to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of*

*Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *see also Ashley v. Gonzalez*, No. 19-CV-6282,

2020 WL 7027501, at *2 (S.D.N.Y. Nov. 30, 2020) ("The difference between a Rule 12(b)(6)

and Rule 12(c) motions is largely academic because the standard under Rule 12(c) is the same as

the standard under Rule 12(b)(6)." (cleaned up)).  The Court must accept as true all material

factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.

*Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).  To survive a Rule 12(c) motion, the

complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  *Id.* at 44 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  To

satisfy the "plausibility" requirement, a complaint must do more than make "[t]hreadbare recitals

of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678.  Rather, the elements of the cause

of action must be supported by well-pleaded facts that permit the Court to infer "that the pleader

is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"On a [Rule] 12(c) motion, the court considers the complaint, the answer, any written

documents attached to them, and any matter of which the court can take judicial notice for the

factual background of the case."  *L-7 Designs, Inc. v. Old Navy LLC*, 647 F.3d 419, 422 (2d Cir.

2011) (cleaned up).  "A complaint is [also] deemed to include any written instrument attached to

it as an exhibit, materials incorporated in it by reference, and documents that, although not

incorporated by reference, are 'integral' to the complaint."  *Id.* (quoting *Sira v. Morton*, 380 F.3d

57, 67 (2d Cir. 2004)).  For a document to be "integral" to the complaint, the complaint must

"rel[y] heavily upon its terms and effect." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

### B. Prohibition on Advisory Opinions

In its motion for partial judgment on the pleadings, the Diocese seeks several declaratory judgments, including that "(a) Arrowood has a duty to defend the entire action when any claims against the Diocese are potentially covered; and (b) Arrowood may not rely upon materials outside of the complaint to deny or limit its duty to defend." *See* Mem. of Law, Dkt. 56 at 20.

Under the Declaratory Judgment Act, "in a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . . ." 22 U.S.C. § 2201.  "A declaratory judgment action presents an actual controversy if 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *In re Prudential Lines Inc.*, 158 F.3d 65, 70 (2d Cir. 1998) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Although federal courts are prohibited from opining on abstract questions, *see Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 242 (1952), "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree," *see Certain Underwriters at Lloyd's London v. St. Joe Mins Corp.*, 90 F.3d 671, 675 (2d Cir. 1996) (internal citation omitted).

In the insurance context, a court may decline to enter a declaratory judgment as to the insurer's duty to defend and indemnify if the question "is not amenable to mass resolution but must be determined in each case with specific reference to, *inter alia*, the nature of the injury

claimed . . . ." *Am. Home Prods. Corp. v. Liberty Mut. Ins. Co.*, 748 F.2d 760, 766 (2d Cir. 1984).  In this matter, questions about Arrowood's duty to defend are best answered when tethered to particular sexual abuse claims or sets of facts relating to particular sexual abuse claims.  Accordingly, in an exercise of its discretion, the Court declines to enter abstract declarations as to the scope of Arrowood's duty to defend.  The Court will instead address the scope of Arrowood's duty to defend in the context of the particular claims and sets of facts discussed in the parties' pleadings.

Accordingly, the Diocese's motion that the Court declare in the abstract (a) that Arrowood has a duty to defend the entire action when any claims against the Diocese are potentially covered and (b) that Arrowood may not rely upon materials outside of the complaint to deny or limit its duty to defend is denied.

## C.  The *G.C.*, *Kelly*, *B.R.*, and *F.C.* Lawsuits

The Diocese seeks a declaratory judgment that Arrowood has an obligation to defend the Diocese in the following four lawsuits:

- *G.C. v. Diocese of Rockville Ctr.*, No. 900035/2019 (Sup. Ct. Nassau Cnty. 2019)

- *Kelly v. Diocese of Rockville Ctr.*, No. 900064/2019 (Sup. Ct. Nassau Cnty. 2019)

- *B.R. v. Diocese of Brooklyn*, No. 512125/2020, (Sup. Ct. Kings Cnty. 2020)

- *F.C. v. Diocese of Rockville Ctr.*, No. 900125/2020 (Sup. Ct. Nassau Cnty. 2020)

*See* Compl. ¶¶ 56–67; Mem. of Law, Dkt. 56 at 20.  Arrowood has disclaimed any obligation to defend the Diocese in those four lawsuits, all of which allege abuse by Romano Ferraro, a priest at the time of the alleged abuse.  Ans. ¶¶ 80, 83, 94–108.[8]

Arrowood contends that under the relevant insurance policies,[9] it is only required to cover

---

[8]     The *Kelly* lawsuit alleges abuse by Romano and Fitzgerald, another priest.  *See* Ans. at p. 58.

[9]     The abuse allegedly suffered by the plaintiffs in the four lawsuits occurred between 1971 and 1977.  *See* G.C. Compl., Dkt. 57-4 at p.1 (alleging abuse between 1975 and 1977); Kelly Compl., Dkt. 57-5 ¶¶ 36–38 (alleging

bodily injury "caused by an occurrence." *Id.* ¶ 14.  The pertinent insurance policies define "occurrence" to mean "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* ¶¶ 17–18.  Arrowood pleads that given the fact that the Diocese was aware of Ferraro's sexual proclivities and sexual abuse of children before the abuse alleged in those four lawsuits, the bodily injuries alleged in the lawsuits fall under the insurance policies' exclusion pertaining to occurrences that are "expected" or "intended." *Id.* ¶ 108; Resp., Dkt. 58 at 19–22.

With respect to the duty to defend, the inquiry is not whether the claims at issue fall within the insurance policy's exclusion.  The parties agree that under New York law,[10] an insurer has a duty to defend "whenever the allegations within the four corners of the complaint potentially give rise to a covered claim or where the insurer had actual knowledge of facts establishing a reasonable possibility of coverage." *See* Mem. of Law, Dkt. 56 at 10 (quoting *Frontier Insulation Contrs. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997) (internal citation omitted)); Resp., Dkt. 58 at 19 (reciting the same quotation from the same case). Arrowood argues that the Court can determine, looking only at "Arrowood Policies and the detailed allegations contained in [the relevant] Complaints," that it does not have a duty to defend the *G.C.*, *Kelly*, *B.R.*, and *F.C.* lawsuits.  Resp., Dkt. 58 at 15.

An insurer is required to "provide a defense unless it can 'demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation.'"  *Allstate Ins. Co. v.*

---

abuse in 1971); B.R. Compl., Dkt. 57-6 ¶ 19 (alleging abuse between 1975 and 1976); F.C. Compl., Dkt. 57-7 ¶ 61 (alleging abuse from 1973 to 1977).  Arrowood provided insurance coverage to the Diocese from 1957 to 1976. Compl., Dkt. 51 ¶¶ 19, 22; Ans. ¶ 7.  In this section, the Court declines to consider Arrowood's duty to defend the Diocese for claims that straddle multiple insurers' policy periods.  The Court considers Arrowood's obligation to defend the Diocese in such cases in the next section.

