# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, NEW YORK,

        Plaintiff

      v.

ARROWOOD INDEMNITY COMPANY,

        Defendant.

Civil Action No.: 20-CV-11011 (VEC)

## ARROWOOD INDEMNITY COMPANY'S FIRST SET OF DUTY TO DEFEND INTERROGATORIES DIRECTED TO THE PLAINTIFF

Pursuant to Pursuant to Federal Rules of Civil Procedure 26 and 33 and Local Civil Rule 33-3 of the Southern District of New York, and this Court's Order entered April 15, 2022, Defendant Arrowood Indemnity Company, *formerly known as* Royal Indemnity Company, *as successor by merger to* Royal Insurance Company of America - *improperly pled as* Arrowood Indemnity Company f/k/a Royal Insurance Company also f/k/a Royal Globe Insurance Company ("Arrowood"), hereby demands that Plaintiff The Roman Catholic Diocese of Rockville Centre, New York (the "Diocese") provide responses to the following interrogatories pursuant to the April 15, 2022 Order.

Dated: May 20, 2022
      New York, New York

                    COUGHLIN MIDLIGE & GARLAND, LLP

                    */s/Adam M. Smith*
                    Kevin T. Coughlin
                    Adam M. Smith
                    Karen H. Moriarty
                    Wall Street Plaza
                    88 Pine Street, 28th Floor

2141024

New York, New York 10005
phone:  212-483-0105
fax: 212-480-3899
Email:  KCoughlin@cmg.law
        ASmith@cmg.law
        KMoriarty@cmg.law
*Counsel for Arrowood Indemnity Company,*
*formerly known as Royal Indemnity Company,*
*as successor by merger to Royal Insurance Company*
*of America*

and

PORZIO, BROMBERG & NEWMAN, P.C.
Brett S. Moore
Warren J. Martin, Jr.
Christopher P. Mazza
1675 Broadway, Suite 1810
New York, NY 10019
Phone: (212) 265-6888
Fax: (212) 957-3983
E-mail: bsmoore@pbnlaw.com
        wjmartin@pbnlaw.com
        cpmazza@pbnlaw.com
*Co-Counsel for Arrowood Indemnity Company,*
*formerly known as Royal Indemnity Company, as*
*successor by merger to Royal Insurance Company of*

2141024

## **INSTRUCTIONS**

1.       No part of an interrogatory may be left unanswered merely because an objection is interposed to another part of the interrogatory.  Therefore, if you assert any part of an interrogatory is objectionable, respond to the remaining parts to which you do not object.

2.       If an objection or request for relief is made with respect to any interrogatory or portion thereof, the objection shall state all grounds with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.

3.       If a claim of privilege is asserted in an objection or request for relief with respect to any interrogatory or portion thereof, and an answer is not provided on the basis of the assertion, the objection or request for relief shall identify:

(1)  the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(2)   The following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:

(A) For documents: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

(B) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making

2141024

the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication.

4.    If you answer an interrogatory by reference to business records from which the answer may be derived or ascertained, pursuant to Fed. R. Civ. P. 33(d), you must:

(1) specify the records that must be reviewed, in sufficient detail to enable Arrowood to locate and identify them as readily as the Diocese could; and

(2) give Arrowood a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

5.    You must produce documents and/or electronically-stored information as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request.

6.    Electronic records should be produced in their "native" format. For example, Outlook files should be exported into a "pst" file that can then be loaded into another computer running Outlook; Word documents should be produced in their native .doc or docx format(s); Excel files should be produced in their native .xls format; and PDF files should be produced in their original .pdf format. Documents shall be delivered as delimited text with image and native files.

7.    These interrogatories are continuing in nature and require that you provide all responsive information whenever you obtain or become aware of it up to the time of trial, even if not in your possession or available to you on the date you first respond to these interrogatories.

