# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

THE ROMAN CATHOLIC DIOCESE OF
ROCKVILLE CENTRE, NEW YORK,

Debtor.

Chapter 11

Case No. 20-12345 (MG)

**CORRECTED ORDER COMPELLING RULE 2004 DISCOVERY FROM ARROWOOD INDEMNITY COMPANY**

On September 27, 2023, the Court heard argument on the motion of the Official Committee of Unsecured Creditors ("UCC") in this Chapter 11 case to compel discovery pursuant to Bankruptcy Rule 2004 from Arrowood Indemnity Company ("Arrowood") (ECF Doc. # 2388), one of the insurance companies that provide coverage to the Diocese and its related insureds in the past (together, the "Insureds"). Arrowood filed an objection to the Motion. ("Objection," ECF Doc. # 2461.) The Committee filed a Reply. (ECF Doc. # 2475.) It is undisputed that Arrowood is in very precarious financial condition, making it uncertain whether Arrowood has the financial ability to respond to sex abuse claims against the Insureds, assuming that coverage is found. It is also undisputed that the Arrowood policies are property of the estate. While the District Court in which the Diocese's declaratory judgment action against Arrowood is pending will decide whether Arrowood must defend and indemnify the Insureds for the sex abuse claims, the value of the Debtor's assets—including the Arrowood insurance policies—is very much an issue for this Court to decide to consider.

At the conclusion of the hearing yesterday, the Court directed counsel for the UCC and Arrowood promptly to meet and confer on the scope of discovery that should

1

be provided to the UCC.  **TIME IS OF THE ESSENCE.**  The Debtor, UCC, and Insurers (including Arrowood) are engaged in court-authorized mediation with the goal of agreeing on a consensual plan of reorganization.  I write briefly now in this Order to explain the basis for the Court's ruling.  Arrowood's Objection is **OVERULED.**  It must meet and confer and **PROMPTLY** produce financial information to the retained legal, financial and insurance professional of the UCC and Debtor.  The parties must negotiate a form of protective order to be entered by the Court.  Discovery will not be delayed while a protective order is negotiated and submitted to the Court for approval.  But until such time as a more formal protective order is approved, disclosure by Arrowood in the Rule 2004 discovery of any non-public information shall be limited to the retained legal, financial and insurance professionals of the Debtor and UCC, with one exception described on the last page of this Order relating to the ongoing mediation.

    A.    **<u>The Diocese's Arrowood Insurance Coverage</u>**

From 1957 until 1976, the Debtor purchased both primary insurance ("Royal Primary Policies") and excess umbrella insurance coverage ("Royal Umbrella Policies" and with Royal Primary Policies, the "Royal/Arrowood Policies") from Royal Indemnity Insurance and Royal Globe Insurance Company (together, "Royal").  (Motion ¶ 9.)  The Royal entities are collectively now known as "Arrowood Indemnity Company."  (*Id.*)  The Royal/Arrowood Policies encompass both the Debtor and "Other Insured Entities."[1] (*Id.* at 2, n.3 and ¶ 10.)

---

[1]    "Other Insured Entitles" is not defined in the Motion and in <u>Exhibit B</u> annexed to the Motion.

1. The Royal/Arrowood Policies

The Royal Primary Policies provide the first layer of insurance coverage for the Debtor and Other Insured Entities. (*Id.* ¶ 10.) Such policies have per-occurrence limits of liability and **no aggregate limits of liability**. (*Id.*) Under the per-occurrence limits of liability, coverage is provided for the first $150,000 to $300,000 of liability for as many claims as may be asserted or any injury occurring during the policy period. (*Id.*) Unlimited payment of defense costs for each claim is also provided so long as the applicable limits of liability for that claim have not been exhausted. (*Id.*)

The Royal Umbrella Policies covered liability that exceeds the limits of liability for the Royal Primary Policies. (*Id.* ¶ 12.)

2. Timeline of Coverage

- <u>1957–1964</u>: The Royal Primary Policies were the only insurance coverage for the Debtor. (*Id.* ¶ 11.)

- <u>1964–1976</u>: The Debtor had coverage under both the Royal Primary Policies and the Royal Umbrella Policies. (*Id.* ¶ 12.)

    o <u>June 4, 1964–June 4, 1966</u>: Royal Umbrella Policies had a $2 million per-occurrence limit of liability with no aggregate limit of liability per policy period. (*Id.*)

    o <u>June 4, 1966–June 4, 1970</u>: Royal Umbrella Policies had a $4 million per-occurrence limit of liability with no aggregate limit of liability per policy period. (*Id.*)

3

- June 4, 1970–Oct. 1, 1973: Royal Umbrella Policies had per-occurrence and "likely" aggregate limits of liability of $4 million per policy period. (*Id.*)

- Oct. 1, 1973–Mar. 1, 1975: Royal Umbrella Policies had per-occurrence and "likely" aggregate limits of liability of $7 million per policy period. (*Id.*)

- Mar. 1, 1975–Oct. 1, 1976: Royal Umbrella Policies had per-occurrence and "likely" aggregate limits of liability of $12 million per policy period. (*Id.*)

3. Committee's Position re Insurance Coverage

The Committee believes that approximately 358 or 59% of the sexual abuse claims filed in this Chapter 11 proceeding are covered, at least in part, under the Royal/Arrowood Policies. The Debtor has estimated a potential per-claimant insurance recovery of approximately $400,000 and believes that over half of the amount "would likely need to come from Arrowood." (*Id.* ¶ 18.)

