

350 Mount Kemble Avenue
P.O. Box 1917
Morristown, New Jersey 07962
phone: 973-267-0058
fax: 973-267-6442
www.cmg.law

Wall Street Plaza
88 Pine Street, 28th Floor
New York, New York 10005
phone: 212-483-0105
fax: 212-480-3899

ADAM M. SMITH, ESQ.
DIRECT DIAL: (212) 612-4995
EMAIL: ASMITH@CMG.LAW

February 6, 2026

**Via ECF**
The Honorable Sarah L. Cave, U.S.M.J.
U.S. District Court Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

> Re:    ***Alan D. Halperin, solely as Trustee of the DRVC Abuse Claims Trust v.***
> ***Arrowood Indemnity Company, in Liquidation***
> **Case No. 1:20-cv-11011-JLR-SLC**

Dear Magistrate Judge Cave:

Arrowood opposes the Trust's demand that Arrowood produce documents concerning reserves set by Arrowood for the underlying CVA abuse claims because such documents have no relevance to whether there is coverage under the Arrowood policies for the abuse claims. The existence of coverage will rise or fall – primarily – based on whether the Trust can establish that the Diocese has legal liability for the claims so as to satisfy the insuring agreement of the Arrowood policies and the extent of the Diocese's knowledge at the time the abuse was perpetrated, not Arrowood's financial accounting some fifty years later.

Courts in New York have held that "information about 'reserves', is not discoverable where the issue is whether a claimant is entitled to insurance coverage." Weisel v. Provident Life and Cas. Co., 2008 NY Slip Op 32992(U), at *13 (Sup. Ct. N.Y. Cty. Oct. 30, 2008) (citing 40 Rector Holdings, LLC v. Travelers Indem. Co., 40 A.D.3d 482 (1st Dep't 2007); see also Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co., 1994 N.Y. Misc. LEXIS 709, at *14-15 (Sup. Ct. N.Y. Cty. Feb. 24, 1994) ('The establishment of a particular reserve thus can shed very little, if any, light on what the insurance company intended when it entered into a policy containing disputed clauses years, perhaps many years, before the reserve was set up."); Nat'l Union Fire Ins. Co. v. H&R Block, Inc., 2014 WL 4377845, at *8-9 (S.D.N.Y. Sept. 4, 2014) ("the probative value of the reserve information as an aid to the interpretation of possibly ambiguous policy language is attenuated by the fact that there are no certainties in litigation. Regardless of the strength or weakness of an insured's claim for coverage, I suspect that there are very few cases in which the probability that the insured will succeed on its coverage claim can be valued at zero. Thus, establishment of a reserve may merely reflect a prudent insurer's recognition of the risks [] inherent in litigation rather than an admission of coverage or liability."))

To distract the Court from the policy interpretation questions central to this case, the Trust attempts to use information related to Arrowood's practice of setting reserves to somehow



Hon. Sarah L. Cave
February 6, 2026
Page 2 of 3

demonstrate that Arrowood either believed the Diocese faced liability for the underlying claims or that the defense it provided the Diocese was "illusory". This attempt to distract runs contrary to New York public policy which recognizes the importance of setting accurate reserves.  See Trust Letter at 2; Gold Fields, 1994 N.Y. Misc. LEXIS 709, at *16 (referencing the "important public interest in the establishment of sound reserves by insurance companies" and holding that "[i]t would be unhealthy if the setting of a particular reserve would be allowed to be presented before the jury in a litigation such as this as an admission of liability.")

        The decision to set reserves on a particular claim cannot be used to create or eliminate coverage for that claim. The cases cited by the Trust on this point are inapposite. For example, 866 E. 164th St., LLC v. Union Mut. Fire Ins. Co. held that reserves information was relevant to the issue of whether the insurer "improperly denied [the insured's] claim and voided the insurance policy." 2016 WL 6901321, at *6 (S.D.N.Y. Nov. 23, 2016). Arrowood did not deny coverage and in fact provided a defense under a reservation of rights for most of the claims at issue. The other cases likewise involve allegations – not at issue here – of bad faith or similar conduct dealing specifically with the insurer's motivations or state of mind in reaching a coverage determination. See Mandarin Oriental, Inc. v. HDI Glob. Ins. Co., 2025 WL 1638071, at *18 (S.D.N.Y. June 10, 2025) (insured alleged that insurer committed bad faith "in failing to provide a coverage position or advance payment under the Policies"); 99 Wall Dev., Inc. v. Allied World Specialty Ins. Co., 2019 WL 2482356, at *3 (S.D.N.Y. June 14, 2019) (reserves information discoverable where "[d]ifferences between [the insurer's] internal assessment and coverage position may be relevant to Allied's good/bad faith compliance with its contractual obligations under the policy."); Fireman's Fund Ins. Co. v. Great Am. Ins. Co., 284 F.R.D. 132, 139 (S.D.N.Y. 2012) ( reserve information relevant to insured's claim that insurer "failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of Signal's claims" and to insurer's claim that the insured "engaged in fraud".).

        The Trust seeks reserves information only to help establish that the CVA Claims triggered Arrowood's indemnity obligations under the policies. What Arrowood may have "believed" about the Diocese's legal liability to the claimants has no bearing on whether those claims trigger coverage under the policies or are otherwise subject to policy exclusions.

        Finally, the Trust cited no case law for the unsupported proposition that an insurer that defends its insured is in fact providing "illusory" coverage based on the amount of indemnity reserves that were set for the claim. Arrowood's communications with the Diocese specifically set out the potentially applicable policy provisions upon which it was reserving its rights to disclaim any future obligation to indemnify the Diocese. New York courts are clear that such a reservation is the proper method to preserve an insurer's right to disclaim. See e.g., New York Marine & Gen. Ins. Co. v. Travelers Prop. Cas. Co. of Am., 485 F. Supp. 3d 398, 408-09 (S.D.N.Y. 2020). Again, the amount of reserves set by an insurer with respect to a particular claim plainly has no relevance



Hon. Sarah L. Cave
February 6, 2026
Page 3 of 3

to whether the claim in fact triggered coverage under the policies or whether coverage is in fact barred under some other policy condition or exclusion.

    For these reasons, the Court should deny the Trust's request for Arrowood to produce reserve information.

                                   Respectfully submitted,

                                   COUGHLIN MIDLIGE & GARLAND LLP


                                   *Adam M. Smith*

                                   Adam M. Smith, Esq.

cc:    counsel of record (via ECF)