UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALAN D. HALPERIN, solely as Trustee of the
DRVC Abuse Claims Trust,

                              Plaintiff,

        -v-

ARROWOOD INDEMNITY COMPANY,

                              Defendant.

CIVIL ACTION NO. 20 Civ. 11011 (JLR) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE**, United States Magistrate Judge:

We presume the reader's familiarity with the background of this action involving the scope of Defendant Arrowood Indemnity Company's ("Arrowood") duty to indemnify the Plaintiff Alan D. Halperin, solely as Trustee of the Diocese of Rockville Center ("DRVC") Abuse Claims Trust (the "Trust")[1] in connection with claims involving childhood sexual abuse by members of DRVC's clergy. See Roman Catholic Diocese of Rockville Ctr., N.Y. v. Arrowood Indemn. Co., No. 20 Civ. 11011 (JLR), 2022 WL 17593312, at *1–3 (S.D.N.Y. Dec. 13, 2022) ("Arrowood III"); Roman Catholic Diocese of Rockville Ctr., N.Y. v. Arrowood Indemn. Co., No. 20 Civ. 11011 (VEC), 2022 WL 558182, at *1–2 (S.D.N.Y. Feb. 23, 2022) ("Arrowood II"); Roman Catholic Diocese of Rockville Ctr., N.Y. v. Arrowood Indemn. Co., No. 20 Civ. 11011 (VEC), 2021 WL 1978560 (S.D.N.Y. May 17, 2021) ("Arrowood I").[2]

Before the Court is the Trust's request that the Court compel Arrowood to produce in this action "the same information Arrowood already produced in the bankruptcy case regarding reserves set by Arrowood for the DRVC abuse claims" (the "Reserve Information"). (Dkt. No. 255

---

[1] By Order dated February 18, 2025, the Trust was substituted as Plaintiff in place of DRVC. (Dkt. No. 214).
[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

at 1 (the "Reserve Request"); see Dkt. No. 268).  Arrowood opposes the Reserve Request on the ground that the Reserve Information has "no relevance to whether there is coverage under the Arrowood policies for the abuse claims."  (Dkt. No. 263 at 1).  For the reasons set forth below, the Reserve Request is **GRANTED**.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and permits a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  In deciding whether discovery is proportional to the needs of the case, courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.  "[T]he court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative . . .; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C).  Of course, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  "A district court has broad discretion to determine the scope of discovery."  Arrowood III, 2022 WL 17593312, at *4 (citing Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).

In the insurance context, "[r]elevance of reserve information is evaluated on a case-by-case basis."  99 Wall Dev. Inc. v. Allied World Specialty Ins. Co., No. 18 Civ. 126 (RA) (KHP), 2019

2

WL 2482356, at *4 (S.D.N.Y. June 14, 2019).  "The courts in this Circuit have both permitted and denied discovery regarding reserve information."  Champion Int'l Corp. v. Liberty Mut. Ins. Co., 128 F.R.D. 608, 612 (S.D.N.Y. 1989) (collecting cases); see Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. H & R Block, Inc., No. 12 Civ. 1505 (AT) (HBP), 2014 WL 4377845, at *3 (S.D.N.Y. Sept. 4, 2014) (noting "that Judges in this District have reached conflicting conclusions concerning the relevance of reserve information").  Some courts have found reserve information relevant where bad faith has been alleged.  Nat'l Union Fire Ins., 2014 WL 4377845, at *4 n.3 (collecting cases); see Mandarin Oriental, Inc. v. HDI Global Ins. Co., No. 23 Civ. 4951 (JPC) (SLC), 2025 WL 1638071, at *7 (S.D.N.Y. June 10, 2025) (finding reserve information "relevant to assessing [d]efendants' motivations" where plaintiff alleged breach of the covenant of good faith and fair dealing in failing to provide a coverage position or advance payment under insurance policies); 866 E. 164th St., LLC v. Union Mut. Fire Ins. Co., No. 16 Civ. 3678 (SN), 2016 WL 6901321, at *2 (S.D.N.Y. Nov. 23, 2016) (deeming reserve changes during investigation relevant to question whether defendant improperly denied plaintiff's claim); Nat'l Union Fire Ins., 2014 WL 4377845, at *4 (finding information about establishment of reserve relevant and discoverable where insured alleged bad faith refusal to pay); Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 284 F.R.D. 132, 139 (S.D.N.Y. 2012) (finding reserve information relevant to insurer's "own beliefs about coverage and their liability").  Others have found reserve information relevant and discoverable absent allegations of bad faith.  See, e.g., Ins. Co. of N. Am. v. UNR Indus., Inc., Nos. 92 Civ. 4236 (KTD) & 92 Civ. 8182 (KTD), 1994 WL 683423, at *1 (S.D.N.Y. Dec. 6, 1994) (finding reserve information "discoverable" without reference to bad faith); Champion Int'l, 128 F.R.D. at 612 (agreeing that reserve information had "sufficient relevance . . . to justify its production").