[10]        The parties agree that New York law applies.  *See* Mem. of Law, Dkt. 56 at 9–10; Resp., Dkt. 58 at 2.

*Mugavero*, 79 N.Y.2d 153, 159 (1992) (quoting *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325 (1974)).  Put differently, "[a]n insurer is relieved of the duty to defend only if there is no possible factual or legal basis on which the insurer might eventually be held to be obligated to indemnify the insured under any provision of the insurance policy." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (cleaned up).

The narrow set of circumstances in which courts have found that an exclusion in an insurance policy negates the insurer's duty to defend confirms the exceedingly broad scope of the duty.  *See, e.g.*, *Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP v. Underwriters at Lloyd's, London*, 918 F. Supp. 2d 114, 121–22 (E.D.N.Y. 2013) (finding no duty to defend the insured against claims arising out of the claimant's activities as an officer of an entity when the policy explicitly excluded coverage relating to such activities); *Am. Home Prod. Corp. v. Liberty Mut. Ins. Co.*, 565 F. Supp. 1485, 1499–500 (S.D.N.Y. 1983), *aff'd as modified*, 748 F.2d 760 (2d Cir. 1984) (finding no duty to defend the insured when the claimant's injuries occurred completely outside the policy period);[11] *Lionel Freedman, Inc. v. Glens Falls Ins. Co.*, 27 N.Y.2d 364, 369 (1971) (finding no duty to defend the insured when the injury occurred in an elevator shaft and the policy excluded hazards arising from the maintenance or use of any elevator).

The Diocese argues that given the "exceedingly broad" scope of the duty to defend, allegations of bodily injury caused by the negligence of the insured are not "solely and entirely" occurrences that are "intended" or "expected" such that the insurer has no duty to defend.  Mem. of Law, Dkt. 56 at 14–16; *Allstate Ins. Co.*, 79 N.Y.2d at 159.  The Court agrees that in many, if

---

[11]    In this case, Arrowood contends that it has refused to defend the Diocese in four cases where the injuries allegedly occurred completely outside the policy period.  *See* Resp., Dkt 58 at 2, 2 n.2.  Because the Diocese did not object to Arrowood's refusal to defend those cases in the motion pending before the Court, it appears that the Diocese agrees that Arrowood has no obligation to defend those lawsuits.

not most, instances, allegations of injuries caused by negligence are not likely to fall within an exclusion for injuries that are "intended" or "expected," especially because the insurer would have to prove that there is "no possible factual or legal basis" for a conclusion other than that the injuries were intended or expected.  *Allianz Ins. Co.*, 416 F.3d at 115; *See also Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 138 (2006) ("The factfinder in the underlying action may indeed ultimately reject the notion that [the defendant] negligently caused [the claimant's] death given the evidence of intentional behavior, but that uncertain outcome is immaterial to the issue raised here — the insurer's duty to defend in an action where it is alleged that the injury was caused by the negligent conduct of the insured.").

But the mere presence of a cause of action sounding in negligence does not, *per se*, preclude applicability of the intended or expected exclusion.[12]  In *Allstate Ins. Co.*, 79 N.Y.2d at 153, for example, the insured, Edward Mugavero, was accused of sexually abusing two children who were being taken care of by his wife.  The children's mother sued, alleging that Mugavero: (a) "with force and violence, and against the consent of the infant plaintiffs intentionally and without provocation . . . sexually abused her children;" (b) "committed these intentional actions without intending the resultant serious injuries;" and (c) "committed such acts of assault, sodomy and sexual abuse negligently and carelessly, and with wanton disregard of others."  *Id.* at 157. Mugavero's insurance company brought a declaratory judgment action seeking a judgment that it was not obligated to defend or indemnify Mugavero because the coverage he sought fell within the policy exclusion "for bodily injury intentionally caused by an insured person."  *Id.* at 156–57.

---

[12]     The Diocese's implied argument that *any* allegation of negligence precludes an insurer from disclaiming its duty to defend based on an expected or intended exclusion goes too far.  To support that contention, the Diocese cites *RJC Realty Holding Corp. v. Republic Franklin Ins. Co.*, 2 N.Y.3d 158 (2004).  *See* Mem. of Law, Dkt. 56 at 14.  But far from supporting such a categorical premise, that case simply suggests that in instances where an employer had no prior knowledge of an employee's past behavior, it was inappropriate to find that that there was no conclusion other than that the employer intended or expected the employee to injure his clients.  *RJC Realty Holding Corp.*, at 164–65.  Because the four lawsuits at issue here all allege that the Diocese had prior knowledge of the priest's sexual misconduct, the holding in *RJC Realty Holding Corp.* is inapposite.  *See also* Resp., Dkt. 58 at 21–22.

After reciting the broad duty to defend standard, the Court of Appeals found that "the analysis depends on the facts which are pleaded, not the conclusory assertions." *Id.* at 162. The Court of Appeals held that the insurance company was not obligated to defend Mugavero:

> [The negligence] cause of action . . . sets forth the totally inconsistent assertion that these intentional acts were committed "negligently and carelessly, and with wanton disregard of others." No different or additional facts are pleaded. Nor do any of defendants' motion papers suggest that there is the least evidentiary support for the conclusory characterization of Mugavero's conduct as negligent or provide an explanation of how the intrinsically intentional acts of assault, sodomy and sexual abuse could be negligently performed.

*Id.* at 163. In that case, despite the inclusion of a negligence cause of action, the insurer did not have a duty to defend the insured.

The question here is whether, based on the allegations in the *G.C.*, *Kelly*, *B.R.*, and *F.C.* complaints, all of which allege causes of action sounding in negligence, the Court can conclude that Arrowood has demonstrated "that the allegations of the complaint[s] cast [those] pleading[s] solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *Id.* at 159. Even when the conclusory allegations in the four complaints are disregarded, this is a close call. For example, the complaints include allegations that: (1) Ferraro left the seminary "because he was conflicted over his sexual proclivity for boys" but Diocesan officials, who knew that was Ferraro's concern, persuaded Ferraro to return to the seminary, *see* G.C. Compl., Dkt. 57-4 ¶ 22; B.R. Compl., Dkt. 57-6 ¶ 23;[13] (2) the Diocese of Brooklyn knew that Ferraro had been dishonorably discharged from the Navy based on an allegation of child sexual abuse, *see* G.C. Compl. ¶ 24; B.R. Compl. ¶ 25; (3) the Diocese of Brooklyn removed Ferraro from a church in Brooklyn in 1973 because of allegations he had

---

[13]   Although the complaints state that Ferraro entered the seminary in 1954 and was ordained as a priest by the Diocese of Brooklyn in May 1960, they do not state when unnamed "Diocesan officials" purportedly convinced Ferraro to return to the seminary. *See* G.C. Compl. ¶ 22; B.R. Compl. ¶ 23. Accordingly, it is unclear whether the alleged persuasion occurred before or after 1957, the year the Diocese of Rockville Centre was established from territory that had been part of the Diocese of Brooklyn. Ans. ¶ 86.

sexually abused a child, *see* G.C. Compl. ¶ 25; B.R. Compl. ¶ 26; and (4) the Diocese of

Brooklyn sent Ferraro to different psychiatrists to attempt treatment of his pedophilia, *see* G.C.