8.    All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all

2141024

9.    And/Or.  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

10.    Number.  The use of the singular form of any word includes the plural and vice versa

## **DEFINITIONS**

Pursuant to Local Rule 26.3, the following definitions are utilized herein except as otherwise permitted:

(1) **"Plaintiff" or "the Diocese"** refers to Plaintiff The Roman Catholic Diocese of Rockville Centre, New York, its predecessors in interest, successors in interest, divisions, subsidiaries, affiliates, and its Trustees, Council Members, Bishop(s), priest(s), clergy, present or former directors, officers, managers, executives, employees, agents, attorneys, representatives, consultants, advisors, or other persons or professionals acting or purporting to act on its behalf.

(2) **"You"** or **"Your"** refers to the party answering these interrogatories.

(3) **"Defendant" or "Arrowood"** refers to Arrowood Indemnity Company, *formerly known as* Royal Indemnity Company, *as successor by merger to* Royal Insurance Company of America - *improperly pled as* Arrowood Indemnity Company f/k/a Royal Insurance Company also f/k/a Royal Globe Insurance Company, its predecessors in interest, successors in interest, divisions, subsidiaries, affiliates, present or former directors, officers, executives, employees, agents, attorneys, representatives, or other persons acting or purporting to act on its behalf.

(4) **"Affiliated Entity" or "Affiliated Entities"** refers to the Diocesan Seminaries, Apostolic Organizations, Schools, Churches, Parishes, Missions, Health Care Centers, Homes for the Aged, Day Care Centers, Specialized Homes, Special Centers for Social Services, Residential Care of Children, Residential Care of Disabled and/or other entities, institutions or organizations under the sponsorship of, or affiliated with, the Diocese who are involved in the Underlying Sexual Abuse Matters and which have requested coverage from Arrowood in connection with those Matters under the subject Arrowood Primary Policies and/or under the subject Arrowood Excess/Umbrella Policies.

(5) "**Underlying Sexual Abuse Matters**" refers to reports, allegations, claims and lawsuits alleging sexual abuse under the New York State Child Victims Act, C.P.L.R. § 214-G, by Diocesan clergy and/or other individuals over whom the Diocese and/or affiliated parish, school or other entity allegedly exercised control alleging sexual abuse of a minor under

2141024

the New York Child Victims Act by a member of the clergy, teacher or other representative of the Diocese and/or Affiliated Entities, including those which proceeded and/or were resolved through the Diocese's Independent Reconciliation and Compensation Program ("IRCP"); and those claims which are the subject of the Sexual Abuse Proof of Claim Forms filed in the Bankruptcy.

(6) **"Subject Arrowood Primary Policies"** refers collectively to those primary policies issued by Arrowood under which the Diocese and/or an Affiliated Entity(ies) seek coverage in connection with the Underlying Sexual Abuse Matters. These policies include Policy Numbers:

- RLG 055000 (eff. 10/01/1957 – 10/01/1958)("Primary Policy RLG 055000")
- RLG 059700 (eff. 10/01/1958 – 10/01/1959)("Primary Policy RLG 059700")
- RLG 001059 (eff. 10/01/1959 – 10/01/1960)("Primary Policy RLG 001059")
- RLG 001060 (eff. 10/01/1960 – 10/01/1961)("Primary Policy RLG 001060")
- RLG 001061 (eff. 10/01/1961 – 10/01/1962)("Primary Policy RLG 001061")
- RLG 001062 (eff. 10/01/1962 – 10/01/1963)("Primary Policy RLG 001062")
- RLG 001063 (eff. 10/01/1963 – 10/01/1964)("Primary Policy RLG 001063")
- RLG 000164 (eff. 10/01/1964 – 10/01/1965)("Primary Policy RLG 001064")
- RLG 001065 (eff. 10/01/1965 – 10/01/1966)("Primary Policy RLG 001065")
- RTG 604826 (eff. 10/01/1966 – 10/01/1967)("Primary Policy RTG 604826")
- RTG 604827 (eff. 10/01/1967 – 10/01/1968)("Primary Policy RTG 604827")
- RTG 604828 (eff. 10/01/1968 – 10/01/1969)("Primary Policy RTG 604828")
- RTG 604829 (eff. 10/01/1969 – 10/01/1970)("Primary Policy RTG 604829")
- RTG 604820 (eff. 10/01/1970 – 10/01/1971)("Primary Policy RTG 604820")
- RTG 604821 (eff. 10/01/1971 – 10/01/1972)("Primary Policy RTG 604821")
- PTG 604822 (eff. 10/01/1972 – 10/01/1973)("Primary Policy PTG 604822")
- PTG 604823 (eff. 10/01/1973 – 10/01/1974)("Primary Policy PTG 604823")
- PTG 604824 (eff. 10/01/1974 – 10/01/1975)("Primary Policy PTG 604824")
- PTG 604823 (eff. 10/01/1975 – 10/01/1976)("Primary Policy PTG 604825")