B. **Delaware State Regulation of Arrowood**

On Federal 20, 2007, the Insurance Department of the State of Delaware entered a decision and final order of the Insurance Department of the State of Delaware and the Insurance Commissioner for the State of Delaware (the "Arrowood Order"). (Motion ¶ 15.) Pursuant to the Arrowood Order, the Insurance Department of the State of Delaware appointed a claims monitor ("Claims Monitor") to "receive and act upon Policyholder complaints, track indemnity reserve adequacy, monitor litigation management, review

4

claims denials, monitor claims staffing levels, perform ongoing analysis and measurement of claims initiatives, monitor benchmark projected versus actual statistical data, identify and assess new exposures, and assess all extra contractual and bad faith claims, and oversee the Companies' good faith participation in alternative dispute resolution forums for disputed Policyholder claims." (*Id.* ¶ 16 (internal quotations omitted).)

On February 25, 2022, the Insurance Commissioner for the State of Delaware issued an Order of Supervision by Consent, placing Arrowood under supervision pursuant to 18 Del. C. § 5942. (*Id.* ¶ 17.)

### C. The Chapter 11 Case and the Insurer Adversary Proceeding

On October 1, 2020, the Debtor filed a voluntary petition for Chapter 11 relief. (Objection ¶ 6.) The same day, the Debtor commenced an adversary proceeding (the "Adversary Proceeding," Adv. Pro. No. 20-01227) against various insurers, including Arrowood, seeking declaratory judgment regarding the scope of its insurance coverage and damages for breach of contract. (*Id.* ¶ 7; Motion ¶ 13.)

On October 16, 2020, the U.S. Trustee appointed the Committee, which is comprised of nine individuals who hold claims against the Debtor, including eight individuals who were sexually abused as minors. (Motion ¶ 7.)

On November 20, 2020, the Committee filed a motion to intervene (Adv. Pro. No. 20-01227, ECF Doc. # 22) in the Adversary Proceeding, which this Court granted on December 10, 2020, overruling Arrowood's objection as to the Committee's standing. (*See* Order Granting Motion to Intervene ("Intervene Order"), Adv. Pro. No. 20-01227, ECF Doc. # 38.) Pursuant to the Intervene Order, while the Committee is authorized to

5

"intervene unconditionally in the Adversary Proceeding," its participation is limited. (Intervene Order at 3.)

On December 29, 2020, Arrowood filed a motion seeking withdrawal (Adv. Pro. No. 20-01227, ECF Doc. # 54) of the reference to the Bankruptcy Court with respect to the Adversary Proceeding, which the Court granted on May 17, 2021. (Objection ¶ 13.) In granting the motion to withdraw, the District Court held that the claims in the Adversary Proceeding are non-core as they "do not turn on the bankruptcy laws, arose before the bankruptcy petition was filed, and are independent of the bankruptcy proceedings." (*Id.* ¶ 14 (quoting the District Court's order on the motion to withdraw ("Withdrawal Order") (Case No. 1:20-CV-11011-JLR, ECF Doc. # 42).)

On May 28, 2021, the Committee filed a motion to be reinstated as a party (the "Reinstatement Motion," Case No. 1:20-CV-11011-JLR, ECF Doc. # 46) in the District Court after the Withdrawal Order directed the Clerk of the Court to delete all parties except the Debtor and Arrowood from the case caption. (Objection ¶ 24.) Additionally, the Withdrawal Order provides that "any party or entity [that] believes it should be included as a party in this matter . . . file a motion in accordance with the Federal Rules of Civil Procedure. (*Id.* (quoting the Withdrawal Order at 21).)

The Adversary Proceeding is currently pending before Judge Jennifer L. Rochon in the District Court.

### D. The Rule 2004 Motion

The Committee seeks information concerning "Arrowood's ability to satisfy its obligations to the Diocese pursuant to the [Royal/Arrowood Policies]" as part of its "evaluation of the Diocese's financial condition." (Motion ¶ 1.)