## II.    DISCUSSION

Arrowood's sole objection to the Reserve Request is that the Reserve Information is not relevant to the claims and defenses in this action, and so we deem Arrowood to have conceded that the Reserve Information is not privileged and would not be burdensome to produce. (Dkt. No. 263; see Dkt. Nos. 246 at 3–4, 6; 268 at 1).  We thus appropriately focus on the parties' relevance arguments.

In evaluating relevance, we are mindful of what the Honorable Valerie E. Caproni explained in Arrowood I — that the Trust's "case against Arrowood concerns who bears financial responsibility for certain tort claims; it does not concern the validity of the underlying claims[,]" and resolving this case "requires contract interpretation to ascertain the [Trust's] rights pursuant to insurance policies" that Arrowood provided.  2021 WL 1978560, at *5.  In discussing the scope of permissible discovery in Arrowood III, the Honorable Jennifer L. Rochon[3] explained that "under New York law, Arrowood's duty to defend . . . ought to be determined primarily by the allegations in (or four corners of) the underlying complaints and the insurance policies."  2022 WL 17593312, at *8, *11 (denying Arrowood's request for discovery from DRVC concerning the "expected or intended" and known loss exclusions "in the context of evaluating the duty to defend").  As to Arrowood's duty to indemnify, as to which discovery was previously stayed but is now underway, see Arrowood II, 2022 WL 558182, at *10–13, *16,[4] the focus is on whether one or more policy exclusions apply.  See Arrowood III, 2022 WL 17593312, at *11 (contemplating additional

---

[3] On September 27, 2022, this action was reassigned to Judge Rochon.  (Dkt. No. 110).
[4] (Dkt. Nos. 220 at 2 (discussing exchange of discovery demands related to Arrowood's duty to defend); 231 at 7 (noting that parties were engaged in discovery regarding duty to indemnify)).

discovery regarding applicability of policy exclusions in context of duty to indemnify); cf. Arrowood II, 2022 WL 558182, at *12–13 (explaining reasons for staying discovery concerning duty to indemnify).

Turning to Arrowood's arguments in opposition to the Reserve Request, Arrowood first argues that New York courts have held that "information about 'reserves'[] is not discoverable where the issue is whether a claimant is entitled to insurance coverage." (Dkt. No. 263 at 1 (quoting Weisel v. Provident Life & Cas. Ins. Co., No. 05 Civ. 600759, 2008 WL 4860163, *13 (Sup. Ct. N.Y. Cnty. Oct. 30, 2008) and collecting cases). We recognize that some New York State courts, applying New York's Civil Practice Law and Rules (the "CPLR"), have denied discovery of reserve information in recognition of "an important public interest in the establishment of sound reserves by insurance companies." Gold Fields Am. Corp. v. Aetna Cas. & Sur. Co., No. 89 Civ. 19879 (WMS), 1994 N.Y. Misc. LEXIS 709, *15–16 (Sup. Ct. N.Y. Cnty. Mar. 3, 1994); see Weisel, 2008 WL 4860163, at *14 (finding that "information about reserves [would] not appreciably sharpen the issues for trial."). As the Trust correctly points out, (Dkt. No. 268 at 2), however, the CPLR does not apply here; the Federal Rules of Civil Procedure do, and they "are somewhat more liberal than" the CPLR. Cruz v. Kennedy, No. 97 Civ. 4001 (KMW), 1997 WL 839483, at *1 (S.D.N.Y. Dec. 19, 1997). As noted above, discoverability — i.e., relevance — is broader than admissibility under Rule 26(b)(1), and the federal courts in this District have been more open to recognizing the "probative value" of an insurer's establishment of a reserve. Nat'l Union Fire Ins. Co., 2014 WL 4377845, at *4; see Fireman's Fund, 284 F.R.D. at 138–39 (recognizing that loss reserves may be relevant to insurer's beliefs about coverage). We therefore reject Arrowood's suggestion that

reserve information is <u>per se</u> irrelevant to whether the Trust is entitled to insurance coverage for the abuse claims against the DRVC.