Compl. ¶ 25; B.R. Compl. ¶ 26; F.C. Compl., Dkt. 57-7 ¶ 70.

Given those allegations, which involve conduct and knowledge that occurred either prior

to or concurrently with the abuse alleged in the four complaints, the Diocese of Rockville Center

may have "expected" additional sexual abuse, including of plaintiffs G.C., Kelly, B.R., and F.C.

But the Court cannot conclude that "there is no possible factual or legal basis on which the

insurer might eventually be held to be obligated to indemnify the insured . . . . " *Allianz Ins. Co.*,

416 F.3d at 115.[14]  The allegations in the complaints do not provide sufficient detail about who

in the Diocese of Rockville Centre knew what when and whether individuals within the Diocese

of Brooklyn communicated what they knew to their colleagues in the Diocese of Rockville

Centre such that the only permissible conclusion is that the sexual abuse had to have been

intended or expected by the Diocese of Rockville Centre.  Although those and other questions

may need to be answered before Arrowood's duty to indemnify can be determined, given the

exceedingly broad scope of the duty to defend, Arrowood must defend the Diocese of Rockville

Centre as to those four lawsuits.

In short, the Diocese's motion for a judgment on the pleadings seeking a declaratory

judgment that Arrowood has a duty to defend the Diocese in the four lawsuits that allege abuse

by Ferraro is granted.

### D.  The Thirty-One Straddle Lawsuits

The Diocese seeks a declaratory judgment that "Arrowood has a duty to defend the entire

action when any claims against the Diocese are potentially covered."  Mem. of Law, Dkt. 56 at

---

[14]     Put another way, the facts here are not analogous to a lawsuit in which the plaintiff was injured in an
elevator and the defendant has an insurance policy that excludes injuries relating to elevators.  *Lionel Freedman,
Inc.*, 27 N.Y.2d at 369.

20; Compl., Dkt. 51 ¶ 46.  More specifically, the Diocese complains that as to so-called straddle

lawsuits, that is, lawsuits that involve allegations of abuse that span the policies of more than one

insurer, Arrowood "unilaterally declared that it would only pay an allocated share of defense

costs rather than assuming its full duty to defend."  Compl. ¶ 44.  Arrowood contends that in

straddle lawsuits, it is "obligated only to pay its share of defense costs."  Ans. Seventeenth

Affirmative Defense.  This issue affects Arrowood's obligation to defend thirty-one lawsuits.

*See* Smith Decl., Dkt. 59 ¶ 19 (listing the 31 lawsuits).  The Diocese contends that Arrowood

must pay the full defense costs associated with the straddle lawsuits, *see* Mem. of Law, Dkt. 56

at 12–13, while Arrowood argues that it should only be required to pay its pro rata share of the

defense costs, *see* Resp., Dkt. 58 at 10–14.

Under New York law, there are two main approaches for apportioning defense or

indemnity costs that implicate more than one insurer: joint and several; and pro rata.  Under the

joint and several approach, "the insured collects the total liability under any one triggered policy,

up to that policy's coverage limit.  The claim is paid under the policy that the insured selects.

The insurer on that policy may then seek contribution from the issuers of any other triggered

policies."  *Olin Corp. v. Ins. Co. of N. Am.*, 221 F.3d 307, 322 (2d Cir. 2000) (internal citation

omitted).  Under the pro rata approach, "liability for injury or damages is allocated among all

triggered policies . . . based on some objective factor."  *Id.*  Under this approach, it is the

insured's burden to seek recovery from each insurance company that insures some part of the

holder's loss.  *Mt. McKinley Ins. Co. v. Corning Inc.*, 2012 NY Slip Op 33555(U), 2012 N.Y.

Misc. LEXIS 6531, at *10 (Sup. Ct. N.Y. Cnty. Sept. 7, 2012).[15]  As to the straddle lawsuits, the

---

[15]     Although the cited cases discuss the two approaches in the context of the duty to indemnify, the same
methods are used to apportion defense costs.  *See, e.g.*, *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 655–56
(1993) (discussing both methods in the context of the duty to defend); *Columbus McKinnon Corp. v. Travelers
Indem. Co.*, 367 F. Supp. 3d 123, 140-49 (S.D.N.Y. 2018) (same); *Travelers Cas. & Sur. Co. v. Alfa Laval, Inc.*, No.
650667/09, 2011 WL 9557466, at *2 (Sup. Ct. N.Y. Cnty. Nov. 18, 2011) (same).

Diocese contends that the joint and several approach must be applied while Arrowood argues that the pro rata approach is required.  Mem. of Law, Dkt. 56 at 12–13; Resp., Dkt. 58 at 10–14.

The parties urge the Court to resolve this issue as a matter of law.  *See* Mem. of Law, Dkt. 56 at 12 (arguing that the failure to provide a full defense with respect to the straddle lawsuits is "a clear breach of the duty to defend under New York law"); Resp., Dkt. 58 at 11 ("New York applies a *pro rata* allocation for defense costs.").  Both parties cite *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 655–56 (1993), to support their respective position.  But that case does not favor one approach over the other as a matter of law; instead, that decision holds that either approach may be appropriate.  *See id.*  ("When more than one policy is triggered by a claim, pro rata sharing of defense costs may be ordered, but we perceive no error or unfairness in declining to order such sharing, with the understanding that the insurer may later obtain contribution from other applicable policies.").

"In determining which approach to employ, [courts] look first to the language of [the pertinent insurance] policies."  *Olin Corp.*, 221 F.3d at 223.  An insurance policy may include provisions that define whether numerous incidents of bodily injury inflicted by the same cause are considered a single occurrence or multiple occurrences under the insurance policy.  *See*, *Roman Cath. Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 21 N.Y.3d 139, 151–52 (2013) (reviewing an insurance policy provision that suggests that sexual abuse by the same person over time should be considered a single occurrence and discussing a different insurance policy provision that suggests that such abuse should be considered multiple occurrences).  Whether the bodily injuries at issue are considered single or multiple occurrences is an important factor when deciding whether the joint and several or the pro rata approach is more appropriate.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Roman Catholic Diocese of Brooklyn*, No. 653575/2014, 2017 WL 748834, at *5 (Sup. Ct. N.Y. Cnty. Feb. 27, 2017)

(reviewing caselaw that holds that the joint and several approach is more appropriate when allocating costs associated with injuries considered to be a single occurrence and that the pro rata approach is better when the injuries are considered multiple occurrences). Additional provisions in an insurance policy may also signal that one approach is more appropriate than the other. *See, e.g.*, *Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 224–25 (2002) (finding that pro rata allocation is more appropriate when an insurance policy includes a provision providing coverage for "'all sums' of liability that resulted from an accident or occurrence 'during the policy period'"); *Roman Cath. Diocese of Brooklyn*, 21 N.Y.3d at 154 (discussing a similar provision).