(7) **Subject Arrowood Excess/Umbrella Policies"** refers collectively to those excess or umbrella policies issued by Arrowood under which the Diocese and/or an Affiliated Entity(ies) seek coverage in connection with the Underlying Sexual Abuse Matters. These policies include Policy Numbers

- RLX 100035 (eff. 06/04/1964 – 06/04/1967) ("Excess Policy RLX 100035")
- RLA 100629 (eff. 06/04/1967 – 06/04/1970) ("Umbrella Policy RLA 100629")
- RLA 101501 (eff. 06/04/1970 – 10/01/1971) ("Umbrella Policy RLA 101501")
- RLA 101877 (eff. 10/01/1971 - 10/01/1972) ("Umbrella Policy RLA 101877")
- PLA 102188 (eff. 10/01/1972 - 10/01/1973) ("Umbrella Policy PLA 102188")
- PLA 102553 (eff. 10/01/1973 - 10/01/1974) ("Umbrella Policy PLA 102553")
- PTQ 302591 (eff. 10/01/1974 - 10/01/1975) ("Umbrella Policy PTQ 302591")
- PTQ 306461 (eff. 10/01/1975 - 10/01/1976) ("Umbrella Policy PTQ 306461")

2141024

(8) **Subject Arrowood Policies"** refers collectively to the Subject Arrowood Primary Policies and the Subject Arrowood Excess/Umbrella Policies.

(9) The **"Diocese Bankruptcy"** or **"Bankruptcy"** refers to the petition filed by the Diocese in the United States Bankruptcy Court for the Southern District of New York captioned *In re: The Roman Catholic Diocese of Rockville Centre, New York* and pending under Case No. 20-12345. Same includes all related proceedings including, but not limited to: Adversary Proceeding No. 20-01226 and Adversary Proceeding No. 20-01227.

(10) The **"Arrowood Coverage Action"** refers to the within action, civil action no. 20-CV-11011 (VEC).

(11) **Communication**. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(12) **"Describe," "describing"** or **"set forth"** means to state the substance of the event, circumstance, communication, representation, conversation, meeting, transaction, occasion or other occurrence in question; the date, time, place and identity of all persons present thereat or participating therein; that which each such person said and did; the approximate duration of such occurrence; the method or means of communication employed; the identity of all documents relating thereto; and the identity of all persons having knowledge of such occurrence; as well as the date and means when and whereby such knowledge was first acquired.

(13) **Document**. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

(14) **Identify (with respect to persons).** When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

(15) **Identify (with respect to documents).** When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

(16) **Parties**. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

(17) **Person**. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

(18) **Concerning**. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

## INTERROGATORIES

1. Identify all Person(s) involved in answering these interrogatories, including every Person who has consulted or contacted regarding answering these interrogatories.

2. State when and how the Diocese, including but not limited to Bishop Walter Philip Kellenberg, first become aware of allegations, claims, or complaints of sexual abuse of a minor by clergy, lay employees, and/or other employees or agents of the Diocese and/or Affiliated Entities of the Diocese, and identify the alleged abuser(s).