6

The Committee asserts that Rule 2004 allows for document and oral discovery relating to "acts, conduct, or property of the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." (*Id.* ¶ 21 (quoting FED. R. BANKR. P. 2004(b)).) Additionally, by virtue of Rule 2004(c) which incorporates Rule 9016 of the Federal Rules of Bankruptcy Procedure, Rule 45 of the Federal Rules of Civil Procedure, which governs subpoenas, is applicable in cases under the Bankruptcy Code. (*Id.*)

The Committee states that the relief requested falls within the scope of Rule 2004 and that it is unquestionable that the Royal/Arrowood Policies are assets of the Debtor. (Motion ¶ 26.) Moreover, because the Committee believes that over half of the potential per-claimant insurance recovery will likely need to come from Arrowood, a complete understanding of Arrowood's "ability to pay under its policies" is "important for the Committee's assessment of [the Debtor's] financial condition." (*Id.* ¶¶ 18, 26.) The Committee highlights that the adequacy of the Debtor and parish cash contribution remains the key to reaching a consensual resolution of this Chapter 11 case. (*Id.* ¶ 27.) In such an instance (and if the Debtor and parishes agree to contribute an appropriate amount), the Committee argues that it "needs to fully understand Arrowood's ability to pay." (*Id.*) They argue that this is particularly so if the [Debtor's] rights under the Arrowood Policies are to be assigned to a settlement trust" following any plan confirmation. (*Id.*)

### E. Arrowood's Objection

Arrowood makes *numerous* arguments why the discovery sought by the Committee is improper. The Court has considered each of Arrowood's arguments—they

7

are all **OVERRULED**. I will not separately address each of these arguments in this Order, but I note and reject its arguments that (i) the Committee's request is improper "post-judgment discovery," (ii) the Committee has failed to establish good cause for the relief sought, (iii) the "pending proceeding rule" dictates that any discovery demands made to the District Court in the Adversary Proceeding be brought under the Federal Rules of Civil Procedure as opposed to Rule 2004, (iv) the information sought is "premature" since no claims have so far been "allowed," (v) the issue whether there is coverage under the Arrowood Policies is presently the subject of the Adversary Proceeding before the District Court.

In its Reply, the Committee argues that good cause exists for its Rule 2004 examination request. (Reply ¶¶ 9–11.) As the Royal/Arrowood Policies and related proceeds are assets of the Debtor's estate, the question whether Arrowood possesses the financial wherewithal to satisfy its policy obligations is an "important part of the Committee's evaluation of the Debtor's financial condition." (*Id.* ¶¶ 9, 10.) Indeed, the Committee argues, such information is "key to developing a plan of reorganization." (*Id.* ¶ 11.)

The Committee further argues that the "pending proceeding rule" inapplicable. (*Id.* ¶ 12.) The Committee asserts that its discovery requests are broader than the "narrow[] scope" of issues addressed in the Adversary Proceeding and are directed at "issues material to the bankruptcy case." (*Id.* ¶ 16.) Accordingly, notwithstanding any potential overlap with the Adversary Proceeding, Rule 2004 relief is justified as the issues sought is relevant to the bankruptcy case. (*Id.* ¶ 21.) Finally, the Committee

8

asserts that Arrowood's refusal to comply adds further delay to the parties' efforts to formulate a consensual plan. (*Id.* ¶¶ 23–24.)

The Committee notes that it attempted to consensually resolve the matter with Arrowood, but Arrowood indicated that "there is nothing to discuss because the Committee is not entitled to any of the information it requested." (*Id.* ¶ 2.) While the Debtor did not object to the relief sought, it did request that it receive any discovery that Arrowood produces as reflected in the markup to the proposed order. (*Id*. at 2, n.2.)

### F. Rule 2004 Authorizes the Discovery

Rule 2004 of the Federal Rules of Bankruptcy Procedure provides that "[o]n motion of any party in interest, the court may order the examination of any entity." FED. R. BANKR. P. 2004(a). The rule's permissive language provides courts with discretion to grant requests for examinations. *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.,* 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001); *In re French,* 145 B.R. 991, 993 (Bankr. D.S.D. 1992).

Generally, such an examination may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . ." FED. R. BANKR. P. 2004(b). Thus, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Strecker,* 251 B.R. 878, 882 (Bankr. D. Colo. 2000) (citing *In re Duratech Indus., Inc.,* 241 B.R. 283, 289 (E.D.N.Y. 1999)); *see also Bennett Funding,* 203 B.R. at 28 (stating that Rule 2004 is intended to aid in "revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed").

9

Courts have recognized that Rule 2004 examinations are broad, unfettered, and in the nature of "fishing expeditions." *See e.g., In re GHR Energy Corp.,* 33 B.R. 451, 453 (Bankr. D. Mass. 1983). The scope of a Rule 2004 examination is broader than that of discovery under the Federal Rules of Civil Procedure. *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991); *see also In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991) ("Rule 2004 discovery is broader than discovery under the Federal Rules of Civil Procedure, and has fewer procedural safeguards."). Third parties that possess knowledge of the debtor's acts, conduct, liabilities, or financial condition that relate to the bankruptcy proceeding may be subject to a Rule 2004 examination. *In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); *see also In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (Bankr. S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) (stating that "any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation").