Arrowood next argues that "[t]he decision to set reserves on a particular claim cannot be used to create or eliminate coverage for that claim." (Dkt. No. 263 at 2). Arrowood asserts that it "did not deny coverage and in fact provided a defense under a reservation of rights for <u>most</u> of the claims at issue[,]" and that there are no allegations of bad faith. (<u>Id.</u> (emphasis added)). The Trust appropriately highlights Arrowood's careful qualification — that it provided a defense for "most" but not all, claims against the DRVC — in tacit recognition of its denial of coverage for claims involving one of the priests. (Dkt. No. 268 at 2). While the Trust's allegations do not expressly allege that Arrowood denied coverage in bad faith, they do suggest that Arrowood improperly "relied upon material extraneous to the [underlying] complaint . . . to purport to limit its defense obligation." (Dkt. Nos. 51 ¶ 48; 98 ¶ 24; 128 ¶ 23). Arrowood's concession that it <u>has</u> denied coverage as to at least some of the underlying claims against the DRVC, combined with the Trust's allegations of why that denial was improper, render the Reserve Information "sufficiently relevant" to the claims and defenses regarding Arrowood's coverage obligations as "to be discoverable." <u>Nat'l Union Fire Ins.</u>, 2014 WL 4377845, at *5.

Arrowood's third argument is that the Trust fails to provide support for the contention that the Reserve Information will shed light on whether Arrowood's defense of some claims was "illusory." (Dkt. No. 263 at 2). The Trust points out in reply that New York law requires an insurer to notify its insured of the disclaimer or denial of coverage "as soon as is reasonably possible[,]" N.Y. Ins. L. § 3420(d), so "if [] Arrowood established little to no reserves for the DRVC abuse claims, the Reserve Information will tend to show that Arrowood had effectively denied coverage without

6

notifying [the DRVC]" in a timely fashion.  (Dkt. No. 268 at 2).  See First Fin. Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 68 (2003) (explaining purpose of § 3420(d) to assist insureds "in obtaining an expeditious resolution to liability claims").  The Reserve Information may reveal whether Arrowood complied with its obligations to notify the DRVC "as soon as reasonably possible" under § 3420(d), and is therefore relevant to the claims and defenses in this action and discoverable.

Finally, Arrowood criticizes the Trust for seeking the Reserve Information "only to help establish that the [abuse] [c]laims triggered Arrowood's indemnity obligations under the policies[,]" and asserts that Arrowood's own beliefs about the DRVC's liability "has no bearing on" the triggering of coverage.  (Dkt. No. 263 at 2).  As Arrowood is aware, the Court granted the parties' request to brief the issue of whether the Trust "has the obligation to prove that the [DRVC] ha[s] a legal obligation to pay the underlying victims' claim[s] as to trigger coverage under the Arrowood polices[.]"  (Dkt. Nos. 251 at 1–2; 257 at 22–31, see generally Dkt. No. 246).  In doing so, the Court noted that "if Arrowood set aside a reserve," it could "lend credence to the belief that" the DRVC had a legal obligation to pay damages to the claimants or whether Arrowood's defenses precluded coverage.  (Dkt. No. 246 at 7).  The Reserve Information may therefore also be relevant to the coverage-triggering question on which the parties are focused.

### III.    CONCLUSION

For the reasons set forth above, the Reserve Request is **GRANTED**.  By **March 10, 2026**, Arrowood shall produce the Reserve Information to the Trust and file a letter confirming such production.

Dated:        New York, New York
              February 25, 2026

SO ORDERED.

_____
SARAH L. CAVE
**United States Magistrate Judge**