Here, because the Diocese does not offer any analysis or even quote the relevant language from the insurance policies at issue, the Court has no way to determine whether its preferred joint and several approach is more appropriate than Arrowood's pro rata approach.[16] *See* Resp., Dkt 58 at 13 (noting that the Diocese has failed "to cite any policy language in support of its argument"). Without analyzing the relevant insurance policies,[17] the Court cannot declare that Arrowood must pay for all of the defense costs associated with the straddle lawsuits.[18]

---

[16]    The Diocese attempted to correct that deficiency by discussing some of the relevant provisions from the policy in its reply brief in support of its motion for partial judgment on the pleadings. *See* Reply, Dkt. 60 at 7. The Court will not consider arguments made for the first time in a reply brief. *See Connecticut Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) ("Issues raised for the first time in a reply brief are generally deemed waived."); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) (collecting cases holding that arguments may not be made for the first time in a reply brief).

[17]    The Diocese complains bitterly that Arrowood's choice to use the pro rata approach was impermissibly unilateral, arguing that unilateral action was improper because Arrowood could have paid the entire defense costs and sought contribution from the other insurance carriers. *See, e.g.*, Reply, Dkt. 60 at 3–4. But if the Diocese had its way, it would unilaterally impose the joint and several approach on Arrowood, even though, under the pro rata approach, the Diocese could have sought defense costs from the other insurance carriers who insure the balance of the time implicated by the straddle lawsuits. Because the Diocese has already sued many of those insurance companies, *see* 20-AP-1227; 21-CV-71; 21-CV-7706; 21-CV-9304, it is well situated to enforce any such requests for defense costs.

[18]    Although the only motion pending at this point is the Diocese's motion for a declaratory judgment that the joint and several approach is more appropriate, were the insurance policies to be inconclusive, the Court would agree with Arrowood that the pro rata approach is better in this instance. Courts have found that the joint and

14

The Diocese's motion for a judgment on the pleadings that Arrowood has a duty to defend the entire action when any claims against the Diocese are potentially covered as applied to the thirty-one straddle lawsuits is denied.

### E.   The Jones Day Defense Costs

The Diocese also seeks a declaratory judgment that "Arrowood owes a duty to pay the full amount of defense costs incurred and paid by the Diocese."  Compl. ¶ 55; *see also* Mem. of Law, Dkt. 56 at 20.  The Diocese asserts that Arrowood has not agreed to pay the reasonable value of the services provided by the law firm Jones Day, which represents the Diocese in the underlying sexual abuse lawsuits.  Compl. ¶ 53.  Arrowood denies that allegation.  Ans. ¶ 53.

The parties agree that Arrowood has an obligation to pay "reasonable" defense costs. Mem. of Law, Dkt. 56 at 16; Resp., Dkt. 58 at 23.  The Diocese does not include any information in its complaint about the amount the Diocese has actually paid to Jones Day, its hourly rates by attorney position, the number of hours the law firm has expended on the underlying lawsuits, or what legal tasks the lawyers have completed.  Similarly, neither pleading includes the amount that Arrowood has reimbursed the Diocese for defense costs or on what hours and rates that amount was based.[19]  The Diocese instead argues that the Court should simply order Arrowood to pay the unspecified total amount it paid Jones Day because the "fact that the Diocese paid the

---

several approach is more appropriate when two insurance policies concurrently cover the same time period, *see Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 223 (2002), or when the injuries are considered a "single occurrence," even when they span multiple policy periods, *see Nat'l Union Fire Ins. Co. of Pittsburgh v. Roman Cath. Diocese of Brooklyn,*, No. 654575/2014, 2017 WL 748834, at *5 (Sup. Ct. N.Y. Cnty. Feb. 27, 2017). Here, neither situation appears to be in play: Arrowood has alleged that the thirty-one straddle lawsuits involve successive and not concurrent insurance policies.  *See* Ans. Nineteenth Affirmative Defense; Resp., Dkt. 58 at 11. And the Court of Appeals has found that, absent insurance policy language to the contrary, several acts of sexual abuse constitute multiple occurrences when the sexual abuse spanned a period of time, transpired in multiple locations, and are not part of a "singular causal continuum."  *Roman Cath. Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 21 N.Y.3d at 149.

[19]      Arrowood provided some of that information in its response in opposition to the Diocese's motion.  *See* Resp., Dkt. 58 at 2, 10 (noting that Arrowood has paid the Diocese $620,000 in defense costs); *id.* at 23–24 (providing the rates by position that the Diocese purportedly paid Jones Day as well as the rates by position that Arrowood allegedly used when reimbursing the Diocese).  The Court cannot, however, consider factual allegations outside the pleadings on a motion for judgment on the pleadings.

rates of independent counsel is compelling evidence that those rates are reasonable."  Mem. of

Law, Dkt. 56 at 16.  The Diocese's argument rises and falls on the fact that because it paid Jones

Day, there is "compelling evidence" that Jones Day's fees are reasonable; the Diocese cites no

caselaw to support the contention that Arrowood must pay whatever amount it paid.

Although the Diocese is correct that the fact that it paid the fees charged by Jones Day is

compelling evidence that the fees are reasonable, *see Reiter v. Metro. Transp. Auth. of New York*,

No. 01-CV-2762, 2004 WL 2072369, at *5 (S.D.N.Y. Sept. 10, 2004) (collecting cases),

"compelling evidence" is not the same as irrefutable evidence.  A reasonable fee is determined

by multiplying "a reasonable hourly rate by the reasonable number of hours expended on the

case."  *Sandoval v. Materia Bros. Inc.*, No. 11-CV-4250, 2013 WL 1767748, at *3 (S.D.N.Y.

Mar. 5, 2013), *report and recommendation adopted*, No. 11-CV-4250, 2013 WL 1759581

(S.D.N.Y. Apr. 24, 2013).  Such an assessment requires "a case-specific inquiry into the

prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel."

*Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005).  "After establishing

the appropriate hourly rate, a court must determine how much time was reasonably expended in

order to arrive at the presumptively reasonable fee."  *Danaher Corp. v. Travelers Indem. Co.*,

No. 10-CV-121, 2015 WL 409525, at *3 (S.D.N.Y. Jan. 16, 2015), *report and recommendation

adopted*, No. 10-CV-121, 2015 WL 1647435 (S.D.N.Y. Apr. 14, 2015).

The record before the Court is woefully inadequate for the Court to assess whether the

Jones Day fees are reasonable.  At the most fundamental level, the Court lacks information about

the actual fee request; the Undersigned has no idea how much money the Diocese is asking

Arrowood to pay in defense costs.  The Court also lacks any documentation to support the fee

request, including the rates charged by Jones Day, the number of hours expended by each

attorney, the tasks completed by the attorneys, or the seniority level of the attorneys who

completed those legal tasks.[20]  Such evidence is the bread and butter of district courts when determining reasonable attorneys' fees in this context.  *See Danaher Corp.*, 2015 WL 409525, at *3–9 (determining reasonable defense costs in an insurance coverage dispute based on an extensive record).  Without a more developed record, the Court cannot determine whether the defense costs requested by the Diocese are reasonable.

The Diocese's motion for a judgment on the pleadings that Arrowood pay the full amount of Jones Day defense costs incurred and paid by the Diocese is denied.[21]

### F.  Request for Attorneys' Fees in Connection with the Motion for Judgment on the Pleadings

The Diocese also asks the Court to award it attorneys' fees in connection with its motion for judgment on the pleadings seeking to enforce Arrowood's duty to defend.  Mem. of Law, Dkt. 56 at 20.  The Diocese is correct that in certain declaratory judgment actions involving the duty to defend, courts have awarded the insured attorneys' fees associated with litigating the motion.  *See Generali-U.S. Branch*, No. 25499/91, 1994 WL 903279, at *1 (discussing *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 177 A.D.2d 61 (1st Dep't 1992), *aff'd*, 80 N.Y.2d 640 (1993); *Illusion Hair Designers, Inc. v. Com. Union Ins. Cos.*, 181 A.D.2d 527 (1st Dep't 1992)).

But that line of cases stands for the proposition that if an insurer files an unsuccessful action seeking a declaratory judgment to avoid paying defense costs, a prevailing insured is entitled to attorney's fees.  *Id.*  That is not the posture of this case.  The Diocese brought a declaratory judgment action against Arrowood, not vice versa; Arrowood has not sought to avoid

---

[20]    Additionally, although Arrowood included a partial analysis of the prevailing market rates in comparable districts for comparable services, *see id.* at 24–25, the Court would benefit from more briefing on the subject in the context of determining whether the actual fee requests at issue in this case are reasonable.

[21]    Following fact discovery, a motion for summary judgment on the issue of defense costs may be appropriate.  The Court forewarns the Diocese that it is very unlikely to approve the astronomically high rates Arrowood reported that the Diocese paid Jones Day for defending the underlying sexual abuse lawsuits.  *See Id.* at 23–24 (noting that the Diocese has submitted invoices using the following hourly rates: Partners: $1,025 - $1,100; Associates: $525 - $675; Legal Support: $325; and Staff: $175).

defense costs *in toto*; and the Diocese has not been particularly successful in its motion. Although the Diocese prevailed with its claim regarding the four underlying lawsuits alleging abuse by Ferraro, that was a close call. The Diocese did not prevail in its claim that it is entitled to all defense costs in the thirty-one straddle lawsuits or in its claim that Arrowood must reimburse in full Jones Day's fees paid by the Diocese. Accordingly, the Diocese's request that the Court award it attorneys' fees associated with litigating its motion for judgment on the pleadings is denied.

## II.     Motion to Stay the Proceedings as to the Duty to Indemnify

The Diocese seeks to stay litigation related to "the duty to indemnify, as opposed to issues relating to the duty to defend and defense expenses." Mem. of Law, Dkt. 56 at 21. "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, or counsel, and for litigants.").

A stay of proceedings as to the duty to indemnify is appropriate in this matter because the issues surrounding Arrowood's duty to indemnify the Diocese for future, undetermined damages are not yet ripe. It is well settled under New York law that the duty to indemnify is only triggered upon a finding of liability and that consideration of the duty to indemnify prior to such a finding is premature.[22] Here, the parties do not dispute that the underlying lawsuits remain

---

[22]     *See Scottsdale Ins. Co. v. United Indus. & Const. Corp.*, 137 F. Supp. 3d 167, 179 (E.D.N.Y. 2015) (quoting *Hout v. Coffman*, 126 A.D.2d 973, 973 (4th Dep't 1987)) ("[A]n action seeking a declaratory judgment regarding an insurer's duty to indemnify is premature where, as here, 'the complaint in the underlying action alleges several grounds of liability, some of which invoke the coverage of the policy, and where the issues of indemnification and coverage hinge on facts which will necessarily be decided in that underlying action.'"); *Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454, 465 (E.D.N.Y. 2012) ("It is premature for the Court to determine whether or not [the insurer] has a duty to indemnify [the insured] because the issue of indemnification necessarily depends on facts that will be decided in the underlying state action."); *Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP v. Underwriters at Lloyd's, London*, 918 F.

pending; all lawsuits against the Diocese are subject to the automatic bankruptcy stay and the alleged victims are undergoing a proof of claims process as part of the bankruptcy case.  Mem. of Law, Dkt. 56 at 3; Resp., Dkt. 58 at 9.  Accordingly, it is premature for the Court to consider the duty to indemnify.

Arrowood contends that it is, nevertheless, entitled to discovery now on the duty to indemnify.  But the three cases on which Arrowood relies are inapposite.  Arrowood first cites *Town of Union v. Travelers Indem. Co.*, No. 89-CV-573, 1991 WL 64858, at *3 (N.D.N.Y. Apr. 26, 1991), which it claims stands for the proposition that an insurer is prejudiced by a stay of discovery when it cannot enforce its legal and contractual right to investigate claims presented to it.  *See* Resp., Dkt. 58 at 5.  Arrowood misconstrues the holding of that case.  In *Town of Union*, the town sought a declaration that the insurer must indemnify it for the costs it will incur as a result of anticipated "subsequent direct actions," even though, at that time, no actions were pending.  1991 WL 64858, at *3.  Without any pending actions, if the court were to stay litigation regarding the duty to indemnify, the insurer would be "faced with an indefinite stay of discovery."  *Id.*  Accordingly, the court found that, "[w]ith no direct liability action pending[,] neither the goals of judicial efficiency nor the avoidance of a conflict of interest would be served by the stay of discovery."  *Id.* at *4.  Here, there are pending lawsuits, and the claimants are going through the proof of claims process in the bankruptcy court.  Accordingly, there is no danger of "an indefinite stay of discovery" and there is a risk of creating conflicts of interest.  In short, *Town of Union*, does not support Arrowood's argument that it is entitled to discovery now on the duty to indemnify.

---

Supp. 2d at 120  (quoting *Atlantic Mut. Ins. Co. v. Terk Techs. Corp.*, 309 A.D.2d 22, 28 (1st Dep't 2003) ("The duty to indemnify is narrower and exists only after a determination that the 'loss, as established by the facts, is covered by the policy.'"); *see also Scottsdale Ins. Co.*, 137 F. Supp. 3d at 179–80 (collecting cases with similar holdings).

Arrowood next cites *QBE Ins. Corp. v. ADJO Contracting Corp.*, No. 601695/2009, 2010 WL 149108 (Sup. Ct. N.Y. Cnty. Jan. 08, 2010), as an example of a case proceeding "through discovery notwithstanding that an insured's underlying liability, if any, has not yet been determined."  Resp., Dkt. 58 at 8.  But a closer read of that case reveals that the court stayed discovery relating to the duty to indemnify, *see QBE Ins. Corp.*, 2010 WL 149108 at *8 ("All litigation solely related to the indemnification claims is stayed pending the determination of the underlying action, along with discovery related thereto,"), and permitted discovery to proceed only with respect to the duty to defend, *see id.* at *9 (agreeing with two insurers that they are entitled to discovery on the duty to defend).  Accordingly, *QBE Ins. Corp.* supports a stay of discovery with respect to the duty to indemnify, precedent that is unhelpful to Arrowood.

Finally, Arrowood cites *In re The Diocese of Buffalo*, No. 20-AP-10322, Dkt. 158 (Bankr. W.D.N.Y. Sept. 11, 2020) [hereinafter Decision, Dkt. 59-6],[23] to support its contention that "[d]iscovery regarding sexual abuse claims has continued in the bankruptcy of at least one other New York Diocese during the proof of claim process."  Resp., Dkt. 58 at 8.  That case was an adversary proceeding brought by a Diocese against several insurance companies to resolve disputes regarding the scope of the insurers' duties to defend and indemnify.  But in that case, the Diocese of Buffalo moved for an order referring the entire adversary proceeding, covering both the duty to defend and the duty to indemnify, to mediation.  *See* Decision, Dkt. 59-6 at 6–8.[24]  The bankruptcy court denied the request for mediation, finding that it was premature because the litigants had "exchanged little information," not all the insurers had "even filed an answer," none of the litigants had provided initial disclosures, and the parties "had not even

---

[23]        Arrowood provided a copy of the decision as an exhibit to its response brief.  *See* Decision, Dkt. 59-6. Citations to that decision use the ECF page numbers found at the top of each page.

[24]        *See also* Decision at 8 ("In the Mediation Motion, the Diocese states its desire to achieve a 'global resolution of underlying insurance coverage disputes.'").

started discovery." *Id.* at 9.  The Diocese of Buffalo's motion for mediation put the duty to indemnify squarely at issue and, accordingly, that court found that at least some discovery on that topic was needed before mediation had any chance of success.  Here, the Diocese has not moved for mediation or a settlement conference with Arrowood on its duty to indemnify; accordingly, that issue remains unripe for consideration or discovery.  In short, *In re The Diocese of Buffalo* is not helpful to Arrowood's cause.

Arrowood also argues that resolving the indemnity question now would further the bankruptcy process.  Resp., Dkt. 58 at 9–10.  Arrowood reports that in the underlying bankruptcy case, the sexual abuse claims are likely to be resolved in a mediation process in which the Diocese, the claimants, and the insurers "participate in an effort to reach a consensual plan of reorganization."  *Id.* at 9.  Arrowood argues that for that the mediation process "to have any chance of success, Arrowood must be permitted to investigate the existence of coverage for those claims."  *Id.  See also id.* ("[S]imply stated, Arrowood will not be in a position to discuss a consensual plan unless and until it has the opportunity to conduct the necessary and required discovery into the Diocese's claims for coverage . . . .").

If the question were as open and shut as Arrowood asserts, there would be no dispute.  If, indeed, a mediation process is used to try to reach an agreed-upon plan of reorganization, it will be in the Diocese's interest to have all of the insurers with a "dog in the fight" at the table, with their checkbooks, prepared to negotiate.  If Arrowood is genuinely disinclined to participate at all in any such mediation process without discovery, it can so inform the Diocese and take its chances that its ultimate exposure for claims for which it is obligated to provide indemnity far outstrips what it could have paid to settle the claims as part of the reorganization process had it agreed to participate in settlement discussions.[25]

---

[25]     Moreover, absent any express policy provisions that go the other way, under general principles of insurance law, Arrowood likely remains protected in any number of scenarios.  *See* Ostrager & Newman, Insurance Coverage

If the fact that the parties wish to negotiate a settlement worked as an exception to the general rule that an insurance company must wait to litigate the duty to indemnify until after liability has been determined, there would be no general rule.  Settlement discussions always involve a certain amount of calculated guess work about worst and best case scenarios.  In this case, there is substantial information available to Arrowood through informal discovery and through public information to reach reasonably well-founded positions regarding the likelihood that it will have a duty to indemnify various claims.  *See, e.g.*, Ans. ¶¶ 54–204 (summarizing the publicly available information).[26]  If the Diocese agrees to settle the claims as to which Arrowood has defended under a reservation of rights, issues relating to the duty to indemnify will become ripe, the parties likely will be entitled to discovery on indemnification, and the parties can then resolve their coverage disputes.  *See, e.g.*, *Roman Cath. Diocese of Brooklyn*, 21 N.Y.3d at 143 (resolving an insurance coverage dispute by apportioning liability following a settlement by the Diocese of Brooklyn with an abuse survivor).  This way of proceeding may have substantial downsides from the perspective of the Diocese, whose purported recalcitrance with respect to informal discovery relevant to the duty to indemnify may prevent it from knowing at the outset of mediation how big a pool of insurance money it has to settle these claims; but it is the Diocese that is resisting discovery.  So, although the Court agrees that it is more efficient for the insured to share enough information with its insurer so the insurer can make an intelligent decision regarding the probability that it will be responsible to indemnify the

---

Disputes § 22.02[b] (20th ed.) ("[W]here the insurer has assumed the insured's defense, and the insured proceeds to settle a case over the insurer's objection, the insurer may be discharged from all liability under the policy.") (collecting cases with that holding); *id.* § 22.05 (noting that some courts, including in New York, have "held that where an insurer defends a suit under a reservation of rights, it may recover settlement payments if it is later determined in a declaratory judgment action that the underlying claims are not covered by the policy" ((citing *Am. Guarantee & Liab. Ins. Co. v. CNA Reins. Co.*, 16 A.D.3d 154, 155 (1st Dep't 2005)).

[26]     The information at Arrowood's disposal may be supplemented by the voluntary disclosures the Diocese is making to its various insurers.  *See* 21-CV-71, Dkt. 78 at 1 (noting that on December 13, 2021, the Diocese provided to its insurers versions of documents previously produced but with fewer redactions); *id.* at 2 (noting that on January 19, 2022, the Diocese informed its insurers that it would be providing additional documents).

claim, the Court will not order the Diocese to fight with its insurance carrier when it is still fighting the underlying lawsuits.

In short, the Diocese's request that the Court stay these proceedings with respect to the duty to indemnify is granted.

### III.   Motion to Amend

Arrowood moved to amend its answer to convert nine of its affirmative defenses into counterclaims. *Compare* Ans, Dkt. 53 *with* Proposed Amend. Ans., Dkt. 67-2. There are no other proposed changes. "A district court has broad discretion in determining whether to grant leave to amend . . . ." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). Leave to amend should be "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), but "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, . . . or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *see also United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016). At issue is whether Arrowood's proposed amendments are futile.[27]

### A.  The Duty to Indemnify

Eight of the nine proposed counterclaims concern both the duty to defend and the duty to indemnify.[28]  *See, e.g.*, Proposed Amend. Ans. at p. 58 ("First Cause of Action: Declaratory Judgment – No Duty to Defend or Indemnify the Diocese for Underlying Lawsuits alleging abuse by Father Romano Ferraro.").  With respect to the duty to indemnify, the Court finds that the counterclaims are not futile, although they are premature.  Once liability determinations or

---

[27]     Arrowood argues, and the Diocese does not contest, that there has been no undue delay, bad faith, dilatory motive, or undue prejudice associated with its motion to amend. *See* Mem. of Law, Dkt. 66 at 2–7; Resp., Dkt. 70 at 4–20 (focusing on futility).  The Court agrees.  The Diocese does argue that to avoid "procedural chaos" Arrowood's motion to amend should be denied without prejudice until such time as the Court rules on the Diocese's motion for judgment on the pleadings. Resp., Dkt. 70 at 4–5.  The Court has avoided the chaos by ruling on both motions together; accordingly, that argument is moot.

[28]     Counterclaim Seven concerns only the duty to defend. Proposed Amend. Ans., Dkt. 67-2 at p. 67 (seeking "reimbursement by the Diocese of defense costs paid by Arrowood and damages").

settlements have been reached in the underlying sexual abuse claims, consideration of Arrowood's duty to indemnify will ripen.  At that point, the Court can consider Arrowood's counterclaims following discovery and on a fully developed record.  Accordingly, Arrowood's motion to amend its answer to add the portions of the eight counterclaims that pertain to the duty to indemnify is granted.  For the reasons discussed in the preceding section, proceedings relating to those counterclaims, as they concern the duty to indemnify, are stayed pending the resolution of the underlying sexual abuse claims.

### B.  The Duty to Defend

#### 1.  Proposed Counterclaims One and Three

The duty to defend portion of proposed Counterclaim One seeks a declaratory judgment that Arrowood has no duty to defend the Diocese in the four underlying lawsuits alleging abuse by Ferraro and the equivalent portion of proposed Counterclaim Three seeks a declaratory judgment that Arrowood has no duty to defend the Diocese in the *Kelly* lawsuit.  *Id.* ¶¶ 206–14, 226–34.  For the reasons discussed previously in Section I(C), given the broad scope of the duty to defend, Arrowood must defend the Diocese in the three lawsuits alleging abuse only by Ferraro as well as in the *Kelly* lawsuit, which alleges abuse by Ferraro and Fitzgerald. Accordingly, Arrowood's motion to amend its answer to include the duty to defend in those two counterclaims is denied as futile.[29]

#### 2.  Proposed Counterclaim Two

Proposed Counterclaim Two, as it relates to the duty to defend, seeks a declaratory judgment that Arrowood does not have a duty to defend the Diocese in the underlying lawsuits that involve other abusive priests as to whom the Diocese had knowledge of sexual misconduct

---

[29]     In the amended answer to be filed, Arrowood may include the two counterclaims as to the duty to indemnify, but any reference to the duty to defend must be removed.

before the claims in the lawsuits arose. *Id.* ¶¶ 215–25.[30]  As described in detail in this Opinion, whether Arrowood has a duty to defend in such instances turns on whether Arrowood can "demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *Allstate Ins. Co.*, 79 N.Y.2d at 159 (internal citation omitted).  The complaints in the underlying lawsuits that allege abuse by the members of the clergy referenced in Arrowood's proposed Counterclaim Two are not in the record.  Accordingly, the Court has no way to determine whether Arrowood's claim that it is not required to defend the Diocese in such lawsuits is futile.  Because the Court cannot determine on this record that the amendment is futile, Arrowood's motion to add Counterclaim Two is granted.

### 3.  Proposed Counterclaim Four

The duty to defend portion of proposed Counterclaim Four seeks a declaratory judgment that Arrowood has no duty to defend the Diocese in any of the underlying lawsuits because the Diocese has breached its duty to cooperate as required by the insurance policies.  Proposed Amend. Ans. ¶¶ 235–48.  The Diocese argues that it has complied with its duty to cooperate because it has provided some information to Arrowood; it also argues that its duty to cooperate is not as expansive as Arrowood alleges.  *See* Resp., Dkt. 70 at 10–14.  But even if the Diocese is correct that its duty to cooperate is not as broad as Arrowood contends, an issue on which the Court takes no position at this time, the Court lacks information about the extent of the Diocese's cooperation *vel non*.  Because the Court cannot conclude that the Diocese has fully complied with its duty to cooperate, it cannot conclude that Arrowood's proposed amendment is futile.  Accordingly, Arrowood's motion to add Counterclaim Four is granted.

---

[30]    The proposed counterclaim includes the following non-exhaustive list of clergy: Alan J. Placa, Charles A. "Bud" Ribaudo, John R. McGann, Edward L. Melton, Robert L. Brown, and Joseph C. McComiskey.  *Id.* at p. 60.

### 4.  Proposed Counterclaim Five

The duty to defend portion of proposed Counterclaim Five seeks a declaratory judgment that Arrowood has no duty to defend the Diocese "to the extent the Diocese did not provide Arrowood with timely notice as required under the Arrowood Policies." Proposed Amend. Ans. at p. 65; *id.* ¶¶ 249–57.  "[A]n insurer may avoid what would otherwise be a duty to defend if timely notice of a claim or occurrence was not provided." *Travelers Indem. Co. v. Northrop Grumman Corp.*, 956 F. Supp. 2d 494, 509 (S.D.N.Y. 2013); *id.* (quoting *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 438 (2d Cir. 1995) ("If an insured fails to provide timely notice as required by the particular policy, then, absent a valid reason for the delay, the insurer is under no obligation to defend . . . .")).

The Diocese argues that it provided timely notice because, after the CVA was signed into law and before any sexual abuse claims were filed pursuant to that statute, the Diocese gave notice to all its insurers, including Arrowood.  Resp., Dkt. 70 at 14.  Arrowood argues that the Diocese is invoking the wrong time frame and that the Diocese was required "to give timely notice of an 'occurrence,' claim or lawsuit contemporaneous with when it took place or was asserted." Reply, Dkt. 75 at 10.

Under New York law:

> [C]ompliance with notice-of-occurrence provision in an insurance policy is a condition precedent to an insurer's liability under the policy.  In determining whether late notice relieves an insurer of any obligation under a policy, a court must ask two questions: (1) when did the insured's obligation to give notice accrue, and (2) whether, in light of that determination, notice was timely.  The obligation to provide notice accrues when the facts or circumstances known to the insured at the time would have suggested the possibility of a claim.  The test of when an insured should have known is an objective one — based on a reasonable person standard.

*Northrop Grumman Corp.*, 956 F. Supp. 2d at 509 (internal citations omitted).  Based on the allegations in the proposed amended answer, the Diocese may have been required to give notice

of occurrences well prior to the enactment of the CVA.  Because the Court cannot conclude that Arrowood's proposed counterclaim concerning timely notice is futile, its motion to amend its answer to add Counterclaim Five is granted.

### 5.   Proposed Counterclaim Six

The duty to defend portion of proposed Counterclaim Six seeks a declaratory judgment that Arrowood has no duty to defend the Diocese under the Arrowood Policies based on known loss or prior knowledge.  Proposed Amend. Ans. at p. 66.  Arrowood contends that because the Diocese knew of instances of sexual abuse before it obtained or renewed its insurance policies, Arrowood is not required to defend the Diocese.  *Id.* ¶¶ 258–62.  The Diocese's only argument against permitting Arrowood to add this counterclaim is that, to establish the right to rescind an insurance policy, the insurer must allege that the insured made a false statement of fact as an inducement to making the contract and that the misrepresentation was material.  *See* Resp., Dkt. 70 at 15 (citing *Seneca Ins. Co. v. Ruday Realty Corp.*, No. 499/2004, 2008 N.Y. Misc. LEXIS 3530, at *9–10 (Sup. Ct. Queens Cnty. May 14, 2008)).  Because Arrowood does not plead facts about any material misrepresentations, the Diocese argues, the proposed amendment is futile. Resp., Dkt. 70 at 15.

The Diocese fails to link the doctrine of rescission to the known loss defense.[31]  The known loss defense provides that "an insured may not obtain insurance to cover a loss that is known before the policy takes effect."  *Nat'l Union Fire Ins. Co. of Pittsburgh, v. Stroh Cos., Inc.*, 265 F.3d 97, 106 (2d Cir. 2001) (citing *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1214 (2d Cir. 1995), *modified on other grounds*, 85 F.3d 49 (2d Cir.1996)) (collecting authorities with that holding).  The parties have not briefed whether the known loss

---

[31]    The case the Diocese relies on, *Seneca Ins. Co. v. Ruday Realty Corp.*, No. 499/2004, 2008 N.Y. Misc. LEXIS 3530, at *9–10 (Sup. Ct. Queens Cnty. May 14, 2008), does not even mention the known loss defense by name.

defense applies under New York law and whether, if applicable, it precludes the duty to defend or whether it is limited to rebutting the duty to indemnify.[32]  Without anything in the record connecting the rescission doctrine and the known loss defense, and because Arrowood's alleged failures to meet the requirements of the rescission doctrine was the only argument the Diocese made to support its contention that proposed Counterclaim Six is futile, Arrowood's motion to amend its answer to add Counterclaim Six is granted.

### 6.  Proposed Counterclaim Seven

In proposed Counterclaim Seven, Arrowood seeks reimbursement from the Diocese for defense costs paid by Arrowood as well as corresponding damages.  Proposed Amend. Ans. at ¶¶ 263–65.  The Diocese argues that this counterclaim is futile because the relevant insurance policies contain no right of reimbursement and that, even were Arrowood to be entitled to such recovery, Arrowood would have to complete the proof of claim process before the bankruptcy court.  Resp., Dkt 70 at 16–18.  Although both arguments may be right on the merits, they are insufficient to demonstrate that Arrowood's counterclaim is futile.  Neither party has briefed the relevant provisions from the insurance policies; without such information, the Court has no way to determine whether Arrowood is entitled to recoupment and whether such recoupment may be ordered by the Undersigned or whether Arrowood must submit a proof of claim in the underlying bankruptcy proceeding.  Accordingly, the Court cannot conclude that Arrowood's counterclaim is futile.  Arrowood's motion to amend its answer to add Counterclaim Seven is granted.

### 7.  Proposed Counterclaim Eight

The duty to defend portion of proposed Counterclaim Eight seeks a declaratory judgment that the pro rata approach is the appropriate method for allocation of defense costs in certain

---

[32]     The Court takes no position on whether the successful invocation of the known loss defense under New York law negates an insurer's duty to defend the insured.  But on the record before it, the Court concludes that such an argument is not futile.

instances.  Proposed Amend. Ans. ¶¶ 266–69.  For the reasons discussed in Section I(D),

Arrowood has stated a claim that the pro rata approach may be the better allocation method with

respect to defense costs.  Although the Diocese may be able to demonstrate on a more developed

record that it is entitled to the joint and several approach to the apportionment of defense costs,

Arrowood's contention that the pro rata approach is appropriate is certainly not futile.

Accordingly, Arrowood's motion to amend its answer to add Counterclaim Eight is granted.

### 8.  Proposed Counterclaim Nine

The duty to defend portion of proposed Counterclaim Nine seeks a declaratory judgment

that Arrowood has no duty to defend the Diocese in proceedings before the Independent

Reconciliation and Compensation Program ("IRCP").  *Id.* at ¶¶ 270–72.  Counterclaim Nine is

the inverse of the Diocese's claim that it is entitled to a declaratory judgment that Arrowood

must indemnify the Diocese for IRCP payments, a claim as to which the Diocese did not move

for judgment on the pleadings.[33]  *See* Compl. ¶¶ 74–77.  Here, too, the Court lacks information

about the underlying claimants who participated in that process and whether their allegations fall

"solely and entirely within the policy exclusions."  *Allstate Ins. Co.*, 79 N.Y.2d at 159 (internal

citation omitted).  Because there is no basis in the record for the Court to conclude that

Counterclaim Nine is futile, Arrowood's motion to amend its answer to add Counterclaim Nine

is granted.

---

[33]     There are no allegations in the record that the Diocese has even asked Arrowood to reimburse the defense costs it incurred with respect to claims resolved or pending before the Independent Reconciliation and Compensation Program ("IRCP").  *See* Proposed Amend. Ans. ¶ 75 ("To date, the Diocese has requested that Arrowood indemnify it for one [of the IRCP] settlements.").

## CONCLUSION

For the foregoing reasons, the Diocese's motion for a partial judgment on the pleadings is GRANTED in part and DENIED in part; the Diocese's motion for a stay of the proceedings with respect to the duty to indemnify is GRANTED; the Committee of Unsecured Creditor's motion to join the Diocese's motions is DENIED; and Arrowood's motion to amend its answer is GRANTED in part and DENIED in part.

By no later than **Wednesday, March 2, 2022**, Arrowood must file an amended answer in accordance with this Opinion.  By no later than **Friday, March 11, 2022**, the parties must meet and confer and file a joint letter, not to exceed eight pages, with a proposal for next steps in this litigation, including a description of the contours and a proposed timeline for any discovery pertaining to the duty to defend.[34]  If the parties are unable to agree on all aspects of a proposed plan, the parties should include their respective positions as to the issues on which there is disagreement.  The Court encourages the parties to work together professionally, courteously, and collegially.

The Clerk of Court is respectfully directed to close the open motions at docket entries 55, 64, and 65.

**SO ORDERED.**

Date:  **February 23, 2022**
     **New York, NY**

                        **VALERIE CAPRONI**
                        **United States District Judge**

---

[34]    To avoid future discovery disputes, the parties are encouraged to be as specific as possible as to what the proposed discovery will and will not entail.  The Court will not permit discovery on the duty to defend to act as a backdoor into discovery on the duty to indemnify.  Conversely, the Court will permit at least some discovery pertaining to the duty to defend and continues to encourage the Diocese to work with Arrowood to provide informal discovery necessary to inform Arrowood's assessment of the likely scope of its ultimate duty to indemnify.