3. State when and how the Diocese, including but not limited to Bishop Walter Philip Kellenberg, first become aware of allegations, claims, or complaints of sexual abuse of a minor by clergy, lay employees, and/or other employees or agents of the Diocese of Brooklyn, who became affiliated with the Diocese upon its formation in 1957, and identify the alleged abuser(s).

4. At the time of the formation of the Diocese in 1957, was the Diocese aware of allegations, claims, or complaints of sexual abuse of a minor by clergy, lay employees, and/or other employees or agents of the Diocese of Brooklyn, who became affiliated with the Diocese upon its formation in 1957. Identify the alleged abuser(s).

5. Identify all clergy of the Diocese who were alleged to have committed sexual violation of a minor that were investigated pursuant to the *Crimen sollicitationis,* what investigation was conducted, the results that were sent to the Congregation for the Doctrine of the Faith (CDF) in Rome, and the decision determined by officials at the Congregation.

6. Identify all clergy of the Diocese who were alleged to have committed sexual abuse of a minor that were investigated under any Canon law other than the *Crimen sollicitationis.*

7. Identify all Bishops of the Dioceses who participated in any way in the United States Conference of Catholic Bishops, and set forth the manner in which they participated, any positions they held, and/or committees of which they were members.

8. As a member of the United States Conference of Catholic Bishops, please set forth all meetings, conferences, and/or discussions attended by any Bishop of the Diocese including but not limited to the meeting sponsored by the National Association for Pastoral Renewal held at Notre Dame University in 1967.

2141024

9. Did the Diocese ever receive a copy of "Careful Selection and Training of Candidates for the States of Perfection and Sacred Orders," (2 Feb. 1961), an official document issued by The Sacred Congregation for Religious, one of the principle administrative sections of the Holy See. If so, please state the date.
.

10. Did the Diocese ever receive a copy of *The Problem of Sexual Molestation by Roman Catholic Clergy: Meeting the Problem in a Comprehensive and Responsible Manner*, commonly known as "The Manual" written by Michael Peterson, Thomas Doyle and F. Ray Mouton in 1985. If so, please state the date.

11. Identify all guidelines, rules, manuals or other instructions, regarding the type of information that is to be included/maintained in the personnel files, "Secret Files" or "Secret Archive Files", "Confidential Files" of members of the clergy lay employees and/or other employees or agents of the Diocese and/or Affiliated Entities. If no such guidelines, rules, manuals or other instructions existed, please state so.

12. Identify all guidelines, rules, manuals or other instructions, in effect at any time between the formation of the Diocese to the present day, concerning Your sexual abuse policies, including the identification of the potential for such behavior, and the handling of claims and/or complaints of sexual abuse made against any clergy, lay employees and/or other employees or agents of the Diocese and/or Affiliated Entities; the reporting of any such claims and/or complaints to the police or other authorities; and/or the reporting of any such claims and/or complaints to Arrowood and/or other insurers. If no such guidelines, rules, manuals or other instructions existed, please state so.

13. Identify any prior settlements and/or agreements entered into by and between You, an Affiliated Entity, and/or any other Person or entity at any time between when the Diocese was formed and the present day concerning claims and/or complaints of the sexual abuse of a minor taking place during the policy periods of the Subject Arrowood Policies against any clergy, lay employees and/or other employees or agents of the Diocese and/or the Affiliated Entities including but not limited to, those which may involve plaintiffs and/or claimants in the Underlying Sexual Abuse Matters.

14. State when and how the Diocese first became aware of any allegation(s) of sexual abuse of a minor, including, but not limited, to boundary issues and/or inappropriate contact, and/or came into possession of any information indicating the potential to engage in such behavior, against or in connection with the following individuals:

   a) Father Romano Ferraro

   b) Father Alfred Soave

   c) Father Charles Ribaudo

   d) Father James Bergin

2141024

e)  Father George Kayser

f)  Father Robert Giuntini

g)  Father William Burke

h)  Deacon/Father Richard Schaefer

i)  Father Harold Hugh Paul

j)  Father John Butler

k)  Father Edward D'Andrea

Attach all documents relating your response.

15. Set forth Your understanding of the reasons Father Romano Ferraro left his assignment in the Diocese of Brooklyn and became associated with the Diocese; and identify all documents received from the Diocese of Brooklyn by the Diocese prior to or during Father Ferraro's assignment or association with the Diocese.

16. Set forth whether, at the time Father Romano Ferraro became associated with the Diocese, or anytime thereafter, You were or became aware of any allegations, claims and/or complaints made against Father Ferraro concerning the sexual abuse of a minor. If so, please state the date and provide any documents concerning such knowledge.

17. Identify each and every allegation, claim and/or complaint of the sexual abuse of a minor that was alleged to have occurred between the formation of the Diocese to 1976, made against any clergy, lay employees and/or other employees or agents of the Diocese and/or Affiliated Entities, including but not limited to, those accused in the Underlying Sexual Abuse Matters, that was reported to or otherwise made known to the Diocese at any time; include date and manner of reporting and/or other method(s) by which the Diocese was made aware of each such claim and/or complaint.

18. For each claim and/or complaint identified in response to Interrogatory No. 17, state whether and when such claim and/or complaint was reported and/or tendered to Arrowood for coverage.  If reported and/or tendered, attach all documents supporting your response. If not reported or tendered, state the reason(s) for same and attach any documents supporting your response.

19. Identify any and all claims and/or complaints of the sexual abuse of a minor taking place during the policy periods of the Subject Arrowood Policies that were reported and/or tendered to Arrowood.

20. From the formation of the Diocese through 1976, identify the process(es), method(s), and/or practice(s), if any, for recording, memorializing and/or documenting claims and/or

2141024

complaints of the sexual abuse of a minor made against the clergy, lay employees, and/or other employees or agents of the Diocese and/or Affiliated Entities, including the names of the Person(s) and/or Diocesan offices involved in such process(es), method(s), and/or practice(s).

21. Identify any and all clergy, lay employees, and/or other employees or agents of the Diocese and/or Affiliated Entities accused of the sexual abuse of a minor taking place during the policy periods of the Subject Arrowood Policies – including, but not limited to, boundary issues and/or inappropriate contact – whom You sent to any rehabilitation, medical, psychiatric/psychological and/or spiritual facility or institution at any time including, but not limited, to the Servants of the Paraclete, Via Coeli, St. Luke's Institute, St. John Vianney Center, Seton Psychiatric Institute, and/or the House of Affirmation. For each such clergy, lay employee and/or other employee or agent, provide the name(s) and location(s) of the facilities or institutions, and the purpose(s) for which each was sent to each identified facility or institution. Attach all documents supporting Your response.

22. Identify all clergy of the Diocese who were laicized – either voluntarily or involuntarily - between when the Diocese was formed through the present; and provide the reason(s) for each such laicization. Attach all documents supporting Your response.

23. From the formation of the Diocese through 1976, state whether the Diocese and/or those responsible for accepting candidates for ordination to the priesthood, including, but not limited to, the Priest Personnel Assignment Board and Bishops, accepted a candidate for ordination with knowledge of complaints, claims and/or allegations that the candidate committed the sexual abuse of a minor, including inappropriate contact and/or boundary issues, and identify the name of the candidate and the circumstances of such complaints, claims and/or allegations. Attach all documents related to Your response

24. From the formation of the Diocese through 1976, state whether the Diocese and/or those Persons responsible for the assignment or reassignment of priests, including the Priest Personnel Assignment Board and/or the Bishop, maintained and/or returned a priest to active ministry with knowledge of complaints, claims and/or allegations that the priest committed the sexual abuse of a minor, including inappropriate contact and/or boundary issues, and identify the name(s) of the priest(s) and parish(es) where they were assigned and/or returned. Attach all documents supporting Your response.

25. From the formation of the Diocese through the present, identify the Person or Persons employed by and/or affiliated with the Diocese and/or Affiliated Entities who were responsible for receiving and/or evaluating allegations, claims or complaints of the sexual abuse of a minor made against clergy, lay employees, and/or other employees or agents of the Diocese and/or Affiliated Entities.

26. From the formation of the Diocese through the present, identify the Person or Persons employed by and/or affiliated with the Diocese and/or Affiliated Entities who were responsible for determining whether and when allegations, claims or complaints of the sexual abuse of a minor made against clergy, lay employees, and/or other employees or

2141024

agents of the Diocese and/or Affiliated Entities were required to be reported to Arrowood under the Subject Arrowood Policies.

27. Identify those clergy, lay employees and/or other employees or agents of the Diocese and/or Affiliated Entities against whom complaints, claims and/or allegations of the sexual abuse of a minor, that took place during the policy periods of the Subject Arrowood Policies, were reported to and reviewed by the Vatican's Congregation of the Holy Office and/or the Congregation for the Doctrine of the Faith; for each such clergy, state the date(s) of review, the date(s) of the alleged abuse; and the outcome of the review.  Attach all documents related to your response.

28. Describe the processes, practices and/or policies of the Diocese for maintaining, retaining, storing, keeping, transferring, removing, discarding, and/or destroying personnel files, "Secret Files" or "Secret Archive Files", "Confidential Files", reports of investigations, psychological/psychiatric evaluations, Bishop's Files and any other files related to allegations of sexual abuse of a minor against clergy, lay employees and/or other employees or agents of the Diocese and/or Affiliated Entities. Please attach all documents related to the described processes, practices and/or policies.

29. State whether any of the files identified in Interrogatory No. 28 have been transferred, removed, discarded or destroyed, in whole or in part, at any time between the formation of the Diocese and the present day.  If so, identify the documents or files that have been transferred, removed, discarded or destroyed, the reasons the documents have been transferred, removed, discarded or destroyed, those responsible for the transfer, removal, discarding and/or destruction, and the dates of transfer, removal, discarding and/or destruction.  For those files, or portions of files, that have not been transferred, removed, discarded or destroyed, identify the current location(s) and custodian(s).

30. Describe how and on what basis(es) the Diocese identified the Notices of Potential Claim that the Diocese reported to Arrowood in connection with the passage of the Child Victims Act beginning in or around March 2019, including when and how the Diocese learned of the Potential Claims. Attach all documents relating to your response.

31. For any and all complaints, claims and/or allegations of the sexual abuse of a minor taking place during the policy periods of the Subject Arrowood Policies submitted through the IRCP, identify when and how the Diocese first became aware of such complaints, claims and/or allegations.  Attach all documents relating to your response.

32. Set forth when and for what purpose(s) the Diocese established the Uninsured Perils Fund, as referenced in the Suffolk County Grand Jury Report. Attach all documents relating to your response.

33. Set forth any and all amount(s) paid from the Uninsured Perils Fund, including but not limited to: when; why; and in connection with what victim(s), claim(s), allegation(s) and/or complaint(s).  Attach all documents relating to your response.

2141024

34. Describe any and all policies, guidelines and/or procedures for funding the Uninsured Perils Fund and administering payments from the Uninsured Perils Fund. Attach all documents relating to your response.

2141024

## **CERTIFICATION**

I hereby certify that I am authorized to provide the foregoing answers to Interrogatories on behalf of the Diocese. I further hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I further acknowledge the continuing obligation to provide the information and documents requested by these Interrogatories and to provide same even after the original of these Interrogatories has been submitted.

I hereby certify that copies of all reports by experts and others, and any and all writings or documents annexed hereto are exact and true copies of the entire reports and/or writings or documents; that the existence of any other report or writing of said experts or others, either written or oral; is unknown to me and if such become later known or available, I shall serve them promptly upon the propounding party.

Signature: _____

Name (printed): _____

Title: _____

Dated:

2141024