The "availability of Rule 2004 as a discovery tool is not unlimited." *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267, 274 (D. Col. 1991). In granting a Rule 2004 examination request, the Court is required to make a finding of good cause for the examination. *ePlus, Inc. v. Katz (In re Metiom, Inc.*), 318 B.R. 263, 268 (S.D.N.Y. 2004). Good cause is shown if the examination sought is "necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *Id*. (citations omitted); *see also In re Express One Int'l, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex. 1998) (stating the same). In addition, the court must weigh the

10

relevance of the discovery against the burden it will impose on the producing party. *In re Coffee Cupboard*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("Rule 2004 requires that we balance the compelling interests of the parties, weighing the relevance of and necessity of the information sought by examination."); *see also In re Texaco*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) ("[T]he examination should not be so broad as to be more disruptive and costly to the [producing party] than beneficial to the [requesting party].") Lastly, Rule 2004 cannot be used for "purposes of abuse or harassment" and it "cannot stray into matters which are not relevant to the basic inquiry." *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984).

I conclude that the UCC's request for Rule 2004 discovery satisfies each of these requirements, subject to counsel for the Committee and Arrowood promptly engaging in a meet and confer to resolve any issues regarding the precise discovery that should take place. If counsel can't resolve any such issues, the Court will hold an additional hearing to resolve any remaining disputes. To be clear, however, production of requested information must begin promptly and not await resolution of any remaining contested issues.

Let me briefly address a few of the objections raised by Arrowood. Generally, the "pending proceeding rule" provides that once a formal legal case is commenced, "discovery should be pursued pursuant to [that proceeding's rules] and not by Rule 2004." *In re Millennium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 347 (Bankr. S.D.N.Y. 2012) (quoting *In re Enron Corp.*, 281 B.R. 836, 841 (Bankr. S.D.N.Y. 2002)). Arrowood is correct that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the applicable Federal Rules of Civil

11

Procedure, and not Rule 2004." *In re Cambridge Analytica LLC*, 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019); *see also In re Bibhu LLC*, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan. 10, 2019) ("Once an adversary proceeding, or state court [lawsuit] as here, has been commenced, Rule 2004 discovery is usually not the appropriate means to obtain discovery."). The rule "reflects a concern that a party to litigation could circumvent an adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the other proceeding." *Millennium Global*, 471 B.R. at 347. Permitting application of Rule 2004 to permit discovery in this case does not run afoul of the pending proceeding rule.

But the discovery that the UCC seeks is *essential* for negotiating a Chapter 11 Plan in this case, and, as the Court said earlier, time is of the essence. Given the estimate that approximately 59% of the sexual abuse claims are potentially covered under the Royal/Arrowood Policies, the Committee's request satisfies Rule 2004's requirement that an examination relate to the "property[,] . . . liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate." FED. R. BANKR. P. 2004(b).

The UCC's discovery requests clearly are *not* premature as Arrowood has argued. A determination of the extent of insurance proceeds potentially available to the Debtor would aid in ascertaining the size and scope of the Debtor's estate. The amount and availability of insurance coverage has been a central issue in plan negotiations in every diocese chapter 11 case in this country, sometimes resolved consensually and sometimes resulting in coverage claims being assigned to a litigation trust established in a confirmed plan. But the Debtor and the UCC cannot be expected to negotiate such an important

issue without understanding Arrowood's ability satisfy claims if coverage exists. It is not rocket science that a consensual agreement requires parties to the plan negotiations to understand whether Arrowood has the financial wherewithal to satisfy covered claims if that legal determination is made. Clearly, the UCC has established "good cause" to obtain discovery on the financial condition of Arrowood since the Arrowood policies are property of the estate.

The Court will hold another hearing this afternoon. Hopefully, the parties will resolve any remaining questions of the discovery that Arrowood will promptly provide. Absent further order of the Court, until a more formal protective order is negotiated and approved by this Court, all non-public discovery provided by Arrowood about its financial condition may be disclosed only to the Debtor's and UCC's retained attorneys, financial and insurance advisors. In addition, Magistrate Judge Sarah L. Cave, who is assigned to the Arrowood coverage action in the District Court and who is also a Judicial Co-Mediator in all of the pending coverage actions concerning the Debtor, may determine without further order of this Court, whether and the extent to which the information provided in the discovery may be used in the pending mediation. I have been advised that additional mediation sessions are scheduled next week and in coming weeks.

All other objection by Arrowood not specifically addressed in this Order have been considered and are overruled.

**IT IS SO ORDERED.**

Dated: September 27, 2022
New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge